No. 25-1413

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY DOE; JOHN DOE A; JOHN DOE B; JOHN DOE C; JOHN DOE
D; JOHN DOE E; JOHN DOE G; JOHN DOE H; MARY ROE,

      Plaintiffs-Appellants Cross-Appellees,

v.

GRETCHEN WHITMER, Governor of the State of Michigan; JAMES
GRADY, II, Colonel,

      Defendants-Appellees Cross-Appellants.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Mark A. Goldsmith

**EMERGENCY MOTION FOR STAY ON BEHALF OF THE
GOVERNOR AND THE COLONEL OF THE
MICHIGAN STATE POLICE**

**ACTION REQUESTED BY JUNE 20, 2025**

## INTRODUCTION

Unless this Court grants a stay, the district court's decision will

have a devastating effect on the ordinary operation of Michigan's Sex

Offender Registry, Mich. Comp. Laws § 28.721, *et seq.* It will force more

than two-thirds – over 32,000 offenders – off the registry. The Governor

and the Colonel of the Michigan State Police (the State) bring this

motion, asking for relief by **June 20, 2025,** as the injunction will take effect on **July 21, 2025.**  This timeline permits a motion to stay in the U.S. Supreme Court, if necessary, or to obtain a legislative fix.

In an eleven-count class action lawsuit challenging the constitutionality of Michigan's Sex Offender Registration Act (SORA), the district court found some SORA provisions constitutional, and others unconstitutional.  The decision was critically flawed in two respects, warranting this Court's granting of a stay.

First, Michigan's SORA is now virtually identical in its requirements to the federal Sex Offender and Registration Notification Act (SORNA), and thus the case law affirming the constitutionality of SORNA – *Willman v. Att'y Gen. of United States*, 972 F.3d 819, 824 (6th Cir. 2020) – is equally applicable to Michigan's SORA.  Yet, the district court dismissed *Willman*, ruling that it was not controlling because the analysis was "terse" and "offer[ed] no guidance."  Such an evasion of controlling law is untenable.

Second, the district court will force more than 3,000 registrants with out-of-state convictions off the registry based on the lack of determination by a neutral decision-maker about their Michigan

registration obligations.  This novel ruling overlooks the fact that an administrative decision by the Michigan State Police about a registrant's duty to register is already subject to appeal to the Michigan state courts.  This Court's intervention is necessary.

Indeed, the State has appealed the holdings related to the ex post facto claims and the claims related to registrants with out-of-state convictions.  Unless the stay is granted on those two claims, on July 21, 2025, more than 32,000 registered sex offenders will no longer have to register in Michigan.  The members of the public will no longer be able to easily access information about sex offenders so that they can decide how, and if, they interact with someone who was convicted of criminal sexual conduct.

The district court's opinion on the ex post facto claim is not only inconsistent with case law from this Court, but it also conflicts with binding precedent from the Michigan Court of Appeals, placing state and local officials in an impossible position.  This Court should grant the stay until the State's appeal is decided on the merits.

## STATEMENT OF FACTS

A class action lawsuit was filed in 2022 challenging numerous provisions of the new SORA, which became effective in 2021.  Mich. Comp. Laws § 28.721, *et seq*.  The old law was amended in response to earlier litigation, which found some provisions of the law to be unconstitutional.  Plaintiffs filed a motion for preliminary injunction and the State filed a motion to dismiss at the beginning of the case. The district court denied both motions without prejudice in September 2022.  (Opinion, R. 54, Page ID # 1847-1852.)

The parties conducted discovery and filed cross motions for summary judgment in late 2023.  On September 27, 2024, the district court granted in part, and denied in part, the cross motions for summary judgment on most claims.  (Opinion, R. 158, Page ID # 8662-8776.)

The court found in favor of Plaintiffs on the (1) ex post facto claims; (2) the non-sex offense claim; (3) the non-Michigan offense claim; and (4) the first amendment claims related to admission of understanding registration obligations and chilling of speech as a result of reporting internet identifiers.

The court found in favor of the State on the claims regarding (1) lack of individualized review; (2) unequal opportunity to petition; and (3) compelled speech.  (*Id*. at Page ID # 8775.)

