No. 25-1413/25-1414

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MARY DOE; JOHN DOE A; JOHN DOE B; JOHN DOE C; JOHN DOE D;
JOHN DOE E; JOHN DOE G; JOHN DOE H; and MARY ROE,
*Plaintiffs - Appellants Cross-Appellees*

v.

GRETCHEN WHITMER, Governor of the State of Michigan;
JAMES GRADY, II, Colonel,
*Defendants - Appellees Cross-Appellants*

On Appeal from the United States District Court
for the Eastern District of Michigan,
Case No. 2:22-cv-10209 (The Honorable Mark A. Goldsmith)

## PLAINTIFFS – APPELLANTS CROSS APPELLEES' RESPONSE IN OPPOSITION TO DEFENDANTS – APPELLEES CROSS APPELLANTS' MOTION TO STAY THE JUDGMENT

Miriam Aukerman
Ewurama Appiagyei-Dankah
ACLU Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

Bonsitu Kitaba-Gaviglio
ACLU Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6823

Allison Frankel
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Paul D. Reingold
Cooperating Counsel
ACLU Fund of Michigan
Univ. of Michigan Law School
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiffs – Appellants Cross Appellees make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   Answer: No.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................1

BACKGROUND ..................................................................................1

LEGAL STANDARD..........................................................................3

ARGUMENT .......................................................................................4

I.    Defendants Have Not Established a Strong Likelihood of Success on the Merits. ..................................................................................4

    A.    Count I – Retroactive Imposition of Punishment.................................4

        1.    SORA 2021 Retains the 2011 Amendments that Violated the Ex Post Facto Clause in *Does I*............................................4

        2.    The District Court Correctly Applied the *Mendoza-Martinez* Factors to the Record...................................................5

            a.    SORA Imposes Sanctions Historically Regarded as Punishment. ....................................................................6

            b.    SORA Imposes Severe Obligations, Disabilities, and Restraints....................................................................9

            c.    SORA Serves Traditional Aims of Punishment. ............10

            d.    SORA Is Not Rationally Related to Non-Punitive Interests. .........................................................................10

            e.    SORA Is Excessive in Relation to Non-Punitive Interests.........................................................................11

        3.    The District Court Correctly Relied on *Does I*. .........................16

        4.    Defendants Cannot Avoid the Outcome of the *Mendoza-Martinez* Analysis by Citing *Willman*. ....................................19

    B.    Count II – Retroactive Extension of Registration Terms....................23

    C.    Count XI –Non-Michigan Convictions. ..............................................25

II.    Defendants Have Not Shown Irreparable Injury. .........................................26

III.    Enforcing an Unconstitutional Law Substantially Harms Plaintiffs. ............28

IV.    Upholding Constitutional Rights Advances the Public Interest. ...................29

CONCLUSION .....................................................................................................31

EXHIBITS

A.    Michigan Sex Offenders Registration Act, M.C.L. 28.721 et seq.

B.    SORA 2021 with Highlighted Changes

C.    Expert Report on Class Data

D.    Transcript of Oral Argument in *Does I v. Snyder* (Excerpt)

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Perez*, 585 U.S. 579 (2018) .....................................................27

*Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 594 U.S. 758 (2021)...........................................................................................................4

*Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022) .....................................3

*Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927 (6th Cir. 2002)............26

*Bays v. City of Fairborn*, 668 F.3d 814 (6th Cir. 2012) .........................................27

*Carpenter v. United States*, 585 U.S. 296 (2018) .............................................. 8, 22

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022).......................................11

*Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728 (6th Cir. 2021)......................31

*Detroit Free Press, Inc. v. Dep't of Just.*, 829 F.3d 478 (6th Cir. 2016)............ 8, 22

*Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009)..........................22

*Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123 (Md. App. Ct. 2013) ........................................................................................................16

*Doe v. Lee*, 102 F.4th 330 (6th Cir. 2024) ....................................... 17, 18

*Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015)....................................................16

*Doe v. State*, 189 P.3d 999 (Alaska 2008) ............................................................16

*Does v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) ........................................1

*Does v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015) ........................................1

*Does v. Snyder*, 606 F. Supp. 3d 608 (E.D. Mich. 2021) .....................................18

*Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017)............................................................................................... passim

*Does v. Wasden*, 982 F.3d 784 (9th Cir. 2020)................................................ 21, 22

*Does v. Whitmer*, 449 F. Supp. 3d 719 (E.D. Mich. 2020).............................. 2, 17

*Does v. Whitmer*, 69 F.4th 300 (6th Cir. 2023) .....................................................18

*Gonzalez v. State*, 980 N.E.2d 312 (Ind. 2013).....................................................24

*Henderson v. Thomas*, 891 F. Supp. 2d 1296 (M.D. Ala. 2012) ............................22

*Hinrichs v. Bosma*, 440 F.3d 393 (7th Cir. 2006) .......................................4

*Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951 (E.D. Wis. 2017) ...........................................................................................21

*In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015) ....................................4

*In re T.B.*, 489 P.3d 752 (Colo. 2021) ......................................................11

*Kansas v. Hendricks*, 521 U.S. 346 (1997) ..............................................16

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) ...............................5

*Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022). ....................... 3, 29, 31

*Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022) ...........................21

*Kyllo v. United States*, 533 U.S. 27 (2001) ...............................................8

*McClellan v. Cnty of Chippewa*, 634 F. Supp. 3d 404 (W.D. Mich. 2022) ...........27

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150 (6th Cir. 1991) ...................................................... 3, 4, 26

*Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) .......................................19

*Miller v. Stovall*, 641 F. Supp. 2d 657 (E.D. Mich. 2009) .......................28

*Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565 (D. Vt. 2015) ............22

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................3, 4

*Obama for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) ..................28

*Ortiz v. Breslin*, 142 S. Ct. 914 (2022) ...................................................11

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021) ................................. passim

*People v. Kiczenski*, No. 364957, __ N.W.3d __, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024) ..................................................27

*People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528 (Mich., July 29, 2024) ......................................................... 6, 7, 10, 20

*People v. Temelkoski*, 859 N.W.2d 743 (Mich. Ct. App. 2014) ...............27

*People v. Tucker*, 879 N.W.2d 906 (Mich. Ct. App. 2015) .....................27

*Prynne v. Settle*, 848 F. App'x 93 (4th Cir. 2021) ..................................21

*Quispe del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522 (Md. Ct. Spec. App. 2015)................................................................24

*Riley v. California*, 573 U.S. 373 (2014) ...................................................8

*Smith v. Doe*, 538 U.S. 84 (2003). .............................................. 5, 8, 18

*South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018)................................22

*Starkey v. Okla. Dep't of Corrs.*, 305 P.3d 1004 (Okla. 2013). ...........16

*State v. Letalien*, 985 A.2d 4 (Me. 2009)......................................... 16, 24

