No. 25-1413

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

MARY DOE; JOHN DOE A; JOHN DOE B; JOHN DOE C; JOHN DOE D; JOHN DOE E; JOHN DOE G; JOHN DOE H; MARY ROE,

    Plaintiffs-Appellants Cross-Appellees,

v.

GRETCHEN WHITMER, Governor of the State of Michigan; JAMES GRADY, II, Colonel,

    Defendants-Appellees Cross-Appellants.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Mark A. Goldsmith

**REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR STAY ON BEHALF OF THE GOVERNOR AND THE COLONEL OF THE MICHIGAN STATE POLICE**

**ACTION REQUESTED BY JUNE 20, 2025**

## INTRODUCTION

Plaintiffs fundamentally misapprehend the controlling nature of this Court's decision in *Willman v. Attorney General of United States*, 972 F.3d 819 (6th Cir. 2020) by asserting that the State is "ignor[ing] the *Mendoza-Martinez* analysis" (Pls' Resp. Br., Doc. 25-1, at 19) and that Michigan's 2021 SORA is "more onerous" than the federal SORNA (*id.* at n.10). Plaintiffs are wrong on both counts. In affirming that

SORNA was not punitive, this Court relied on other appellate cases that reviewed the *Mendoza* factors, and any comparison between the federal SORNA and Michigan's 2021 SORA demonstrates the virtual identity of obligations for registrants under these two laws.

Plaintiffs also paint with too broad of a brush by stating that courts have repeatedly held the Michigan SORA is unconstitutional. (*Id.* at 9.) The landscape they are painting includes the wrong subjects – not the 2021 SORA – and depicts a distorted view of reality. This Court should stay the decision below, which will otherwise force more than 30,000 offenders (or more than two-thirds of all registrants) off the registry based on its ex post facto ruling and another 3,000 off (with some overlap) based on its out-of-state-conviction ruling.

## I. The old SORA and new SORA are distinct laws, and the new 2021 SORA is not punitive.

In relying on *Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) (*Does I*), Plaintiffs fail to appreciate the significant ways in which the Michigan Legislature revised the previous SORA law to make the new 2021 SORA to match the federal SORNA. The 2021 SORA – like SORNA – is a regulatory law that is not punitive, consistent with *Willman*.

### A. Courts have found certain provisions of the old 2011 SORA to be unconstitutional, but the new 2021 SORA is distinct, and its constitutionality is governed by *Willman*.

There is no dispute that some courts have found parts of the old law in place in 2011 to be unconstitutional. While Plaintiffs want to minimize its significance, the court in *Does II* stated that "all parties acknowledge that the new SORA removes or modifies all provisions that this court found to be unconstitutional in its February 14, 202[0] opinion in *Does II*." *Doe v. Snyder*, 606 F.Supp.3d 608, 613 (E.D. Mich., 2021). In other words, the Michigan Legislature amended the law to address the constitutional deficiencies identified by the court. Indeed, this Court later stated the new SORA "removed or modified the provisions that *Does II* had declared unconstitutional." *Does v. Whitmer*, 69 F.4th 300, 303 (6th Cir. 2023). Specifically, the Legislature amended the 2021 SORA to remove the student safety zones, allow for other than in-person reporting for minor changes,[1] and eliminate the public nature of the tiering. (*See* Motion to Stay on Appeal, 21–1, p. 19.)

---

[1] Changes to vehicle information, telephone numbers and temporary residences can be made by mail. Michigan State Police, Forms, Sex Offender Registry, RI-004A, https://www.michigan.gov/msp/forms-stats/forms (last accessed June 6, 2025).

As a result of *Does II*, the Legislature amended SORA in 2021 to mirror federal SORNA, and it has many of the same elements of the Alaska law, which the U.S. Supreme Court upheld as constitutional even though it was "retroactive" and required updating much of the same information that the new SORA requires. *Does I*, 834 F.3d at 700, 705 (citing *Smith v. Doe*, 538 U.S. 84, 92 (2003).)

This Court has not examined the new SORA, but for the reasons already explained in the State's motion for stay, this Court should apply *Willman* and find that the new SORA is not an ex post facto violation for the same reasons SORNA is not an ex post facto violation.