On March 26, 2025, the district court issued another decision.  It related to whether the provisions that were found unconstitutional could be severed from constitutional provisions of the SORA, and it resolved questions related to whether certain provisions of the SORA were unconstitutionally vague.  (Opinion, R. 171, Page ID # 9159-9181.) The court held the unconstitutional provisions could not be severed, and certain provisions were unconstitutionally vague and others were not. (*Id*. at Page ID # 9168, 9172-9181.)

The final judgment and injunction were entered on March 26, 2025.  (Judgment, R. 172, Page ID # 9183-9197.)  The State filed a motion for stay in the district court on April 11, 2025.  (Motion, R. 173, Page ID # 9198-9226.)  The court entered an amended final judgment on April 22, 2025, which will take effect on July 21, 2025.  (Ex. A, Amended Judgment, R. 177, Page ID # 9377-9392.)  The court denied the motion for stay.  (Order, R. 192, Page ID # 9491-9504.)  An appeal, and cross appeal were filed.  (Ex. B, Notice of Appeal.)

5

**I.      The Court should grant the stay pending appeal.**

Courts consider four factors when deciding a motion for stay:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The factors are balanced against each other and are not independent prerequisites that must be met before a stay is granted.  *Overstreet v. Lexington-Fayette Urban County Gov't,* 305 F.3d 566, 573 (6th Cir. 2002).  Each will be addressed in turn.

**A.      The State is likely to succeed on the merits.**

There are two claims on appeal – the ex post facto claim and the out-of-state claim.  The State is likely to prevail on both claims.

**1.      The State is likely to prevail on the ex post facto claim as there is controlling precedent on point.**

**a.      SORA and SORNA are the same.**

Michigan amended the SORA in 2021 to mirror the SORNA.  The Michigan SORA and the federal SORNA are the same in all material

respects. (Comparison graphic, R. 41-2, Page ID # 1385-1389; Comparison chart, R. 173-2, Page ID # 9231-9291.)

Perhaps most importantly, SORNA applies "regardless of when the conviction of the offense for which registration is required occurred." 28 C.F.R. § 72.3. In other words, SORNA is retroactive. SORNA was signed into law in July 2006, and rules were promulgated in 2007 that made it clear that registration requirements applied to persons with convictions before July 2006. *United States v. Cain*, 583 F.3d 408, 411 (6th Cir. 2009). "A sex offender is federally convicted of aggravated sexual abuse under 18 U.S.C. 2241 in 1990 and is released following imprisonment in 2009. The sex offender is subject to the requirements of SORNA and could be held criminally liable under 18 U.S.C. 2250 for failing to register or keep the registration current in any jurisdiction in which the sex offender resides, is an employee, or is a student." 28 C.F.R. § 72.3.

Like the SORNA, the 2011 amendments to the Michigan SORA extended the registration terms and obligations of sex offenders whose conduct predated the amendments. *See* Mich. Pub. Acts 17, 18 (2011). Those same amendments remain in the SORA today.

Secondarily, the reporting requirements under both regulatory schemes are nearly identical. Registrants are required to report specific information at the time of initial registration. (Comparison graphic, R. 41-2, Page ID # 1386-1387.)





Registrants are required to periodically update changes to

personal information.  (Comparison graphic, R. 41-2, Page ID # 1388-

1389.)



The registration terms are identical under both schemes, and for some offenders is imposed retroactively.  (Comparison graphic, R. 41-2, Page ID #1389.)



*See also* an updated comparison chart of the state SORA and federal

SORNA.  (Updated comparison chart, R. 173-2, Page ID # 9231-9291.)

The fact that the regulatory schemes are nearly identical is a

critical one, because this Court has already rejected the claim that the

federal SORNA constitutes an ex post facto violation as punishment for

a 1993 offender.  *See Willman* 972 F.3d at 824.  That case answers the

ex post facto challenge here.