*State v. Williams*, 952 N.E.2d 1108, (Ohio 2011)....................................16

*United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938) ...................21

*United States v. Carter*, 463 F.3d 526 (6th Cir. 2006) ...........................11

*United States v. Elkins*, 683 F.3d 1039 (9th Cir. 2012) ..........................21

*United States v. Felts*, 674 F.3d 599 (6th Cir. 2012) ..............................20

*United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010)............................21

*United States v. Juv. Male*, 590 F.3d 924 (9th Cir. 2010), *judgment vacated as moot*, 564 U.S. 932 (2011) ...............................................22

*United States v. Lawrance*, 548 F.3d 1329 (10th Cir. 2008)..................21

*United States v. Leach*, 639 F.3d 769 (7th Cir. 2011), *overruled by Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022)................................20

*United States v. Shenandoah*, 595 F.3d 151 (3d Cir. 2010) ...................21

*United States v. Wass*, 954 F.3d 184 (4th Cir. 2020)..............................21

*United States v. Young*, 585 F.3d 199 (5th Cir. 2009)............................21

*Wallace v. State*, 905 N.E.2d 371 (Ind. 2009) .......................................16

*Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020) ...........................................................................................19

**Statutes**

M.C.L. § 28.721a. ...................................................................................10

M.C.L. § 28.724 .......................................................................................7

M.C.L. § 28.724a ......................................................................................7

M.C.L. § 28.725 ................................................................................7

M.C.L. § 28.727 ................................................................................7

M.C.L. § 28.729 ................................................................................7

**Other Authorities**

Ira Mark Ellman & Tara Ellman, *Frightening and High: The Supreme
Court's Crucial Mistake About Sex Crime Statistics*, 30 Const.
Comment. 495 (2015) .........................................................................23

## INTRODUCTION

For over a decade, courts have repeatedly held that Michigan's Sex Offenders Registration Act (SORA) is unconstitutional. In this case—the third major federal challenge—the district court after more than three years of litigation entered a final judgment likewise finding aspects of SORA unconstitutional. The court gave the state three months (and potentially longer) to fix SORA's defects.

Defendants ask this Court—on an emergency basis without full briefing or time to become familiar with the massive record—to stay the final judgment on three counts that Defendants lost: Count I, retroactive application of SORA to pre-2011 registrants; Count II, retroactive extension of registration terms to life; and Count XI, registration for non-Michigan convictions. Plaintiffs are entitled to relief unless Defendants can satisfy the demanding requirements for a stay. They cannot.

## BACKGROUND

In *Does v. Synder* (*Does I*), six plaintiffs challenged SORA as amended in 2011. The district court found portions of SORA unconstitutional, and this Court held that SORA's retroactive application violated the Ex Post Facto Clause. *Does I*, 101 F. Supp. 3d 672 (E.D. Mich. 2015), 101 F. Supp. 3d 722 (E.D. Mich. 2015), 834 F.3d 696 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017).

Michigan, however, continued enforcing SORA. So registrants filed a class action. In 2020, the court granted class-wide relief on all claims but gave the legis-

1

lature three months to act. *Does v. Whitmer* (*Does II*), 449 F. Supp. 3d 719 (E.D. Mich. 2020). After COVID hit, the court enjoined SORA's enforcement (as registrants could not follow stay-at-home orders and SORA) and gave the legislature additional time. *Does II*, No. 16-cv-13137, R. 91. That injunction remained in effect from February 2020 to March 2021. *Id.*, R. 126. There is no evidence that the year-long bar on SORA enforcement had any impact on public safety whatsoever.

When Michigan finally revised SORA, it made minimal changes: SORA 2021 retained the identical tier system, identical lengthy/lifetime registration terms, virtually identical reporting requirements, and online public registry.

Plaintiffs then filed this case, which was intensively litigated. Experts analyzed registry data—the first such analysis—providing a picture of Michigan registrants that defies common assumptions, plus hard numbers showing recidivism rates are low and drop even further over time. Data Rept., R. 123-6 (Ex. C). The summary judgment record totaled over 4,500 pages; the parties' fact statements, over 600 pages. The district court issued two lengthy opinions and a final judgment. Op., R. 158; Op. R. 171; Am. Judgment, R. 177.

The court didn't order anyone removed from the registry immediately but instead embedded a 90-day stay—with possible extensions—for the state to address SORA's constitutional deficiencies. Am. Judgment, R. 177, PageID #9391. The state controls what happens. Even if the legislature doesn't act, **everyone who committed**

**registrable offenses in Michigan within the last 14 years will remain on the registry**. Registration will be enjoined only for people (a) whose offenses are more than 14 years old (who, the district court found, are unlikely to recidivate), and (b) who have non-Michigan convictions, most of whom likewise have quite old convictions. Stay Op., R. 192, PageID #9502.

## LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). Accordingly, "the heavy burden for making out a case for such extraordinary relief rests on the moving party." *Kentucky v. Biden*, 23 F.4th 585, 593 (6th Cir. 2022) (cleaned up). The burden is even higher where, as here, the movant is not seeking to stay a preliminary injunction, but rather a final order "made after the district court has considered fully the merits of the underlying action and issued judgment." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).

Courts assess four "interrelated questions" to determine if a stay is warranted: "(1) Has the applicant made 'a strong showing that he is likely to succeed on the merits'? (2) Would the applicant be 'irreparably injured absent a stay'? (3) Would a stay 'substantially injure the other parties' in the case? and (4) What does 'the public interest' favor?" *Arizona v. Biden*, 31 F.4th 469, 474 (6th Cir. 2022) (quoting *Nken*,

3

556 U.S. at 434). The movant must "address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Griepentrog*, 945 F.2d at 154.

Appellate courts reviewing stay appeals must give "proper regard to ... the District Court's 'feel' of the case." *In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015). "[T]he district court's findings of fact [are reviewed] for clear error, its balancing of the factors under the abuse of discretion standard and its legal conclusions de novo." *Hinrichs v. Bosma*, 440 F.3d 393, 396 (7th Cir. 2006).

## ARGUMENT

## I. Defendants Have Not Established a Strong Likelihood of Success on the Merits.

Defendants must make a "strong showing" that they are likely to prevail. *Ala. Ass'n of Realtors v. Dep't of Health and Hum. Servs.*, 594 U.S. 758, 762 (2021). A "mere 'possibility' of success on the merits" is insufficient. *Griepentrog*, 945 F.2d at 153.