To begin, the SORA and federal SORNA are virtually identical in all material respects.[2] The contention that the laws diverge in "important ways" is unsupported by any serious review of the two laws. (Pls' Resp. Br., Doc 25-1, at 19.) The differences identified by Plaintiffs

---

[2] Regarding the federal SORNA's requirement that registrants update changes to communication identifiers (Internet, email addresses, and telephones), temporary lodging, and vehicles, *see* 28 C.F.R. §72.7(e), it appears that the SORNA itself only required registrants to update these changes within three business days based on supplemental guidelines that became effective January 7, 2022. *See* 86 Fed. Reg. 69856–69887, 69880 (Dec 8, 2021). The fact that *Willman* reviewed the pre-2022 SORNA does not undermine its controlling value.

below are highly technical and minor (*see* Pls' Resp. to MTD, R. 44, PageID.1549–1551), and they fail to consider the ways in which SORNA requires additional duties for registrants that SORA does not, such as for international travel. Compare 28 C.F.R. §72.7(f) with Mich. Comp. Laws §28.725(8).[3]

In particular, the district court here found two aspects of Michigan's 2021 SORA to be punitive and an ex post facto violation, which if applied to federal SORNA, would require the same ruling.

For Count I, the court ruled that the "in-person reporting requirements" introduced in 2011 were punitive and "cannot be applied" retroactively. (Op and Order, R. 158, PageID.8699.) But these same in-person reporting obligations are present in SORNA. *See* 28 C.F.R. §72.7(c) and compare Mich. Comp. Laws §28.725(1). For Count II, the court ruled that the "retroactive extension of registration terms," i.e., from 25 years to lifetime for more serious offenders (Tier III), were punitive and "cannot be applied" retroactively. (Op, R. 158, PageID.8699.) But the federal SORNA – which applies retroactively

---

[3] Moreover, as a result of this lawsuit, electronic mail addresses no longer need to be reported to law enforcement. (Am. Judgment, R. 177, PageID.9387.)

5

without any time limits – creates a lifetime registration for a person with no previous duty to register. *See* 34 U.S.C. §20915(a)(3) and compare Mich. Comp. Laws §28.725(13). In circumventing *Willman* by dismissing its analysis as "cursor[y]," the unmistakable point from Plaintiffs' Response based on its (mis)reading of *Does I* is that the federal SORNA also cannot be applied retroactively. (Pls' Resp. Br., Doc. 25-1, at 19.) But this Court ruled just the other way in *Willman* for an offender who committed his registrable sexual offense in 1993.

Indeed, in its ex post facto analysis, *Willman* expressly relied on at least three federal appellate courts that considered the *Mendoza* factors as identified in *Smith* in rejecting an ex post facto claim against SORNA. *See* 972 F.3d at 824–25, citing (1) *United States v. Wass*, 954 F.3d 184, 189–193 (4th Cir. 2020) (which stated at 193 that "[w]e analyzed the registration requirements using the five factors that *Smith* had found to be the most relevant"); (2) *United States v. Parks*, 698 F.3d 1, 6 (1st Cir. 2012) (which cited the *Mendoza* factors); and (3) *United States v. W.B.H.*, 664 F.3d 848, 860 (11th Cir. 2011) (which ruled based on the "[*Smith*] guideposts"). The federal appellate court

precedent here further supports the State's reading of *Willman* and the constitutional validity of Michigan's 2021 SORA for multiple reasons:

*First*, like SORNA, SORA's in-person reporting requirements are not punitive. SORA's requirements of in-person reporting does not impose a physical restraint, as "ordinarily" "in-person reporting requirements are not considered punitive." *Shaw v. Patton*, 823 F.3d 556, 568 (10th Cir. 2016) (reviewing Oklahoma's registry). Likewise, in reviewing SORNA, the First Circuit found that while reporting in-person is "doubtless more inconvenient than doing so by telephone, mail or web entry," it "serves the remedial purpose of establishing that the individual is in the vicinity," "confirms identity by fingerprints," and "records the individual's current appearance." *Parks*, 698 F.3d at 6. In that way, the inconvenience of in-person reporting is "minor compared to the disadvantages of the underlying scheme in its consequences for renting housing, obtaining work and the like—consequences that were part of the package that *Smith* itself upheld." *Id.*

*Second*, like SORNA, the new SORA does not advance all the traditional aims of punishment. In reviewing the *Mendoza* factors for whether SORNA is punitive, the federal appellate courts have weighed

7

this factor in favor of the government. *See, e.g., W.B.H.*, 664 F.3d at 858–59 ("Regarding the traditional aims of punishment, SORNA is no different from the Alaska registration statute upheld in *Doe*.")