**b.     The district court glossed over Sixth Circuit case law.**

The district court took issue with the retroactive extension of registration terms and increased reporting requirements, which it characterized as changing "the rules of the game after registrants have committed their offenses." *Does v. Whitmer*, 751 F. Supp. 3d 761, 795 (E.D. Mich. 2024) (*Does III*).  Indeed, it noted that "the retroactive extension of registration lengths . . . is undoubtedly one of the most restrictive aspects of SORA 2021, especially in the ex post facto context."  (Opinion, R. 192, Page ID # 9496.)  Importantly, the extension of registration terms and increased reporting requirements were a matter of statutory amendment – there was no factual dispute about it.

**(i)     *Willman* is controlling.**

The district court dispatched the relevance of *Willman* by stating that the analysis was "terse" and offered no guidance.  *Does III*, 751 F. Supp. 3d at 785–786.

However, *Willman* held that SORNA is not an ex post facto violation and is controlling law.  *United States v. White*, 920 F.3d 1109, 1115 (6th Cir. 2019) ("the [lower courts] should follow the case which directly controls") (citations omitted).

12

SORNA has all the same hallmarks as the Michigan SORA. (e.g., registrants must provide nearly identical personal information under SORNA and SORA; under both schemes registrants must report in-person periodically and must appear in-person to report changes to certain personal information; and under both SORNA and SORA the registration terms are identical, and for some registrants, the registration terms were imposed retroactively.) A finding that SORA violates the ex post facto clause means that the federal SORNA violates the ex post facto clause, which is inconsistent with *Willman*.

Aside from citing *Felts* as support that SORNA does not violate the ex post facto clause, this Court also noted ten other circuits that similarly came to the same conclusion. *Willman*, 972 F.3d at 824.

*Willman* cited approvingly to an opinion with a lengthy analysis of whether SORNA violated the ex post facto clause, including a discussion of the *Mendoza* factors.[1] *United States v. Wass*, 954 F.3d 184, 192 (4th Cir. 2020). The challenge was twofold, first a challenge to

---

[1] The U.S. Supreme Court identified the *Mendoza* factors in rejecting an ex post facto challenge to Alaska's sex offender registry. *See Smith v. Doe,* 538 U.S. 84, 97–105 (2003) (citing *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–169 (1963)).

13

criminal sanctions for failing to register as applied to pre-SORNA offenders, and second, a challenge to being subject to SORNA for all pre-SORNA offenders. The court rejected both challenges and found SORNA's registration requirements are not an ex post facto violation. (*Id*. at page 193.)

Likewise, *Young* discussed the *Mendoza* factors when addressing whether SORNA, as a whole, was an ex post facto violation for a 2001 conviction. It concluded that SORNA was not punitive and thus was not an ex post facto violation. *United States v. Young*, 585 F.3d 199, 204 (5th Cir. 2009).

Some of the cases cited by this Court addressed the ex post facto question in the context of a prosecution for failing to register after the SORNA was passed. However, that does not undo the holding in *Willman* that SORNA was not an ex post facto violation. *Willman,* 972 F.3d at 824. Willman was convicted for a 1993 sexual crime, i.e., assault with intent to commit criminal sexual conduct involving penetration in violation of Mich. Comp. Laws § 750.520g(1). *Id.* at 822. SORNA was passed in 2006 and subjected him to registration, which means since 2006 he was on notice of his registration obligations.

14

The suggestion that this Court did not consider the arguments as advanced here is not well taken, as this Court cited the cases that expressly evaluated the *Mendoza* factors as noted, and in fact, the attorney of record here filed an amicus brief in *Willman,* making arguments like the ones pressed below.  *See* the ACLU amicus brief filed on March 3, 2020 in *Willman*.  (Brief, R. 173-2, Page ID # 9292-9336.)  The court below had no authority to refuse to follow binding precedent from this Court.  The holding was clear and the lower's complaint of about the "terse" analysis notwithstanding does not change the precedential nature of the decision.

### (ii)   The *Mendoza* factors show that the new SORA is not punishment.

When the *Mendoza* factors are examined, which courts must do, it leads to the conclusion that the new SORA is not punishment.  *Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza–Martinez*, 372 U.S.144, 168–169 (1963)).  The State examined the *Mendonza* factors in detail in its motion for summary judgment and will not repeat them at length here but highlights several points.  (Motion for Summary Judgment, R. 129, Page ID # 7133-7149.)