### A. Count I – Retroactive Imposition of Punishment.

#### 1. SORA 2021 Retains the 2011 Amendments that Violated the Ex Post Facto Clause in *Does I*.

This Court held in *Does I* that SORA 2011 violated the Ex Post Facto Clause. The fact that people convicted of sex offenses "are so widely feared and disdained … implicates the core counter-majoritarian principle embodied in the … clause." *Does I*, 834 F.3d at 705–06. Michigan's law was "something altogether different

4

from and more troubling than" the "first-generation registry law" in *Smith v. Doe*, 538 U.S. 84, 100 (2003) (upholding registry that had only "minor and indirect" consequences). *Does I*, 834 F.3d at 705. This Court cautioned that *Smith* cannot "be understood as writing a blank check to states to do whatever they please in this arena." *Id.*

*Does I* held that SORA's 2006 amendments (which imposed exclusion zones), and 2011 amendments (which retroactively converted most registrants' terms to life, restructured the registry into tiers, and required extensive reporting and updating of personal information) constituted punishment and that their retroactive application "must therefore cease." *Id.* at 706. The Michigan Supreme Court likewise held that SORA 2011 violates the Ex Post Facto Clause. *People v. Betts*, 968 N.W.2d 497 (Mich. 2021).

SORA 2021 excised the 2006 amendments but left the 2011 amendments almost entirely intact. Plaintiffs' Statement of Material Facts (SOMF), R. 123-1, PageID #3734-3739; SORA 2021 with Highlighted Changes, R. 123-4 (Ex. B). Because SORA 2021 retains provisions this Court held were punitive, it has the same core constitutional defects as SORA 2011.

**2. The District Court Correctly Applied the *Mendoza-Martinez* Factors to the Record.**

Like this Court in *Does I*, the district court applied the intent-effects test and factors from *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). On the intent

question, the court relied on *Does I*'s holding that although "some features might suggest a punitive aim," SORA had a non-punitive purpose. Op., R. 158, PageID #8685-8687. The court then reviewed the *Mendoza-Martinez* factors against the voluminous record, and correctly concluded that SORA 2021, like SORA 2011, is punishment. *Id.*, PageID #8687-8699.

### *a.  SORA Imposes Sanctions Historically Regarded as Punishment.*

The district court—like this Court and the Michigan Supreme Court—held that SORA resembles parole/probation. *Id.*, PageID #8689-8690; *Does I*, 834 F.3d at 702-703; *Betts*, 968 N.W.2d at 510; *People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528, *7-9 (Mich., July 29, 2024). As the Michigan State Police's (MSP) registry coordinator testified: SORA and parole are like having "two sets of parents" with comparable but slightly different rules. SOMF, R. 123-1, PageID #3797.

SORA 2021 "contain[s] the same onerous reporting requirements" as SORA 2011.[1] Op., R. 158, PageID #8683. It still requires "time-consuming and cumbersome" reporting akin to probation/parole, compelling registrants to interrupt their

---

[1] Although SORA 2021 *allows* MSP to establish alternatives to in-person reporting, because this is optional the court found it isn't meaningfully different from SORA 2011. Op., R. 158, PageID #8683 n. 19. Currently MSP requires all changes except vehicles, phones, and domestic travel to be reported in person. SOMF, R. 123-1, PageID #3785-3788. Defendants assert—based on vague 2023 testimony— that MSP intends to allow online reporting. Defs' Brf, Doc. 21-1, at 23. MSP hasn't done so in the intervening two years.

lives "with great frequency in order to appear in person before law enforcement to report even minor changes to their information"—often in person and within three days, and in most cases for life. *Does I*, 834 F.3d at 703, 705; M.C.L. §§ 28.724a, 28.725, 28.725a, 28.727; Obligations Summary, R. 123-3, PageID # 3919-3922. The court rejected Defendants' argument that SORA is notification-based, while probation/parole is permission-based, as factually incorrect. Op., R. 158, PageID #8691; SORA/Probation/Parole Comparison Chart, R. 131-10 (showing SORA resembles, but can be more onerous than, probation/parole). Further, SORA "continues to impose substantial law-enforcement oversight and interaction on registrants," *Lymon*, 2024 WL 3573528, *7, and is intertwined with the criminal law.[2] Failure to meet reporting requirements can result in imprisonment, just like probation/parole. *Id.* Sentences for violations—up to ten years—exceed those for many probation/parole violations. M.C.L. § 28.729; SORA/Probation/Parole Comparison Chart, R. 131-10.

SORA also resembles shaming, marking registrants as outsiders who "cannot be fully admitted into the community." *Does I*, 834 F.3d at 704. The court rejected Defendants' argument that SORA merely makes criminal history more available: "re-packaging information and providing it to the public in a different form can in

---

[2] Judges cannot sentence people on registrable offenses unless they are registered; the registration requirement is recorded on the judgment; and criminal justice agencies handle registration. M.C.L. § 28.724(5); SOMF, R. 123-1, PageID #3837.

and of itself increase shaming." Op., R. 158, PageID #8689. The registry "signals a highly dangerous type of criminal who requires constant public monitoring and scrutiny." *Id.* The website doesn't just list convictions; its architecture "encourage[s] browsing, mapping, and tracking registrants." Lageson Rept., R. 123-14, PageID #4484.

*Smith* rejected shaming analogies, reasoning that Alaska's registry was "analogous to a visit to an official archive of criminal records." 538 U.S. at 99. But as the Supreme Court has emphasized since, constitutional analysis must account for evolving technology. *See Carpenter v. United States*, 585 U.S. 296, 311-12 (2018); *Riley v. California*, 573 U.S. 373, 385 (2014); *Kyllo v. United States*, 533 U.S. 27, 35–36 (2001). This Court, too, has recognized that the internet revolution changed the consequences of disseminating criminal history information. *See Detroit Free Press, Inc. v. Dep't of Just.*, 829 F.3d 478, 485 (6th Cir. 2016) (en banc) ("In 1996, this court could not have known or expected that a booking photo could haunt the depicted individual for decades. Experience has taught us otherwise.").

Here, the record establishes that "[t]echnology has dramatically changed the form, function, and reach of registry information in the nearly two decades" since *Smith*—a time when only 15% of Americans had home internet. Lageson Rept., R. 123-14, Page ID #4484-4494. The public can subscribe to notifications about regis-trants' movements, and registry information is "pushed" on internet users who are

8

not seeking it. *Id.* PageID #4484-4485, 4503; *Betts*, 968 N.W.2d at 509 (discussing harms from publication of information "far beyond a registrant's criminal history"). Today, digital labeling effectively cuts registrants "out of social, institutional, and technological life," causing damage "far beyond the type and extent of harm the Supreme Court considered in 2003" in *Smith*. Lageson Rept., R. 123-14, PageID #4484. Like SORA 2011, SORA 2021 "brands registrants as moral lepers" and "consigns them to years, if not a lifetime, of existence on the margins." *Does I*, 834 F.3d at 705.