*Third,* after spending several pages discussing the disparate social science research related to sex offender registries, the district court concluded the sex offender laws promote the goal of public safety by deterring first time offenders and providing members of the public with information they can use to try to protect themselves. *Does v. Whitmer*, 751 F.Supp.3d 761, 795 (E.D. Mich. 2024) (*Does III*). Importantly, the court explained that "[i]t is not fair to say that scientific studies mandate a finding of no public benefit at all." *Id.* at 794. The court's conclusion was sufficient to satisfy the most important *Mendoza* factor of whether there was a rational connection to a non-punitive purpose. *See Smith*, 538 U.S. at 102. Similarly, SORNA has been found to have a rational connection to a non-punitive purpose. *United States v. Under Seal*, 709 F.3d 257, 265 (4th Cir. 2013).

*Fourth,* and finally, while the district court found that the new SORA was excessive with respect to its purpose, it did so in cursory fashion and explained that the "heavy toll" on registrants, included

8

frequent in-person reporting, publishing personal information online, and requiring registration for life. *Does III*, 751 F.Supp.3d at 795. These requirements are largely the same requirements that the U.S. Supreme Court upheld in *Smith*. The SORNA has the same requirements, which are not excessive. *See, e.g.*, *Parks*, 698 F.3d at 5–6.

Under the district court's final judgment, ***all registrants with convictions prior to July 1, 2011 will no longer have to register at all***, (Am. Judgment, R. 177, PageID.9379), even though under SORNA they would have to register. This Court should stay this decision.

### B. SORA 2021 is like the Alaska law upheld by the Supreme Court.

Michigan's law shares the same hallmarks as the Alaska law that the U.S. Supreme Court upheld under an ex post facto challenge. *Smith v. Doe*, 538 U.S. 84 (2003). Under Alaska's law the following information about registrants was published on the internet:

- Name;
- Aliases;
- Address;
- Photograph;

- Physical description;
- License and identification numbers of motor vehicles;
- Place of employment;
- Date of birth;
- Crime;
- Date and place of conviction;
- Length and conditions of sentence; and
- Statement as to whether offender is in compliance with registration requirements.

*Smith*, 538 U.S. at 90. The registration and notification requirements were retroactive. *Id.* For non-aggravated offenses, registrants had to register for 15 years. *Id.* For aggravated offenses or individuals with two or more sex offenses, they had to register for life and had to verify their information quarterly. *Id.* Registrants had to notify law enforcement if they moved. *Id.* Thus, just as the federal appellate courts have found SORNA to be comparable to the Alaska, that same conclusion obtains for Michigan's 2021 SORA.

### II. Michigan's 2021 SORA for out-of-state convictions provides adequate protections.

Plaintiffs contend that Michigan's 2021 SORA provides for "zero" protections for registrants with out-of-state sexual offense convictions (Pls' Resp. Br., at 25), but this is wrong.

10

As explained in the initial filing, any registrant could seek judicial review of the determination by the Michigan State Police. (Motion to Stay on Appeal, p. 24.)

### III. Plaintiffs have painted a distorted landscape.

The Michigan Legislature enacted the SORA to allow people to protect themselves against the *commission of future criminal sexual acts* by convicted sex offenders. The registry is designed as an effective means to monitor those persons who *pose a potential danger*. Mich. Comp. Laws §28.721a. The registry is not intended to prevent future *convictions* for criminal sexual conduct.

### A. Plaintiffs' experts missed the mark.

Plaintiffs spent reams of paper and retained numerous experts who provided various reports to paint a picture that shows that convicted sex offenders, after being in the community without another conviction, "are now just as safe as the general population." (Pls' Resp. Brf., Doc. 25-1, at 13.) This absurd conclusion – contradicted by the facts on the ground – is predicated on recidivism data regarding *reconvictions*, and not *re-offenses*.