## <u>New SORA is not banishment or shaming and does not resemble probation or parole</u>

- The new SORA no longer includes exclusionary zones.  Mich. Comp. Laws §§ 28.733-736.

- Information provided to the public is "accurate information about a criminal record, most of which is already public."  *Smith v. Doe*, 538 U.S. 84, 98 (2003).  "[O]ur criminal law tradition insists on public indictment, public trial, and public imposition of sentence."  *Id.* at 99 ("The publicity may cause adverse consequences for the convicted defendant, running from mild personal embarrassment to social ostracism.  The purpose and the principal effect of notification are to inform the public for its own safety, not to humiliate the offender.  Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.").  *Id.*

- A registrant's tier information is no longer public.  Mich. Comp. Laws § 28.728(3)(e).

- A registrant's email address or internet identifiers are not posted on the public Sex Offender website.[2]  And they no longer have to be reported based on the district court's opinion.

- There is no place on the public Sex Offender website for members of the public to post comments about registrants.

- SORA is notification based, and not permission based like probation or parole.  Registrants are free to go and do as they please, unlike probation or parole where they need permission from a probation officer to do many routine things and are required to comply with many onerous requirements.[3]

---

[2] Michigan Sex Offender Registry, https://mspsor.com/ (last accessed May 29, 2025).

[3] *See* table comparing requirements of SORA registration vs parole/probation requirements at Table, R. 129, Page ID # 7138-7139.

## New SORA does not impose an
## affirmative disability or restraint

- The new SORA no longer includes exclusionary zones.  Mich. Comp. Laws §§ 28.733-736.

- The new SORA allows minor changes to personal information to be made by mail.[4]

- The new SORA requires any violations of the SORA to be willful. Mich. Comp. Laws § 28.729.

- In-person reporting is not punitive, or is not a restraint at all.  *See* case law cited in Motion for Summary Judgment, R. 129, Page ID # 7140-7141.

## New SORA does not promote the aims of punishment

- The new SORA encourages victims to come forward, which protects the public from commission of potential future crimes.

- It promotes deterrence, but that alone does not make it punitive. *Smith*, 538 U.S. at 102.

## New SORA has a rational connection
## to a non-punitive purpose

- The new SORA is designed to protect the public.

- There is a high societal cost of rape of between $100,000 and $300,00 per victim, and most victims are minors.

---

[4] Michigan State Police, Forms, Sex Offender Registry, RI-004A, https://www.michigan.gov/msp/forms-stats/forms

 (last accessed May 29, 2025).

<u>**New SORA in not excessive**</u>

- One in five women experience an attempted or completed rape in their life.

- Most sexual assaults are not reported to police.

- Conclusions about recidivism based solely on official data on convictions for criminal sexual conduct, do not provide meaningful information since most crimes are unreported.

- An individual risk assessment for each sex offender to determine their current level of dangerousness would costs hundreds of millions of dollars.

### c.    The district court should not have relied on *Does I*.

Rather than rely on *Willman*, the district court relied on this

Court's earlier ruling in *Does I*, which reviewed Michigan's prior SORA

before its legislative revision in 2021.  *Does #1-5 v Snyder*, 834 F.3d 696

(6th Cir. 2016) (*Does I*).  In *Does I,* this Court found that the

exclusionary zones and the in-person reporting requirements violated

the ex post facto clause.  *See Does I*, 834 F.3d at 706.  It did not discuss

the retroactive extension of reporting requirements at all.  *Id.*

After the *Does I* decision from this Court, and the *Does II* decision,

the Michigan legislature amended the SORA to address the provisions

that this Court and the district court found unconstitutional.  "The new

18

SORA became effective March 24, 2021, and *all parties acknowledge that the new SORA removes or modifies all provisions that this court found to be unconstitutional* in its February 14, 202[0] opinion in *Does II*." *Doe v. Snyder*, 606 F.Supp.3d 608, 613 (E.D. Mich., 2021) (emphasis added).  Recently, this Court also noted that the new SORA "removed or modified the provisions that *Does II* had declared unconstitutional." *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023).