### b. *SORA Imposes Severe Obligations, Disabilities, and Restraints.*

SORA demands strict compliance with a dizzying array of "significant restraints on how registrants may live their lives." *Id.* at 703. Registrants must report *in person*, in most cases *every three months for life*; disclose extensive information for internet publication; report many changes *in person within three days* (e.g., volunteering); and report other minor changes (e.g., new phone number) *within three days* in person or by mail. They must report travel, have biometrics and photos taken, and pay an annual fee. Obligations Summary, R. 123-3, PageID #3916-3922. For fear of inadvertently violating these obligations, registrants curtail basic human activity, like traveling to their parents' funerals. SOMF, R. 123-1, PageID #3822. As in *Does I*, such requirements "are direct restraints on personal conduct" which exceed those in *Smith* "by an order of magnitude." *Does I*, 834 F.3d at 703; *see Betts*,

968 N.W.2d at 511-512.

Registrants are also subject to ongoing supervision, including police sweeps. SOMF, R. 123-1, PageID #3791-3796. Failure to comply carries "the threat of serious punishment, including imprisonment," *Does I*, 834 F.3d at 703—"the 'paradigmatic' affirmative restraint." *Betts*, 968 N.W.2d at 510 (quoting *Smith*, 538 U.S. at 86). Since SORA's enactment, tens of thousands of registrants have been prosecuted. SOMF, R. 123-1, PageID #3800. And the threat of "being lugged off in cold irons bound … [is] always in the background." *Does I*, 834 F.3d at 703.

### c. SORA Serves Traditional Aims of Punishment.

This Court found that SORA 2011 "advances all the traditional aims of punishment," including retribution because "it looks back at the offense (and nothing else) in imposing its restrictions." *Id*. at 704. SORA 2021 does the same thing. *See Lymon*, 2024 WL 3573528, *10-11.

### d. SORA Is Not Rationally Related to Non-Punitive Interests.

SORA's stated purpose is "preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders." M.C.L. § 28.721a. The record here, as in *Does I*, establishes that "offense-based public registration has, at best, no impact on recidivism"; shows registry laws "may actually *increase* the risk of recidivism, probably because they exacerbate risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into

10

their communities;" and "provides scant support for the proposition that SORA in fact accomplishes its professed goals." *Does I*, 834 F.3d at 704-705; *see* SOMF, R. 123-1, PageID #3739-3743. Defendants' expert agreed: "the research has been pretty consistent that [registries are] not effective." *Id.*, PageID #3741. SORA also misidentifies the source of the risk: 90 to 95% of convictions for sexual offenses involve people who are not on registries. *Id.*

Courts have increasingly recognized that registries don't work. *See*, *e.g.*, *Ortiz v. Breslin*, 142 S. Ct. 914, 916 (2022) (Sotomayor, J., re. denial of certiorari); *Betts*, 968 N.W.2d at 514; *Cornelio v. Connecticut*, 32 F.4th 160, 173 & n.7 (2d Cir. 2022); *State v. Hinman*, 530 P.3d 1271, 1278 (Mont. 2023); *In re T.B.*, 489 P.3d 752, 768 (Colo. 2021).

The district court ultimately concluded that registries are rational. The question, however, is not whether *a* registry is rational, but whether *this* registry is rational. Because, as the record establishes, SORA imposes pointless restrictions on tens of thousands of people, many of whom have lived successfully in the community for decades, it is not. *See United States v. Carter*, 463 F.3d 526, 531-32 (6th Cir. 2006).

### e. SORA Is Excessive in Relation to Non-Punitive Interests.

The central features of SORA 2011 that this Court found excessive—the byzantine code of endless requirements, stigmatization, lengthy/lifetime terms, and

lack of *any* individualized assessment or opportunity for removal—remain. As before, "while the statute's efficacy is at best unclear, its negative effects are plain on the law's face … [The law's] punitive effects ... far exceed even a generous assessment of [its] salutary effects." *Does I*, 834 F.3d at 705.

SORA's harsh regime is premised on the common—but false—belief that people convicted of sex crimes are forever likely to recidivate. In fact, recidivism rates for sex crimes are lower than for almost all other crimes. SOMF, R. 123-1, PageID #3761-3762. **Here, there is hard data on the very population at issue**. Of Michigan registrants in the community,[3] 93% have never been convicted of a subsequent registrable offense. Data Rept., R. 123-6, PageID #3952-3953.

SORA is excessive for three core reasons. First, SORA "fail[s] to distinguish between the large percentage of people who present a lower risk of re-offending (especially over time) and the much smaller percentage of people who present a higher risk of re-offending (although that risk also decreases over time)." Letourneau Rept., R. 123-9, PageID #4219. Both sides' experts agree that:

- Recidivism risk varies among people with sex offense convictions. The recidivism risk for many registrants is low.

- The offense of conviction does not predict recidivism risk.

- The longer people remain in the community without a new sexual

---

[3] SORA seeks to manage people in the community, so *their* rate is the relevant one. The rate is slightly higher—10%—if one includes incarcerated registrants. Data Rept., R. 123-6, PageID #3963.

conviction, and the older people get, the less likely they are to recidivate.

- The recidivism risk for many registrants has declined over time so that they are now just as safe as the general population.[4]

Hanson Rebuttal, R. 123-8, PageID #4182-4185.

Nevertheless, SORA 2021, like SORA 2011, "makes no provision for individualized assessments" nor opportunities for removal, even upon the clearest proof of rehabilitation. *Does I*, 834 F.3d at 705. SORA 2021 retains the 2011 amendments' categorization of people into tiers "ostensibly corresponding to present dangerousness" without any individual review. *Id.* Yet Michigan's tier classifications are actually *inversely* correlated: people in the highest tier are the lowest risk. SOMF, R. 123-1, PageID #3768-3770. Take plaintiff Doe C who had sex with a 15-year-old he met at an over-18 club; they have since married and have three children. *Id.*, PageID #3703-3704. But he remains a Tier III lifetime registrant with no path off the registry (even though he was also a plaintiff in *Does I*).

Second, SORA's lengthy registration terms are excessive: 73% of registrants are on for life. Data Rept., R. 123-6, PageID #3952. Yet risk drops dramatically over time in the community and with age. SOMF, R. 123-1, PageID #3749-3765. The

---

[4] The fact that sex crimes are underreported does not change this reality. The relevant question is whether people *with* sex offense convictions commit more sex offenses than people *without* such convictions. There are undetected offenses for *both* groups. Thus, the existence of undetected offenses does not affect the comparison between the offense rates of registrants and non-registrants. SOMF, R. 123-1, PageID #3890-3897.