11

As one expert explained, the entire argument about conclusions based on recidivism data is a red herring because it misses the larger data set related to re-offenses. (DRSOMF, R. 129-2, PageID.7470.) A prosecutor with decades of experience explained that conclusions drawn from recidivism data are misplaced because most perpetrators are not charged or convicted for their crimes. (*Id.* at PageID.7297.) Some data suggests that only about 2.8% of sexual assaults lead to a felony conviction. (DSOMF 129-1, PageID.7207.) Accordingly, any analysis about the safety of sex offenders based on reconviction data, may not include 97% of sex offenses.

And even relying on conviction data, the arguments of Plaintiffs miss the mark about the substantial danger that sexual offenders present to the public. Plaintiffs claim the relevant reconviction rate is 7% – not more than 10% – by excluding those sexual offenders who have been reincarcerated after being reconvicted of a second sexual crime. (Pls' Resp. Brf., at 12.) But that exclusion makes no sense if seeking to identify the possible danger that sexual offenders present, and the more than 10% metric makes them more than 10 times more likely than the ordinary resident of being convicted of a sexual crime. The reconviction

12

rate is staggeringly high given the radical underreporting – which means a three-or-four-time higher recidivism rate – and the deeply injurious nature of sexual offenses.

The statute is not designed to help the public against future crimes that lead to future *convictions,* but rather to protect against future *commissions* of criminal sexual acts in the first place.

### B. The public should be aware of who lives next door.

The facts for many sex offenders are disturbing and illustrate why the public should be aware of sex offenders who may live next door. (*See* Motion to Stay, R. 173, PageID.9212-21, Reply to Motion to Stay, R. 179, PageID.9400-01.) It is surprising the anyone would suggest that a sex offender who commits these egregious crimes is just as safe as the next person, if the sex offender does not get convicted for another sex crime after a certain number of years from the first conviction. (*See* Pl's Resp. Brf., Doc. 25-1, at 9.)

### C. Individualized review is not the answer.

Plaintiffs suggest that the registry could be constitutional if there was periodic, individualized review for each of the 44,000 registrants. Aside from the fact that conviction-based registries have been routinely

13

upheld around the country, such an approach is cost prohibitive and as pointed out by the district court "there is an unknown risk that the evaluators will make a mistake about who should be required to register and for how long." *Does III*, 751 F.Supp.3d at 798.

The costs are projected to range from $352 million to $880 million and take between 352,000 and 1.1 million hours to complete. *Id.* The district court aptly noted that "making choices about whether to adopt bright-line rules or customized assessments of people . . . subject to government regulation is the hallmark of the legislative function." *Id*. And "[t]here is nothing irrational in choosing a bright-line rule [based on crime of conviction] for a sex offender registration system." *Id.*

**D.     There is no consensus in the social science.**

Plaintiffs suggest that the science has changed since earlier cases were decided. But the district court discussed the social science at length and explained that "there is no universally accepted scientific view about the efficacy of registration systems." *Id.* at 792 –95.

## CONCLUSION AND RELIEF REQUESTED

This Court should grant to stay to prevent more than 32,000 sex offenders from falling off the registry.

Respectfully submitted,

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorney for Defendants-Appellees Cross-Appellants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov

Dated:  June 10, 2025                                    P75721

## CERTIFICATE OF SERVICE

I certify that on June 10, 2025, the foregoing document was served on all counsel of record through the CM/ECF system.

*/s/ Eric M. Jamison*
Eric M. Jamison
Assistant Attorney General
Attorneys for Defendants-Appellees Cross Appellants

# CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1. This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this motion contains no more than 2,600 words. This document contains 2,599 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Century Schoolbook.

/s/ *Eric M. Jamison*
Assistant Attorney General
Attorney for Defendants-
Appellees Cross-Appellants
State Operations Division
P.O. Box 30754
Lansing, MI 48909
(517) 335-7573
jamisone@michigan.gov
P75721

Dated: June 10, 2025

2022-0341402-B