The new SORA repealed the student safety zone provisions in their entirety; removed the in-person reporting requirements for vehicle information, email addresses, internet identifiers, and telephone numbers; removed the registration requirement for the vast majority of juvenile offenders; removed the requirement for the remaining juvenile offenders to be listed on the public registry; and eliminated the tier information on the publicly accessible SORA website.  2020 Mich. Pub. Act 295; Mich. Comp. Laws § 28.733-736; § 28.725(2)(a); and § 28.728(3)(e).

Under the old SORA, registrants had "to appear in person before law enforcement to report even minor changes to their information." *Does I*, 834 F.3d at 705.  The new SORA allows registrants to report

minor changes by mail.  Mich. Comp. Laws § 28.725(2).[5]  Although the statute allows the Michigan State Police (MSP) to prescribe other methods of reporting major changes in information, currently MSP requires those major updates to be made in person.  (e.g., the registrant changes their name or moves to a new residence, they must do so in-person.)  Mich. Comp. Laws § 28.725(1).

Quizzically, the district court opined that since MSP was not statutorily required to allow updates to be made by methods other than in-person, it was meaningless.  *Does III*, 751 F. Supp. 3d at 786, n 19. However, that is inconsistent with the reasoning in *Does I*, which took issue with requiring reporting of minor changes of information in-person.  *Does I*, 834 F.3d at 705.  The undisputed fact before the district court was that MSP allows minor changes in information to be made by mail rather than in-person.  (Update form, R. 126-18, Page ID # 6210-6212.)

---

[5] See Michigan State Police, Forms, Sex Offender Registry, RI-004A – Michigan Sex Offender Registry Mail-In Update, https://www.michigan.gov/msp/forms-stats/forms (last accessed May 29, 2025).

The record suggests that MSP plans to expand how registrants report changes to their information.  The database that supports the Michigan Sex Offender registry is relatively new.  MSP began using it in August 2021.  (Transcript, R. 126-8, Page ID # 6017.)  The contract for the new database requires the database to allow registrants to complete updates through their phones or other electronic devices.  (*Id.* at Page ID # 6020, p 73:25-74:21.)  Not only does the contract allow for it, MSP intends to add that option for registrants.  (*Id.*)

What is more, this Court recently explained that in the *Does I* opinion the Sixth Circuit only enjoined enforcement of two amendments to the old SORA – the exclusionary zones and the requirement that "all registrants to appear in person 'immediately' to update information such as new vehicles or 'internet identifiers' (*e.g.*, a new email account)." *Doe v. Lee*, 102 F.4th 330, 337 (6th Cir. 2024).  *See also Willman, 972 F. 3d at 822 n1* ("we determined that SORA [before its 2021 revision] was an unconstitutional ex post facto law because it was retroactive, and its stringent restrictions (such as severe limits on where sex offenders were allowed to live and work) constituted punishment.  (*Id.* at 698, 701–06.").

21

The reporting provisions identified by the Sixth Circuit in *Lee*, are updates that can now be made by mail. There is no dispute over that, and it is not meaningless simply because the change is not mandated in statute. MSP apparently changed its practices related to the methods available for registrants to report minor changes to personal information, presumably based on judicial guidance, and as allowed under the statute.

### d.   Michigan state courts have held that the SORA is not an ex post facto violation.

The Michigan Court of Appeals recently found that, at least with respect to sex offenders with convictions for CSC-I, the new SORA is not an ex post facto violation. *See People v. Kiczenski,* ___ N.W.3d ___, No. 364957, 2024 WL 4595174, at *10 (Mich. Ct. App. Oct. 28, 2024); and *In re Harder*, ___ N.W.3d ___, No. 368645, 2025 WL 825907, at *12 (Mich. Ct. App. Mar. 14, 2025).

Those decisions conflict with the district court's conclusions. The amended judgment, once it takes effect, enjoins the Governor and the Colonel of the Michigan State Police from enforcing the law against those in the ex post facto subclass, which represents more than two-

thirds of all registrants, or more than 30,000 offenders.  (Amended Judgment, R. 177, Page ID # 9379.)