13

court found that "for most registrants, the risk of being convicted of a new sex offense is no higher than the risk for non-registrants after a registrant has lived in the community without a conviction for 10 years." Stay Op., R. 192, PageID #9502. Further, "even for the highest risk offenders, the recidivism risk matches that of non-registrants after 20 years." *Id.* Defendants cannot show these factual findings are clearly erroneous. SOMF, R. 123-1, PageID #3752-3755.

Michigan registry data establishes that the longer people live in the community without recidivating, the lower their risk:

### Rates of New Recidivism of People by 5-year Cohorts, Based on Release Date

| Cohort | Pop. | 5-year | 10-year | 15-year | 20-year |
|---|---|---|---|---|---|
| 1995–1999 | 10,672 | 5.0% | 2.1% | 1.5% | 1.1% |
| 2000–2004 | 9,796 | 4.5% | 1.9% | 1.6% | N/A |
| 2005–2009 | 8,065 | 3.6% | 1.6% | N/A | N/A |
| 2010–2014 | 6,176 | 2.7% | N/A | N/A | N/A |

Data Rept., R. 123-6, PageID #3967.[5]

**Experts estimate that between 17,000-19,000 Michigan registrants—half of those in the community—are just as safe as non-registrants, and thousands**

---

[5] The table shows recidivism rates for registrants released in 5-year cohorts (e.g., released between 1995-1999). The rates describe the percentage in each cohort convicted of a subsequent registrable offense for the first time at each follow-up interval. For example, the 20-year rate captures the proportion of cohort members who recidivated for the first time between the 15- and 20-year follow-up intervals.

**more present only a slightly higher risk**. Data Rept., R. 123-6, PageID #3967-3973. Registration of "these very low risk individuals serve[s] no public protection function." Hanson Rept., R. 123-7, PageID #4007.

Third, SORA imposes burdens that serve no purpose. For instance, registrants must report backing a roommate's car out of the driveway, and must report *in person within three days* if they are paid for shoveling a neighbor's sidewalk or use a library other than their own school's. Op., R. 171, PageID #9173-9181; Proposed Notice, R. 193-3, PageID #9533-9536. Meanwhile, law enforcement doesn't use the registry to investigate crimes. As MSP's legal advisor testified: "the legislature tagged us with maintaining a registry that we don't even need…because all this information is already available to us." *Id.*, PageID #3746-3748.[6]

\*\*\*

Defendants cannot show that the district court erred in applying the *Mendoza-Martinez* factors to this record or in adopting the reasoning of *Does I*, *Betts*, and *Lymon*. Moreover, courts across the country—including in Alaska, Indiana, Maine, Maryland, Montana, New Hampshire, Ohio, and Oklahoma—have recognized that registration schemes can be punitive when there are extensive reporting require-ments, lengthy registration terms, stigmatization, and no individual review or

---

[6] Some information registrants must report within three days is not even entered into the MSP database. *Id.*, PageID #3791.

opportunity for removal.[7]

Holding that SORA 2021 violates the Ex Post Facto Clause doesn't bar Michigan from imposing reasonable restrictions retroactively. There are multiple ways to make SORA less punitive, including reducing obligations; limiting online registration; creating paths for removal; adopting periodic, individual review; and setting evidence-based (albeit automatic) registration terms. Most importantly, if Michigan limits registration to people who *currently* pose a danger, that could turn Michigan's punitive scheme into a permissible regulatory one. *Kansas v. Hendricks*, 521 U.S. 346, 347, 357, 360-64 (1997) (civil commitment law not punishment because it "unambiguously requires a finding of dangerousness" not just past conviction; state took "great care" to limit application to "only a narrow class of particularly dangerous individuals … after meeting the strictest procedural standards").

### 3. The District Court Correctly Relied on *Does I*.

Defendants argue that even though the 2011 amendments "remain in the SORA today," *Does I* is inapplicable because it concerned only exclusion zones and some in-person reporting requirements. Defs' Brf, Doc. 21-1, at 7. But if that were

---

[7] *Doe v. State*, 189 P.3d 999, 1012 (Alaska 2008); *Wallace v. State*, 905 N.E.2d 371, 380-81 (Ind. 2009); *State v. Letalien*, 985 A.2d 4, 18-26 (Me. 2009); *Doe v. Dep't of Pub. Safety & Corr. Servs.*, 62 A.3d 123, 138-40 (Md. App. Ct. 2013); *Hinman*, 530 P.3d at 1276-78; *Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011); *Starkey v. Okla. Dep't of Corrs.*, 305 P.3d 1004, 1022–26 (Okla. 2013).

true, then this Court would have simply said that retroactive application of the 2006 amendments must cease. Nor was the Court's concern about the 2011 amendments limited to in-person reporting (most of which remains). The Court declined to reach challenges to various 2011 amendments—including retroactive lifetime registration, free speech limitations, and vague reporting requirements[8]—because under its ex post facto ruling "none of the contested provisions may now be applied to the plaintiffs." *Id.* at 706; *see Does I* Oral Argument Transcript (Ex. D). If the Court had only meant to excise a few in-person reporting requirements, then those other claims would not have been moot.

*Does II* rejected the state's argument that *Does I* only invalidated a few 2011 provisions: one "must read *Does I* as broadly—and quite clearly—invalidating all portions of the 2006 and 2011 amendments." *Does II*, 449 F.Supp.3d at 729. *See Betts*, 968 N.W.2d at 516-21 (holding SORA 2011, *in its entirety*, could not be retro-actively applied, and the unconstitutional parts could not be severed).

*Doe v. Lee*, 102 F.4th 330 (6th Cir. 2024), doesn't support Defendants' claim. *Lee* recognized *Does I*'s holding that "[t]he retroactive application of SORA's 2006 and 2011 amendments … is unconstitutional," rendering the "two challenged amendments unenforceable." *Id.* at 338. *Lee* had no reason to delve into the scope of the 2011 amendments, and its passing characterization of them as concerning in-

---

[8] Pls' Brf, *Does I*, No. 15-2346, Doc. 32-1.

person reporting doesn't change the fact that those amendments did much more: they created tiers, retroactively imposed lifetime registration, and dramatically increased reportable information. *Does I*, 834 F.3d at 698; SORA 2021 with Highlighted Changes (Ex. B). *Lee* also reaffirms that "categoriz[ing] registrants based on … their conviction and without an individualized assessment … may be questionable under [*Does I*]." *Lee*, 102 F.4th at 342. And *Lee* recognizes that ex post facto analysis requires examination of "the entirety of the regulatory regime," not whether individual provisions, standing alone, are punitive. *Id*. at 388. *See Smith*, 538 U.S. at 92, 94, 96-97, 99, 104-05 (applying test to "regulatory scheme" or "the Act"); *Does I*, 834 F.3d at 701-706 (analyzing cumulative impact).