While federal lower court decisions are persuasive, they are not binding on state courts.  *Abela v. Gen. Motors Corp.*, 469 Mich. 603, 606 (2004) (citing *Winget v. Grand Trunk W. R. Co.,* 210 Mich. 100, 117 (1920)).  In other words, state courts are bound to follow the holding in the published state court opinions in *Kiczenski* and *In re Harder* despite the holding by the district court to the contrary.  It is worth noting that the injunction is only against Governor Whitmer and Colonel Grady.  Local law enforcement agencies are not subject to the injunction and are bound to follow the state court opinions.  Such a posture invites chaos.  This Court should stay the effect of the final judgment until the merits are resolved.

> **2.    The State is likely to prevail on the claim that the rights of registrants with out-of-state convictions are protected by their right to appeal an administrative determination.**

Individuals with out of state convictions must register in Michigan under either Mich. Comp. Laws § 28.723(1)(d), or if the out-of-state conviction is "substantially similar" to a Michigan offense.  Mich. Comp. Laws § 28.722(r)(xi), (t)(xii), (v)(x).

MSP makes the determination about what out-of-state offenses are substantially similar, and when there is no substantially similar offense, they determine what a registrant's obligations are in Michigan. *Does III*, 751 F. Supp. 3d at 818.  In instances where there is a substantial similar offense, but the registration obligations are less in the other jurisdiction than what is required under Michigan law, MSP opts to follow the Michigan law.

The State argued that there is already a process in place for registrants to challenge the determinations made by MSP related to out-of-state offenders' registration obligations in Michigan.  (Motion for Summary Judgment, R. 129, Page ID # 7191.)  The process is provided for in the Michigan Constitution and in statute.  *See* Mich. Const. of 1963, art. VI § 28 ("All final decision, findings, ruling and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law."); Mich. Comp. Laws § 600.631 (providing for an appeal from agency decisions.)

The district court rejected that process and held that it was a due process and equal protection violation because there must be a meaningful opportunity to be heard before a neutral decision maker and because the registration obligations could be harsher under Michigan law. *Does III,* 751 F. Supp. 3d at 819.

The district court enjoined requiring registration in Michigan for anyone with a conviction from another jurisdiction. (Amended Judgment, R. 177, Page ID # 9388.) This includes more than 3,000 registrants who will no longer have to register after the judgment takes effect on July 21, 2025.

The district court got it wrong because registrants do have an opportunity to be heard by a neutral decision maker. They can appeal the agency decision. What is more, the registrant was provided due process in the state of conviction and Michigan must honor that conviction under the full faith and credit clause. U.S. Const., art. 4, § 1; *Baker v Gen. Motors Corp.*, 522 U.S. 222, 235 (1998).

## B.    There will be irreparable harm to the people of Michigan.

The State has an interest in upholding the policy choice the Legislature made with respect to the regulatory scheme for sex

offenders.  "'[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'"  *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see also Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) ("When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws.")

The Legislature declared that the purpose of the law is to protect the people against future criminal sexual acts by convicted sex offenders, which is accomplished by providing the public with a means to monitor sex offenders.  Mich. Comp. Laws § 28.721a.  Here, the Michigan Legislature amended the SORA to remove the provisions of the old law that were found to be unconstitutional, which is a point recognized by Plaintiffs and the courts.  *Doe v. Snyder*, 606 F.Supp.3d 608, 613 (E.D. Mich., 2021); *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023).

If the judgment takes effect on July 21, 2025, more than 30,000 offenders will no longer have to register, and the members of the public will not be apprised of recently released sex offenders' presence in their neighborhood or within the circle of people they associate with.   The will of the people will be harmed.

**C.     There is no substantial injury.**

Issuing a stay will not cause substantial injury to Plaintiffs.  Even if the sex offenders in the ex post facto subclass or non-Michigan offense subclass are not required to register, they will still have a conviction for criminal sexual conduct on their record, which will impact their ability to obtain housing, gain employment, etc.

They will also still have to register under SORNA.

The burden to continue to register in Michigan during the appeal period is relatively minor in comparison to the chaos that would occur if they were told they no longer have to register, and then they have to register again after a favorable opinion is issued by this Court.  As many plaintiffs admitted in their depositions, it only takes a few hours a year to register.