Defendants falsely state that Plaintiffs agreed that SORA 2021 fixed the problems. Defs' Brf, Doc. 21-1, at 19. In fact, after SORA was amended, the *Does II* plaintiffs decried the "legislature's abject failure to pass a statute that responds to the judicial rulings," explaining that SORA 2021 "fails to address many of the constitutional deficiencies ... and [] in some respects makes the law even more punitive."[9] *Does II*, 2:16-cv-13137, Pls' Mot. for Judg., R. 107, PageID #2144. Defendants' reliance on dicta in the procedural history section of *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023), is similarly misleading.

---

[9] *See* Pls' Resp. to Defs' Facts, R. 131-1, PageID #8002-8003; *Does II*, 606 F. Supp. 3d 608, 613 (E.D. Mich. 2021) (plaintiffs argue new law is unconstitutional).

### 4. Defendants Cannot Avoid the Outcome of the *Mendoza-Martinez* Analysis by Citing *Willman*.

Although Defendants concede that a *Mendoza-Martinez* analysis is required, their core argument is that *Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020), "answers the ex post facto challenge here." Defs' Brf, Doc. 21-1, at 11. That argument fails.

First, *Does I* (not *Willman*) is "controlling in that it describes the framework used to analyze ex post facto challenges to SORA": the intent-effects test. Op., R. 158, PageID #8684. One cannot ignore the *Mendoza-Martinez* analysis just because in a different case about a different statute—which differs from SORA in important ways[10]—a panel cursorily rejected an ex post facto claim tossed into the plaintiff's kitchen-sink complaint.[11]

Second, while Defendants argue that SORA 2021 is similar to the federal Sex Offender Registration and Notification Act (SORNA) at issue in *Willman*, SORA 2021 is at least as similar to SORA 2011—at issue in *Does I*. Indeed, SORA 2021 retains nearly all the 2011 amendments whose retroactive application this Court invalidated. *See* Section I.A.1.

---

[10] SORA 2021 is more onerous than SORNA. Pls' Resp. to Defs' Facts, R. 131-1, PageID #7996-8002; Pls' Resp. to MTD, R. 44, PageID #1549-1551; *Betts*, 968 N.W.2d at 519 n.27.

[11] If there is tension between *Does I* and *Willman*, "the earliest opinion normally controls." *Miller v. Caudill*, 936 F.3d 442, 447 (6th Cir. 2019).

Third, while this Court can of course consider decisions about similar laws, *Willman*'s terse analysis "offer[s] no guidance." Op., R. 158, PageID #8682. *Does I* and *Betts*—which thoroughly analyzed a prior version of the same Michigan law and discussed provisions that remain in SORA 2021 virtually unchanged—are more instructive. *See also Lymon*, 2024 WL 3573528 (finding SORA 2021 is punishment for non-sex offenders; analysis for at least three *Mendoza-Martinez* factors applies equally to people *with* sex offenses).

By contrast, *Willman* simply relied on *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012), which addressed whether SORNA is *retroactive*, not whether it is *punishment*.[12] Op., R. 158, PageID #8682-8683. *Felts* held that incarceration for failure to register didn't violate the Ex Post Facto Clause because it punished the new offense of failing to register, not the original sex offense. 674 F.3d at 605-606. *Felts* never considered whether SORNA's restrictions *themselves* constitute punishment for the underlying pre-SORNA offense.

The out-of-circuit cases cited in *Willman* are likewise inapposite. One was overruled and two more have been distinguished in subsequent cases allowing ex post facto challenges.[13] Many, like *Felts*, address whether failure-to-register prose-

---

[12] Contrary to Defendants' assertions, the ACLU's amicus brief in *Willman* explained the SORNA/SORA relationship and argued that this Court shouldn't reach constitutional issues because they weren't ripe. R. 173-3.

[13] *United States v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011), *overruled by Koch v. Vill. of Hartland*, 43 F.4th 747 (7th Cir. 2022); *United States v. Wass*, 954 F.3d 184,

cutions are retroactive, not whether the statute writ large constitutes punishment.[14] Indeed, almost all are criminal appeals from convictions involving failure to report one's address, as opposed to global civil challenges to SORNA's *cumulative* requirements. Most importantly, these cases lack a factual record[15] and rested on outdated assumptions. By contrast, registrant-plaintiffs who develop factual records (or seek to do so but haven't yet had the chance) have largely won ex post facto challenges.[16]

The science—and the fact that researchers know much more now than when early registry cases were decided—matters. "[T]he constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938). For example, in *Dias v. City & Cnty. of Denver*, the Tenth Circuit rejected the argument that a ban on owning pit bulls was constitutional simply because prior cases upheld similar bans. 567 F.3d 1169 (10th

---

193 (4th Cir. 2020), *distinguished by Prynne v. Settle*, 848 F. App'x 93, 99-103 (4th Cir. 2021); *United States v. Elkins*, 683 F.3d 1039, 1045 (9th Cir. 2012), *distinguished by Does v. Wasden*, 982 F.3d 784, 792 (9th Cir. 2020).

[14] *United States v. Guzman*, 591 F.3d 83, 94 (2d Cir. 2010); *United States v. Shenandoah*, 595 F.3d 151, 158-59 (3d Cir. 2010); *Elkins*, 683 F.3d at 1045; *United States v. Lawrance*, 548 F.3d 1329, 1336 (10th Cir. 2008).

[15] *See, e.g.*, *United States v. Young*, 585 F.3d 199, 206 (5th Cir. 2009) (registrant "ma[de] no effort to prove that the effect of SORNA" was punitive).

[16] *See supra* note 7; *Koch*, 43 F.4th at 757 (remanding for "fact-intensive inquiry" into whether law punitive); *Prynne*, 848 F. App'x 93; *Wasden*, 982 F.3d 784; *Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951, 960 (E.D. Wis. 2017).

Cir. 2009). "[A]lthough pit bull bans sustained twenty years ago may have been justified by the then-existing body of knowledge, [plaintiffs plausibly alleged that] the state of science [today] is such that the bans are no longer rational." *Id*. at 1183. *See Carpenter*, 585 U.S. at 300-313 (rejecting prior doctrine because technology had changed); *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 184 (2018) (same); *Detroit Free Press*, 829 F.3d at 485; *Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565, 575-576 (D. Vt. 2015); *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1305 (M.D. Ala. 2012) (prior decision upholding HIV+ prisoners' segregation is no bar where the facts informing it may be outdated).