What is more, it could be argued that not issuing the stay may cause a substantial injury by creating confusion amongst the registrants about what their obligations are.  If no stay is issued, tens of thousands of registrants will be informed over the coming months that they no longer need to register.  Then, if this Court reverses the district court opinion in the next year, they will be notified again that they need to register.  Throughout this litigation, Plaintiffs have continuously argued the registration obligations are confusing, onerous and are difficult to follow.  Not granting the stay will create chaos for the registrants, law enforcement and prosecutors.  A more measured and predictable approach is in all parties' best interest.

## D.    The public interest.

This factor weighs heavily in favor of the State.  The public has an interest in knowing whether a recently released sex offender lives next door, volunteers to work with youth, or asks someone out on a date.  Sex offenders in Michigan have more than a 10% reconviction rate, i.e., 5,268 – having been convicted of a subsequent sexual offense, which does not account for the radical underreporting of these crimes and the even smaller number of arrests.  (Jegla Affidavit, R. 129-14, Page ID #

7692; Seldon Declaration, R. 129-18, Page ID # 7755.)  This fact is staggering.  SORA allows Michigan residents to make informed decisions about who they associate with.

If a stay is not granted, then someone convicted in 1994 of criminal sexual conduct in the first degree for raping a child that spent 30 years in prison for their crime (being released in 2024), would not be included on the registry.  Public Act 295 of 1994, Mich. Comp. Laws § 28.725(3).  In other words, after committing a most egregious crime against a child, and having spent the last three decades under the constant supervision of the Department of Corrections where he had no access to children, that offender will, for the first time in 30 years, be able to commit another similar crime.

Several examples of the egregious crimes committed by sex offenders were included in the motion to stay in the district court, they are not repeated here but are incorporated by reference.  (Motion to Stay, R. 173, Page ID # 9212-9221; and Reply to Motion to Stay, R. 179, Page ID # 9400-9401.)

The victim of a criminal sexual assault, who was a 14-year-old child at the time of the assault, recently stated at the sentencing of the

perpetrator, "**My childhood was stolen from me, which altered my adult life.  I want nothing more than to go back in time and have a healthy childhood like everyone deserves but that's not what I was dealt in life.  I've had nightmares for years from the assault all the way into my adulthood."[6]**  She continued, **"I'm now 33 years old and the images of what happened to me as a child will never go away.  I've been to therapy and though it's a coping mechanism, it's not ever going to stop me from remembering the things this man has done to me when I was only a child."** (*Id.*)

The survivor added, "**I still need help dealing with this trauma that may never go away.  Even though the case is over, and trial is done, and all the lawyers and jury and everyone who watched during trial gets to move on with life, this incident is something I'll never forget."** (*Id.*)

The registry benefits the public by encouraging victims to come forward to report criminal sexual conduct.  (Dare Affidavit, R. 129-4,

---

[6] Attorney General Press Release,
https://content.govdelivery.com/accounts/MIAG/bulletins/3d1880b
(last accessed May 30, 2025.)

Page ID # 7572; Bennetts Declaration, R. 129-5, Page ID # 7579.)  If

tens of thousands of registrants are no longer on the registry, it may

well discourage victims from coming forward.

## CONCLUSION AND RELIEF REQUESTED

This Court should grant to stay to prevent more than 32,000 sex

offenders from falling off the registry.

Respectfully submitted,

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants-
Appellees Cross-Appellants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
Dated:  May 30, 2025                P75721

## CERTIFICATE OF SERVICE

I certify that on May 30, 2025, the foregoing document was served

on all counsel of record through the CM/ECF system.

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorneys for Defendants-
Appellees Cross Appellants

31

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This motion complies with the type-volume limitation of
Federal Rule of Appellate Procedure 27(d)(A) because, excluding the
part of the document exempted by Federal Rule of Appellate Procedure
32(f), this motion contains no more than 5,200 words.  This document
contains 5,198 words.

2.    This document complies with the typeface requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-style
requirements of Federal Rule of Appellate Procedure 32(a)(6) because
this document has been prepared in a proportionally spaced typeface
using Word 2013 in 14-point Century Schoolbook.

/s/ *Eric M. Jamison*
Assistant Attorney General
Attorney for Defendants-
Appellees Cross-Appellants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov

Dated:  May 30, 2025                          P75721

2022-0341402-B