Courts likewise cannot rubberstamp registry laws based on outdated assumptions that underpinned earlier cases. As *Does I* makes clear, judges must apply the intent-effects test to the facts. 834 F.3d at 704-705 ("record … provides scant support" that SORA impacts recidivism; "no evidence in the record" that burdens were warranted; "record in this case makes painfully clear" that registrants exist on the margins). *See Wasden*, 982 F.3d at 791-93 (error to assume outcome controlled by precedent rather than considering effect of registry law "in its entirety"); *United States v. Juv. Male*, 590 F.3d 924 (9th Cir. 2010) (distinguishing *Smith* and holding juvenile registration under SORNA is punitive because the case "presents substantially different facts … that significantly affect our analysis"), *judgment vacated as moot*, 564 U.S. 932 (2011).

22

*Smith*'s reasoning was based on false assumptions about recidivism. As scholars have demonstrated, the Court was misled by junk science. Socia Rept., R. 123-11, PageID #4335-4338 (citing Ellman, Frightening and High: The Supreme Court's Crucial Mistake About Sex Crime Statistics, 30 Const. Comment. 495, 497-499 (2015)). Similarly, nearly every case Defendants cite was decided long ago in a different technological environment without the benefit of modern scientific evidence and rests on the same myths. Although courts cannot be faulted for failing to consider facts never presented, here the record—as in *Does I*—shows that the assumptions undergirding those cases are false. *See* Sections I.A.2.d-e. The facts are: SORA seeks to manage a risk that is far lower than commonly believed, through a regime that does not work. SOMF, R. 123-1, PageID #3739-3785.

## B.   Count II – Retroactive Extension of Registration Terms.

The district court correctly held that retroactive extension of registration terms violates the Ex Post Facto Clause. Op., R. 158, PageID #8699 n.31; Am. Judgment, R. 177, PageID #9379.[17] Defendants don't even attempt to justify their position on this count, much less establish a strong likelihood of reversal. Nor can they. The *Mendoza-Martinez* factors weigh even more heavily toward punishment here.

Before 2011, almost three-quarters of people on the registry were 25-year

---

[17] *Does I* didn't reach plaintiffs' challenge to those retroactive extensions because, as part of the invalidated 2011 amendments, they could no longer be applied to the plaintiffs. 834 F.3d at 706.

registrants. After the 2011 SORA classified registrants into tiers, almost three-quarters of them—17,000 people—suddenly became lifetime registrants. SOMF, R. 123-1, PageID #3722. Retroactively extending registration to life is among the most damaging and excessive aspects of SORA. Registry obligations and restraints are more severe when they last not just decades, but until death. In-person reporting is especially challenging for the elderly. *Id*., PageID #3829-3830. Furthermore, recidivism risk declines dramatically over time and with age. SOMF, R. 123-1, PageID #3749-3765. Expert evidence shows that lifetime registration serves no purpose. Hanson Rept., R. 123-7, PageID #4007. Inflicting such severe harm for no public benefit is excessive.

Indeed, courts have repeatedly held that retroactive changes to registration terms violate prohibitions on ex post facto laws because the legislature has "move[d] the *finish line* without a hearing and with no change in circumstances." *Starkey*, 305 P.3d at 1030. *See*, *e.g.*, *Gonzalez v. State*, 980 N.E.2d 312, 321 (Ind. 2013); *Quispe del Pino v. Md. Dep't of Pub. Safety & Corr. Servs.*, 112 A.3d 522, 523 (Md. Ct. Spec. App. 2015); *Doe*, 62 A.3d at 140; *Letalien*, 985 A.2d at 26.

Finally, Defendants' argument—that *Willman* controls—is simply inapplicable to Count II. This Court in *Willman* said nothing about retroactive extension of registration terms.

### C.  Count XI –Non-Michigan Convictions.

Defendants haven't shown that the district court erred in holding that for people with non-Michigan convictions (1) registration procedures violate due process, and (2) imposition of harsher requirements violates equal protection. Op., R. 158, PageID #8738-8744; Op., R. 192, PageID #9496-9497; Pls' SJ Mot., R. 123, PageID #3687-3692.

It is undisputed that people with non-Michigan convictions get *zero* procedural protections before MSP decides if their conviction is "substantially similar" to a registrable Michigan conviction (and to which one), a decision that determines whether and for how long they must register. SOMF, R. 123-1, PageID #3874-3888. Defendants say registrants were provided due process when convicted. But out-of-state proceedings determine only that the person committed a crime, not that it's substantially similar to a Michigan offense. Nor can suing *after* a decision (assuming it's possible[18]) replace notice and an opportunity to be heard *when* the decision is being made. Moreover, registrants aren't even told the basis for the decision, much less how to dispute it. *Id.*, PageID #3885. Indeed, Plaintiffs Mary Doe and Doe G still don't know what MSP thinks their "substantially similar" offense is because MSP itself doesn't know. *Id.*, PageID #3885-3888.

---

[18] *See* Beatty Dep., R. 126-1, PageID #5766 (MSP legal advisor: "there's nothing in the statute that provides for review").

Defendants don't explain why they should be allowed to treat people with non-Michigan offenses more harshly, other than alluding to the Full Faith and Credit Clause, an argument they waived. Op., R. 158, PageID #8743 n.60. Regardless, just because Michigan must accept the validity of non-Michigan *convictions* doesn't mean it must follow non-Michigan *registration laws* when determining registration requirements here. Stay Op., R. 192, PageID #9497. On Defendants' theory, whenever other states have different laws—say on occupational licensing for people with convictions—Michigan must apply the convicting state's law. That is nonsense.

## II.    Defendants Have Not Shown Irreparable Injury.

Defendants must show "irreparable harm that decidedly outweighs the harm that will be inflicted on others if a stay is granted." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002). Courts consider the substantiality of the injury alleged, likelihood of its occurrence, and adequacy of the proof provided. *Griepentrog*, 945 F.2d at 154. "[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.*

First, any purported harm isn't immediate. Because the court already embedded a stay into its judgment (with possible extensions), the *earliest* anyone would be removed from the registry is July 21, 2025. Nor is the judgment's effect certain as the state could "enact its preferred sex offender registration regime, provided such regime is constitutional." Stay Op., R. 192, PageID #9499.

Second, while Defendants contend that an inability to enforce duly-enacted laws inflicts irreparable harm, where plaintiffs show that "the challenged law is unconstitutional, no substantial harm to others can be said to inhere its enjoinment." *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012); *see Abbott v. Perez*, 585 U.S. 579, 602 (2018); Stay Op., R. 192, PageID #9498.

Third, Defendants say registrants might be confused if this Court reverses. The possibility of reversal *always* exists Further, registrants' obligations have changed repeatedly with litigation and legislation. Notice will go out *regardless* of what happens on appeal, as some rulings are not being appealed. The notice explains that requirements could change. Proposed Notice, R. 193-3, PageID #9537-9540, 9542-9543.

Fourth, Defendants' suggestion that *People v. Kiczenski*, No. 364957, __ N.W.3d __, 2024 WL 4595174 (Mich. Ct. App. Oct. 28, 2024), prevents affirmance of the stay—or even affirmance on the merits—is nonsensical. Federal courts routinely reach different conclusions than state courts. Indeed, *Does I* granted relief despite Michigan cases finding no ex post facto violation.[19] And while state courts needn't follow lower federal court decisions, *state officials* must comply with federal injunctions. Thus, the *Does II* court ordered class-wide injunctive relief barring

---

[19] *See, e.g.*, *People v. Tucker*, 879 N.W.2d 906 (Mich. Ct. App. 2015); *People v. Temelkoski*, 859 N.W.2d 743 (Mich. Ct. App. 2014).

SORA's retroactive enforcement despite contrary state-court decisions.[20] Conversely, "a state court decision in an individual criminal case such as *Kicenzski* is not an injunction and does not require local law enforcement to do or not do anything." Stay Op., R. 192, PageID #9501. For the same reasons *Kicenzski* doesn't control how this Court decides the merits, *Kicenzski* doesn't prevent this Court from denying a stay.

## III.    Enforcing an Unconstitutional Law Substantially Harms Plaintiffs.

A stay would substantially harm Plaintiffs—many of whom have waited more than a decade for relief, even after courts, including this Court, have repeatedly invalidated SORA. Where, as here, "constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012).

If the judgment is stayed, hundreds of people could be prosecuted and imprisoned under an unconstitutional *criminal* law while this appeal is pending. Convictions for SORA violations average 880-1,000 per year. SOMF, R. 123-1, PageID #3800. Unlawful incarceration is undoubtedly irreparable harm. *Miller v. Stovall*, 641 F. Supp. 2d 657, 669 (E.D. Mich. 2009). Defendants point to no cases where courts have stayed a final judgment to allow for continued enforcement of an unconstitutional *criminal* law.

---

[20] *Betts* wasn't decided until more than a year after *Does II*.

SORA "exacts a heavy toll on registrants," impacting every facet of their lives and undermining their ability to re-enter their communities. Op., R. 158, PageID #8698; *see* Section I.A.2.b; SOMF, R. 123-1, PageID #3813-3816. SORA causes harms that far exceed those of simply having a criminal record: people find jobs and housing despite having convictions—only to lose them because they are on the registry. *Id.*, PageID #3807-3816. The online registry brands them as dangerous, making them social pariahs. Op., R. 158, PageID #8689; Section I.A.2.a. Registrants face vandalism, physical threats, and even assaults. SOMF, R. 123-1, PageID #3774-3805.

Finally, Defendants' argument that people still must register under SORNA reflects a basic misunderstanding of the relationship between SORA and SORNA. *See* Pls' Resp. to Defs' SOMF, R. 131-1, PageID #7996-8002.

## IV.    Upholding Constitutional Rights Advances the Public Interest.

Defendants have not met their "heavy burden" of showing that denying a stay will certainly and irreparably harm public safety. *Kentucky*, 23 F.4th at 593. First, Defendants have not established that SORA prevents sexual crimes. *See* Sections I.A.2.d-e. "Defendants point to no scientific evidence that removing registrants who committed crimes long ago will create any significant risk that they will re-offend." Stay Op., R. 192, PageID #9503. Moreover, past experience shows enjoining SORA doesn't impact public safety. *See Does II*, No. 16-cv-13137, R. 91, 126 (year-long

injunction on SORA enforcement during pandemic).

Second, registrants affected by the judgment "are among the least likely to commit another sex offense." *Id.*, PageID #9502; *see* Section I.A.2.e. Defendants focus on people recently released from prison. But as of 2023, 94% of the pre-2011 ex post facto subclass, and 87% of the non-Michigan offense subclass, had lived in the community without a sex-offense conviction for at least five years—and more than half had done so for at least 15 years. Alcala Decl., R. 175-1, PageID #9371-9373. Those few subclass members who were recently released are typically under parole supervision. Pls' Brf, R. 175, PageID #9356-9357.

Third, Defendants argue that the public needs the registry to ascertain criminal history. Defendants took exactly the opposite position before the Michigan Supreme Court. MSP Brf, R. 189-3, PageID #9461 ("A Michigan resident does not need the registry to know that" a person is a 'sex offender.' A simple Google search will [s]uffice."). "[C]riminal-history information is available through numerous online sources" including no-or-low-cost platforms like Michigan's Offender Tracking and Information System, Michigan's Internet Criminal History Access Tool, and private vendors. Stay Op., R. 192, PageID #9503. Because people can still utilize myriad other tools, *see* Guzman Decl., R. 189-2, "the harm to the public of certain individuals falling off the registry is not as severe as Defendants portray." Stay Op., R. 192, PageID #9503. Defendants cannot show that finding to be clear error.

30

Finally, contrary to Defendants' representations, SORA *discourages* victims from reporting abuse, makes obtaining convictions for sex offenses harder, and diverts resources from programs that actually reduce sexual offending. SOMF, R. 123-1, PageID #3743-3746.

Ultimately, "[as this Court] has explained, 'it is always in the public interest to prevent the violation of a party's constitutional rights.'" Stay Op., R. 192, PageID #9504 (quoting *Dahl v. Bd. of Trs. of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021)).

## CONCLUSION

Defendants have not established any of the factors required for the "extra-ordinary relief" they seek. *Kentucky*, 23 F.4th at 593. This Court should affirm the district court's decision denying a stay of its carefully crafted final judgment.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
s/ Ewurama Appiagyei-Dankah
(P88212)
American Civil Liberties Union
    Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
eadankah@aclumich.org
Attorneys for Plaintiffs-Appellants/
Cross-Appellees

s/ Bonsitu Kitaba-Gaviglio (P78822)
American Civil Liberties Union
    Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
bkitaba@aclumich.org
Attorney for Plaintiffs-Appellants/
Cross-Appellees

s/Allison Frankel (NY 5621834)
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
afrankel@aclu.org
Attorney for Plaintiffs-Appellants/
Cross-Appellees

s/ Paul D. Reingold (P27594)
Cooperating Counsel,
American Civil Liberties Union Fund
    of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319
pdr@umich.edu
Attorney for Plaintiffs-Appellants/
Cross-Appellees

Dated: June 5, 2025

## CERTIFICATE OF COMPLIANCE

Contemporaneously with filing of this brief, counsel is filing a motion to exceed the type-volume limitation of Fed. R. App. P. 27(d)(2). The word counting feature of counsel's word processing programs shows that this brief contains 7,195 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 27(d)(1) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

_s/ Miriam J. Aukerman_
Miriam J. Aukerman (P63165)
Attorney for Plaintiffs-
Appellants/Cross-Appellees