# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MARY DOE; JOHN DOE A; JOHN DOE B; JOHN DOE C; JOHN DOE D;
JOHN DOE E; JOHN DOE G; JOHN DOE H; MARY ROE,
*Plaintiffs - Appellants Cross-Appellees*

v.

GRETCHEN WHITMER, Governor of the State of Michigan; JAMES GRADY,
II, Colonel;

*Defendants - Appellees Cross-Appellants*

On Appeal from the United States District Court
for the Eastern District of Michigan,
Case No. 2:22-cv-10209 (Hon. Mark A. Goldsmith)

## PLAINTIFFS – APPELLANTS CROSS APPELLEES'
## CORRECTED FIRST BRIEF

Miriam Aukerman
Ewurama Appiagyei-Dankah
ACLU Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930

Bonsitu Kitaba-Gaviglio
ACLU Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6823

Allison Frankel
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Paul D. Reingold
Cooperating Counsel
ACLU Fund of Michigan
Univ. of Michigan Law School
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Plaintiffs–Appellants/Cross Appellees make the following disclosure:

1. Is the party a subsidiary or affiliate of a publicly owned corporation?

   Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   Answer: No.

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................1

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF ISSUES ...........................................................................1

INTRODUCTION .......................................................................................3

STATEMENT OF THE CASE........................................................................6

    A.    Legislative and Procedural History ..............................................6

    B.    The Plaintiffs ...........................................................................11

    C.    SORA Inflicts Devastating Harm..............................................12

        1.    Life-Altering Stigmatization ...........................................12

        2.    Stringent Reporting and Monitoring................................16

        3.    Incarceration for Technical Violations ............................17

    D.    Michigan's Registry Data Shows that Automatic Perpetual Registration Is Pointless. ..........................................................17

        1.    Michigan's Registry Is Huge and Includes Many People with Lower-Level Offenses. ...........................................18

        2.    Registrants' Risk Varies. ...............................................18

        3.    SORA's Tiers Are Inversely Correlated with Risk. ........19

        4.    Registrants' Average Recidivism Rates Are Low. ..........19

        5.    Recidivism Rates Decrease Dramatically Over Time. ............20

        6.    Many Registrants Are Just as Safe as Anyone Else. ...............21

    E.    SORA Undermines Public Safety. ............................................24

ARGUMENT SUMMARY .........................................................................26

STANDARD OF REVIEW .........................................................................28

ARGUMENT ...................................................................................28

I.   AUTOMATIC PERPETUAL REGISTRATION AND
     POINTLESS REPORTING—WITH NO INDIVIDUAL
     ASSESSMENT OR CHANCE FOR REMOVAL—VIOLATES
     DUE PROCESS AND EQUAL PROTECTION. ...............28

     A.   The District Court Erred in Treating Any Legislative
          Choice as Acceptable. .............................................29

          1.   SORA's Extreme Features Are Subject to Exacting
               Scrutiny. .......................................................29

          2.   Conventional Rational Basis Review Is
               Meaningful. ...................................................34

     B.   Registration Is Increasingly Irrational Over Time. ...................34

     C.   SORA Inflicts Massive Harm for No Benefit. ..........................40

     D.   The District Court Relied on Irrelevant Evidence that
          Was Also Inadmissible and Outside the Record. ......................41

     E.   The District Court Erred by Conflating the Arguable
          Rationality of *Any* Registry with the Rationality of *This
          Registry's* Automatic Perpetual Registration and
          Pointless Restrictions. ..............................................43

          1.   Recidivism .....................................................43

          2.   Deterrence .....................................................46

          3.   Warning the Public ...........................................47

     F.   Contrary to the District Court's Assumptions, There Are
          Many Potential Remedies. ........................................49

II.  DENYING SIMILARLY SITUATED REGISTRANTS THE
     OPPORTUNITY TO PETITION FOR REMOVAL
     VIOLATES EQUAL PROTECTION. ................................51

     A.   The Barred-From-Petitioning Subclass Is Similarly
          Situated to Petition-Eligible Registrants. ...........................51

iv

        B.       The Tier-Based Distinction Is Irrational. ..................................56

   III.    THE DISTRICT COURT ERRED IN THREE OF ITS
          VAGUENESS RULINGS ...................................................................59

CONCLUSION ..........................................................................................63

Certificate of Compliance .......................................................................65

Certificate of Service ...............................................................................66

Designation of Relevant District Court Documents ...............................67

**ADDENDUM**

Michigan Sex Offenders Registration Act, M.C.L. 28.721 et seq.

**EXHIBIT**

A.    Chart of Claims

# TABLE OF AUTHORITIES

## Cases

*Bannum v. City of Louisville*, 958 F.2d 1354 (6th Cir. 1992)......................... 30, 37

*Baxstrom v. Herold*, 383 U.S. 107 (1966). ..................................................... 56, 57

*Bell v. Burson*, 402 U.S. 535 (1971) .................................................................49

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 557 (6th Cir. 1999) ...............................................................................................................60

*Berger v. City of Mayfield Heights*, 154 F.3d 621 (6th Cir. 1998)........................34

*Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014) ....................................................33

*Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir. 1990) ...............................43

*Calderon v. Atlas S.S. Co.*, 170 U.S. 272 (1898)..................................................62

*Cameron v. Mullen*, 387 F.2d 193 (D.C. Cir. 1967)..............................................56

*Carpenter v. United States*, 585 U.S. 296 (2018).................................................39

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)............................52

*Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). .................... 51, 53, 59

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022)............................................40

*Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002) ................................................38

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .................42

*Detroit Free Press v. U.S. Dep't of Justice*, 829 F.3d 478 (6th Cir. 2016). ............39

*Dias v. City and County of Denver*, 567 F.3d 1169 (10th Cir. 2009).....................39

*Doe v. Austin*, 848 F.2d 1386 (6th Cir. 1988)........................................................52

*Doe v. Dep't of Pub. Safety*, 444 P.3d 116 (Alaska 2019) .....................................49

*Doe v. Dep't of Public Safety & Corr. Servs.*, 62 A.3d 123 (Md. 2013)................37

*Doe v. State*, 111 A.3d 1077 (N.H. 2015)...............................................................37

*Does v. Snyder*, 101 F. Supp. 3d 672 (E.D. Mich. 2015) ........................................6

*Does v. Snyder*, 101 F. Supp. 3d 722 (E.D. Mich. 2015) ........................................6

*Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017) ............................................................................................... passim

*Does v. Whitmer*, 449 F. Supp. 3d 719 (E.D. Mich. 2020)..............................7

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) ...................................................52

*Hadix v. Johnson*, 230 F.3d 840 (6th Cir. 2000) ........................................34

*Henderson v. Thomas*, 891 F. Supp. 2d 1296 (M.D. Ala. 2012) ...............39

*In re C.P.*, 967 N.E.2d 729 (Ohio 2012)....................................................37

*In re Hill*, 2025 WL 903150 (6th Cir. Mar. 25, 2025)................................39

*In re T.B.*, 489 P.3d 752 (Colo. 2021). .....................................................40

*James v. Strange*, 407 U.S. 128 (1972) ......................................................57

*Johnson v. United States*, 576 U.S. 591 (2015) ..........................................60

*Kansas v. Hendricks*, 521 U.S. 346 (1997)..................................................29

*Kimbrough v. United States*, 552 U.S. 85 (2007) ........................................39

*Kolender v. Lawson*, 461 U.S. 352 (1983)..................................................60

*Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) .......................28

*Lawrence v. Texas*, 539 U.S. 558 (2003)....................................................33

*Loesel v. City of Frankenmuth*, 692 F.3d 452 (6th Cir. 2012).....................52

*Mathews v. Lucas*, 427 U.S. 495 (1976).....................................................34

*Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574 (1986) ...................28

*Meschino v. North American Drager, Inc.*, 841 F.2d 429 (1st Cir. 1988) .....43

*Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977), *aff'd*, 434 U.S. 356 (1978)........................................................................................................57

*Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565 (D. Vt. 2015) ............40

*Ortiz v. Breslin*, 142 S. Ct. 914 (2022) ......................................................40

*People in Int. of Z.B.*, 757 N.W.2d 595 (S.D. 2008) ................................54

*People v. Betts*, 968 N.W.2d 497 (Mich. 2021)..........................................11

*People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024) ................................................................................... 11, 44

*Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522 (6th Cir. 1998) ...................34

*Plyler v. Doe*, 457 U.S. 202 (1982)...........................................................................40

*Powell v. Keel*, 860 S.E.2d 344 (S.C. 2021) ..................................................... 36, 48

*Rinaldi v. Yeager*, 384 U.S. 305 (1966)..................................................................57

*Romer v. Evans*, 517 U.S. 620 (1996) ....................................................................34

*Ross v. Moffitt*, 417 U.S. 600 (1974) ......................................................................29

*Seal v. Morgan*, 229 F.3d 567 (6th Cir. 2000)........................................................34

*Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535 (1942) ................... 33, 36

*Smith v. Doe*, 538 U.S. 84 (2003) ...........................................................................38

*Snyder v. Phelps*, 562 U.S. 443 (2011) ...................................................................32

*South Dakota v. Wayfair, Inc.*, 585 U.S. 162 (2018)...............................................39

*State in Int. of C.K.*, 182 A.3d 917 (N.J. 2018) ................................................ 37, 40

*State v. C.M.*, 746 So. 2d 410 (Ala. Crim. App. 1999).............................................54

*State v. Henderson*, 27 A.3d 872 (N.J. 2011) .........................................................40

*State v. Hinman*, 530 P.3d 1271 (Mont. 2023). ......................................................40

*State v. Lawson*, 291 P.3d 673 (Or. 2012) ..............................................................40

*State v. Letalien*, 985 A.2d 4 (Me. 2009).................................................................37

*Tiwari v. Friedlander*, 26 F.4th 355 (6th Cir. 2022) ................................... 29, 30, 34

*TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783 (6th Cir. 2005) ................................................................................................................ 52, 56

*United States ex rel. Schuster v. Herold*, 410 F.2d 1071 (2d Cir. 1969)................56

*United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985)........................................47

*United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938). .......................... 30, 39

*United States v. Flores-González,* 86 F.4th 399 (1st Cir. 2023).............................47

*United States v. Windsor*, 570 U.S. 744 (2013)......................................................33

*Vance v. Bradley*, 440 U.S. 93 (1979) .............................................................. 29, 32

*Wilson v. Upjohn Corp.*, 968 F.2d 1217, 1992 WL 158121 (6th Cir. 1992)..........43

**Statutes**

28 U.S.C. §1291 ...............................................................................1

28 U.S.C. §1331 ...............................................................................1

28 U.S.C. §1343 ...............................................................................1

M.C.L. § 28.721a .............................................................................46

M.C.L. § 28.722 ............................................................... 8, 54, 55, 56

M.C.L. § 28.724a ..........................................................................9, 60

M.C.L. § 28.725 ....................................................................... passim

M.C.L. § 28.725a .............................................................................9

M.C.L. § 28.727 ................................................................. 9, 61, 62

M.C.L. § 28.728 ................................................................. 13, 48, 61

M.C.L. § 28.728c ..................................................................... passim

M.C.L. § 28.729 ...............................................................................9

M.C.L. § 750.145c ...........................................................................56

M.C.L. § 750.520d ...........................................................................55

M.C.L. § 750.520g ...........................................................................55

Mass. Gen. Laws ch. 6, §178C .........................................................61

S.C. Code Ann. § 23-3-462 ..............................................................36

**Other Authorities**

Ira Mark Ellman & Tara Ellman, *Frightening and High: The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495 (2015) ...............................................................38

Mirko Bagaric & Peter Isham, *A Rational Approach to the Role of Publicity and Condemnation in the Sentencing of Offenders*, 46 Fla. St. U. L. Rev. 239 (2019).............................................................46

Restoration of Rts. Project, *50-State Comparison: Relief from Sex Offense Registration Obligations* (October 2022) ....................................50

**Rules**

Fed. R. Civ. P. 56 ................................................................43

Fed. R. Evid. 702 ...............................................................42

Fed. R. Evid. 803 ...............................................................43

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Michigan's Sex Offenders Registration Act (SORA), M.C.L. §28.721 *et seq.*, affects tens of thousands of people, making a ruling on its constitutionality of significant interest to registrants, law enforcement, and the public. Oral argument will help the Court, given the extensive record, the many legal and factual questions presented, and the previous challenges to Michigan's registry law.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§1331 and 1343. On April 23, 2025, Plaintiffs appealed the amended final judgment, entered April 22, 2025. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES

1. Did the district court err in granting Defendants summary judgment on Count III, which alleges that automatic registration for decades or life, with no individual review or chance for removal, violates the Constitution's Due Process and Equal Protection Clauses?

> Plaintiffs: Yes
>
> Defendants: No
>
> District Court: No

2. Did the district court err in granting Defendants summary judgment on Count IV, which alleges that denying the chance to petition for removal—for people

who are similarly situated to petition-eligible registrants—violates the Equal Protection Clause?

       Plaintiffs: Yes

       Defendants: No

       District Court: No

3. Did the district court err on Count VIII in finding that some of SORA's provisions are not unconstitutionally vague?

       Plaintiffs: Yes

       Defendants: No

       District Court: No

Plaintiffs preserve all issues the district court didn't reach because it granted relief on alternative grounds.

**INTRODUCTION**

SORA "began in 1994 as a non-public registry maintained solely for law enforcement use." *Does v. Snyder*, 834 F.3d 696, 697 (6th Cir. 2016) (*Does I*). Three fundamental changes have occurred since.

First, SORA has grown exponentially more damaging, morphing into "a byzantine code governing in minute detail the lives" of Michigan's registrants. *Id.* Second, given the internet revolution, registrants now suffer previously unimaginable online, state-sponsored vilification. Third, the factual premises on which registries were based have proven untrue. Decades of research show that:

- Registries don't reduce recidivism; if anything they *increase* it by undermining housing, employment, and social support—the keys to successful reentry;

- Registries misidentify the source of the risk; the vast majority of sex crimes are committed by *non-registrants*;

- Recidivism risk varies tremendously among registrants and cannot be predicted by the offense of conviction;

- Registrants' average recidivism rates are low; and

- Over time, registrants who live successfully in the community, even if they were *initially* higher risk, reach a point where they are no more likely to commit a sex offense than anyone else.

3

In the past decade, both federal and state courts have repeatedly invalidated Michigan's SORA, holding that while states can maintain registries, they don't have "a blank check … to do whatever they please in this arena." *Does I*, 834 F.3d at 705. Yet Michigan has clung to its failed law. In 2021, facing a looming class-wide injunction, the legislature tweaked the Act. SORA 2021 retains the prior unconstitutional law almost entirely intact, displaying a disregard not just for the science, but for the Constitution. Indeed, the district court found a laundry list of constitutional violations, granting Plaintiffs relief on seven claims.

The district court's decision, though, was internally inconsistent. On some claims, the court recognized the devastating toll of being demonized online and living in constant fear of imprisonment for minor reporting errors. On other claims, the court viewed this degraded legal status and life-altering regime as a minor inconvenience—something the legislature can impose without regard to whether people branded as dangerous actually are. Further, the court recognized the "strong science-based opinions" that registries don't reduce recidivism, Op., R. 158, PageID #8693, and that over time registrants present no more risk than non-registrants. Stay Op., R. 192, PageID #9502. Yet it disregarded those same facts when upholding lifetime registration with no chance for removal.

Plaintiffs appeal the district court's decision to grant summary judgment to Defendants on three claims. First, the court erred in rejecting Plaintiffs' due

process and equal protection challenge to automatic registration for decades or life, with no individual review or chance for removal (Count III). The district court failed to apply more searching rational basis review, despite recognizing that registrants are seen as "the human equivalent of toxic waste," Op., R. 158, PageID #8719, and even though a decade of failed SORA reform makes clear that SORA's excesses cannot be cured legislatively. Further, while the Constitution doesn't demand "legislative perfection," *id.*, PageID #8723, that doesn't mean anything goes. At a minimum, the Constitution demands some opportunity for release from a lifetime of marginalization, pointless requirements, and constant threat of incarceration. The court further erred by resorting to irrelevant, inadmissible and non-record evidence to reject what the record shows: registration doesn't reduce recidivism, and risk decreases over time. Thus, prolonged registration without any chance for removal is irrational.

Second, the court erred in rejecting Plaintiffs' challenge to SORA procedures that give certain registrants, but not others who meet the same eligibility criteria, a right to seek removal from the registry (Count IV). The court reasoned that equal protection allows disparate treatment of dissimilarly situated people, but the difference it highlighted—their SORA "tier"—is not material to the purpose of the petition process: to permit removal of rehabilitated people. Since people in any tier can be rehabilitated, the distinction is immaterial *and* irrational.

Finally, the court erred in three of its vagueness rulings (Count VIII).

People with sex offense convictions "are one of the most disfavored groups in our society," but the constitutional principles constraining legislatures when they "write laws for sex offenders" are the same ones "that protect[] everyone else." *Gundy v. United States*, 588 U.S. 128, 172 (2019) (Gorsuch, J., dissenting). The legislature exceeded those constraints here.

## STATEMENT OF THE CASE

### A.    Legislative and Procedural History

Over the last three decades, the legislature has repeatedly amended SORA to impose more burdens on more people for longer periods of time. In 2011, Michigan completely restructured SORA. It added extensive new reporting requirements and retroactively extended *to life* the registry terms of some 17,000 people. Plaintiffs' Statement of Material Facts (SOMF), R. 123-1, PageID #3719-3723.

In *Does I*, six plaintiffs challenged SORA 2011. The district court found portions of SORA unconstitutional, and this Court held that SORA's retroactive application violated the Ex Post Facto Clause. *Does I*, 101 F. Supp. 3d 672 (E.D. Mich. 2015), 101 F. Supp. 3d 722 (E.D. Mich. 2015), 834 F.3d 696 (6th Cir. 2016), *cert. denied*, 583 U.S. 814 (2017). This Court recognized the gravity of the plaintiffs' other challenges—including to retroactive lifetime registration, free

speech limitations, and vague reporting requirements[1]—but didn't reach them because, under the ex post facto ruling, *none* could "be applied to the plaintiffs." *Does I*, 834 F.3d at 706.

Nevertheless, Michigan continued enforcing SORA against all other registrants. To compel Michigan to stop applying a law that this Court had already held unconstitutional, registrants filed a class action. *Does v. Whitmer* (*Does II*), 16-cv-13137 (E.D. Mich.). In 2020, the district court granted class-wide injunctive relief on all claims that the *Does I* plaintiffs had won; it gave the legislature 60 days to fix SORA's deficiencies. *Does v. Whitmer*, 449 F. Supp. 3d 719 (E.D. Mich. 2020). After COVID hit, the court enjoined SORA's enforcement and gave the legislature additional time to correct the constitutional violations. *Does II*, No. 16-cv-13137, R. 91. That injunction remained in effect from February 2020 to March 2021. *Id.*, R. 126. There is no evidence that the year-long bar on SORA enforcement had any impact on public safety.

When Michigan finally revised SORA in 2021, it made minimal changes. SOMF, R. 123-1, PageID #3734-3739; SORA 2021 with Highlighted Changes, R. 123-4. As before, the conviction alone determines whether one must register for 15 years (Tier I), 25 years (Tier II), or life (Tier III). M.C.L. §28.725(11)-(13).

---

[1] Pls' Brf, *Does I*, No. 15-2346, ECF 32-1.

SORA 2021 retains the 2011 amendments' retroactive extension of registration terms to life. SOMF, R. 123-1, PageID #3722. Children as young as 14, people who had sexual relationships with underage romantic partners, and people who committed other less serious offenses must still register, in most cases for life. M.C.L. §28.722(a)(iii)-(iv), (q)-(v). There is no individual review, and (with rare exceptions) no path off the registry, regardless of mitigating circumstances, passage of time, incapacity, or proven rehabilitation.

Registrants continue to be publicly branded as dangerous on the online registry, which displays recent photos and extensive personal details alongside information about past offenses. M.C.L. §28.728(2). A "mapping" tool allows any internet user to see where registrants live and work. SOMF, R. 123-1, PageID #3738.

Registrants must comply with a dizzying array of duties, which are virtually unchanged from those at issue in *Does I*. Obligations Summary, R. 123-3. As before, registrants must report within three days[2] any changes to addresses, employment (plus temporary jobs and routes for non-fixed employment), phone

_____

[2] SORA 2021 replaces "immediate" reporting with reporting within three business days—which is exactly how SORA 2011 defined "immediately." M.C.L. §§28.722(g) (2020); 28.725(1) (2021).

numbers, vehicles, schools, email addresses, internet identifiers,[3] etc. *Id.* SORA still requires registrants to report if they travel for more than seven days, with 21 days' notice for foreign travel. M.C.L. §28.725(2)(b), (8). SORA mandates in-person, three-day reporting for some updates; for others, the Michigan State Police (MSP) decides the manner of reporting. M.C.L. §§28.724a, 28.725, 28.727. MSP currently requires in-person, three-day reporting for addresses, paid work (no matter how minor), name changes, and education. Obligations Sum., R. 123-3, PageID #3921-3922. MSP could require more in-person reporting at any time. Op., R. 158, PageID #8671.

Additionally, registrants must periodically report in person to the police—typically every three months—to provide the same vast array of personal information as under SORA 2011. M.C.L. §§28.725a(3), 28.727. Registrants still pay an annual fee. M.C.L. §28.725a(6). The slightest misstep can still trigger up to ten years in prison and *mandatory* revocation of probation/parole or youthful trainee status. M.C.L. §28.729. The only compliance change is that—pursuant to *Does I* and *Does II*—SORA violations must be *willful*. *Id.* To vitiate this constitutionally-mandated willfulness provision, however, Defendants forced registrants to attest

---

[3] The district court enjoined reporting of email/internet identifiers as violating the First Amendment. Am. Judg., R. 177, PageID #9387.

that they "understand" SORA.[4] SOMF, R. 123-1, PageID #3864-3867.

The legislature did eliminate the geographic exclusion zones, as *Does I/II* required. But given SORA's online stigmatization, registrants still face steep barriers in housing and employment. *Id.*, PageID #3807-3816.

Because SORA 2021 failed to fix the Act's myriad constitutional deficiencies, Plaintiffs filed this case. After developing a massive record, including extensive expert evidence, Plaintiffs moved for summary judgment on all claims. Pls' SJ Mot., R. 123. There is no genuine dispute on material facts. *Id.*, PageID #3622-3623 (summarizing undisputed/unrebutted facts). Defendants cross-moved for summary judgment. Defs' SJ Mot., R. 129.

The court granted summary judgment to Plaintiffs on six claims and to Defendants on three; granted partial summary judgment to both sides on one claim (vagueness); and didn't reach one claim (plea agreement violation) because relief on other claims obviated the need to decide it. Op., R. 158; Op., R. 171; Claims Chart (Ex. A) (summarizing claims/decisions/appeals).

The court entered its final amended judgment on April 22, 2025 (R. 177). Defendants moved for a stay (R. 173), which the district court denied (Stay Op.,

---

[4] The district court held these forced admissions are unconstitutional. Op., R. 158, PageID #8756-8760.

R. 192), but this Court granted (ECF 28-1).

Plaintiffs appealed on Count III (lifetime/lengthy registration with no individual review or opportunity for removal); Count IV (unequal access to opportunities to petition for removal); and Count VIII (vagueness). Defendants appealed on Count I (ex post facto), Count II (retroactive extension of registration terms); and Count XI (non-Michigan offenses).

While the *Does* cases were being litigated, the Michigan Supreme Court twice held that SORA is unconstitutional. *People v. Betts*, 968 N.W.2d 497 (Mich. 2021) (SORA 2011 violates Ex Post Facto Clause); *People v. Lymon*, __ N.W.3d __, No. 164685, 2024 WL 3573528 (Mich. July 29, 2024) (SORA 2021 is cruel/unusual punishment for people with non-sex offenses).

### B.    The Plaintiffs

The ten named plaintiffs all prevailed in earlier SORA challenges—*Does I*, *Does II*, and *Roe v. Snyder*, 16-cv-13353 (E.D. Mich)—but have once again been subjected to the amended Act. They have never reoffended in the decades since their offenses; clinicians have determined they are as safe as non-registrants; and their offenses mostly involved sexual relationships with underage romantic partners. Yet nearly all must register for life, with no path off the registry. SOMF, R. 123-1, PageID #3699-3715. Absent judicial relief, most will be subject to SORA until they die.

They include:

- **Doe C**, who, at age 23, had a romantic and sexual relationship with I.G. They met at an 18-and-over nightclub in 2005, but she was underage, having used a fake ID. He pled guilty to criminal sexual conduct. He and I.G. married in 2015 and have three children. He has been fired repeatedly after employers learned he was on the registry. He once got an anonymous printout of his registry page with his eyes blacked out and the handwritten message "You will die." *Id.*, PageID #3703-3704, 3804, 3811-3812.

- **Doe E** was born with Fetal Alcohol Syndrome and has the developmental age of nine or ten. In 1994 (before the registry existed) he pled guilty to criminal sexual conduct for touching his six-year-old nephew—conduct psychologists said should be understood as childlike sexual experimentation given his disability. Because of the registry, he is not eligible for supportive housing. He worked as a custodian but was fired when an employee reported his registry status. His nephew, now an adult, supports his removal from the registry. *Id.*, PageID # 3710-3711, 3808, 3812, 3830.

- **Mary Roe**, while homeless and addicted to drugs at age 19 in 2002, had sex with a 14-year-old boy. She pled guilty to criminal sexual conduct. She since earned a master's in counseling and now works as a trauma therapist, including for sexual-assault survivors. She has been denied employment, housing, office space, and insurance due to her registry status. *Id.*, PageID #3706-3708, 3809, 3813-3814.

The other plaintiffs have similar experiences. *Id*, PageID #3699-3715.

## C.   SORA Inflicts Devastating Harm.

### 1. Life-Altering Stigmatization

"SORA brands registrants as moral lepers" and "consigns them to years, if not a lifetime, of existence on the margins." *Does I*, 834 F.3d at 705. As the district court recognized, "not all public information is … equal[.]" Op., R. 158, PageID

#8689. Other criminal-record databases typically require targeted queries about specific people and provide historical conviction information. In creating the online registry, the state "re-packag[es] information and provid[es] it to the public in a different form"—depicting registrants as "a highly dangerous type of criminal who requires constant public monitoring and scrutiny." *Id.*

The initial search page primes the dangerousness theme, warning of "future criminal sexual acts by convicted sex offenders." SOMF, R. 123-1, PageID #3775. Each registrant's page displays a current photo alongside conviction information that can be decades old. The page describes weight, height, hair and eye color, tattoos/scars, birthdate, aliases, home address, work address, school address, vehicles, registration number, Michigan Department of Corrections (MDOC) number, last verification date, and "compliance" status. *Id.*, PageID #3778; M.C.L. §28.728(2). The listed convictions lack context that would likely be apparent in court files—e.g., the offense involved two teenagers, one of whom was underage. Lageson Rept., R. 123-14, PageID #4493.

The SORA website "encourage[s] browsing, mapping, and tracking registrants, rather than accessing targeted archival information." *Id.*, PageID #4484. Simply clicking registrant icons on an interactive map reveals a person's photo and registry details. SOMF, R. 123-1, PageID #3775-3777.



Prominent buttons on each registrant's page invite users to "track offender," "map offender," and "submit a tip"—reinforcing the message of highly dangerous individuals actively engaged in criminal conduct. With one click, users can sign up for registrant alerts. Lageson Rept., R. 123-14, PageID #4493.

Registry information goes not just to those who seek it. Websites focused on unrelated subjects (e.g., real estate) "push" registrant data onto internet users who aren't looking for it, and search engines often highlight registry information as the *top result*. *Id.*, PageID #4485, 4495-4505.

Because Michigan portrays registrants as dangerous pariahs, registrants have received death threats, been attacked at gunpoint, had their homes and cars vandalized, and been threatened in their own homes. SOMF, R. 123-1, PageID #3804-3805. Registrants' family members are stigmatized simply for associating

14

with them; their children are bullied. Some families live apart so the family home won't be listed on the registry. *Id.*, PageID #3824-3825. Registration takes a severe toll on mental health, with high rates of depression and attempted suicide among registrants. *Id.*, PageID #3827-3829.

Because work and home addresses are published online, many employers and landlords won't hire or rent to registrants, regardless of their qualifications. *Id.*, PageID #3807-3816. Of Michigan registrants living in the community, 45% were unemployed. *Id.*, PageID #3811. Of those who reported addresses for at least ten years, 12% have been homeless; many others have been evicted or forced into substandard housing. Lifetime registrants are barred from subsidized housing. *Id.*, PageID #3807-3810.

Defendants contend that because conviction information is already public, the registry does not inflict separate harm. But research shows that registration "greatly exacerbate[s]" the reentry issues facing people with convictions. Zgoba Rept., R. 123-15, PageID #4539; Socia Rept., R. 123-11, PageID #4347-4348. The record is replete with examples of registrants who found jobs and housing despite their criminal records, only to lose them when someone discovered their registry status, or when the police showed up for a compliance sweep. The harassment, vigilantism, and death threats wouldn't occur but for the registry. The registry's message that *all* registrants should be feared has consequences far

beyond those attributable to the conviction. SOMF, R. 123-1, PageID #3785-3832.

Finally, countless other laws "piggyback" onto SORA, assuming that anyone dangerous enough to be registered should also be denied access to parks, libraries, or even hurricane shelters. Similarly, private actors, including hospitals, colleges, churches, and social media—where much of public and private life is conducted—deny service. *Id.*, PageID #3831-3832.

## 2. Stringent Reporting and Monitoring

SORA's requirements are onerous. Tier III registrants who spend 50 years on the registry must report in person at least 200 times, *not counting* reports to update changed information between quarterly "verification" dates. In-person reporting is especially challenging for people who are elderly, disabled, lack transportation, or live far from a registering authority. There are no exceptions for hospitalized or homebound people. *Id.*, PageID #3785-3791, 3829-3931.

Registrants must report all sorts of minor events within three days, often in person. Going on vacation, volunteering at church, or getting a new work phone must all be reported within three days. M.C.L. §28.725(1)-(2). Under the district court's interpretation, registrants who get paid five dollars to shovel a neighbor's sidewalk must report in person within three days. Failing to inform the police within three days of moving a roommate's car to let out a back-unit tenant can

trigger prosecution. Op., R. 171, PageID #9172-9181.

Registrants live in fear of violating SORA's myriad requirements and therefore avoid many normal activities. For example, rather than risk violating complex travel reporting requirements, many registrants don't travel—missing professional events, family gatherings, and even parents' funerals. SOMF, R. 123-1, PageID #3817-3823.

### 3. Incarceration for Technical Violations

Such caution is wise because SORA's requirements—carrying up to ten years' imprisonment—are aggressively enforced. The registry is designed to automatically flag non-compliance for enforcement. Police have used sweeps to arrest people for record-keeping errors. *Id.*, PageID #3791-3796. Each year, 880-1,000 people are convicted for technical compliance violations—costing taxpayers millions. *Id.*, PageID #3800, 3839. Yet research shows that such technical violations have nothing to do with recidivism. *Id.*, PageID #3743.

### D. Michigan's Registry Data Shows that Automatic Perpetual Registration Is Pointless.

Experts analyzed Michigan's registry data, and their report—the first such analysis—provides hard numbers on the very population at issue. The results defy common assumptions. Data Rept., R. 123-6.

17

### 1. Michigan's Registry Is Huge and Includes Many People with Lower-Level Offenses.

Michigan's registry has nearly tripled, from about 17,000 people in 1997, to more than 45,000 in 2023. SOMF, R. 123-1, PageID #3733.

Registrable offenses range from grave crimes like first-degree criminal sexual conduct (CSC-I) to lower-level offenses like sexual contact with an underage teen partner. **Most registrants have not committed the most serious offenses.** Data Rept., R. 123-6, PageID #3954 (only 16% of in-community registrants were convicted of CSC-I).

### 2. Registrants' Risk Varies.

SORA is premised on the common belief that all people convicted of sexual offenses pose a serious danger. Yet both sides' experts agree that recidivism risk varies widely. Some people convicted of sex offenses present a heightened risk. Others don't. SOMF, R. 123-1, PageID #3750-3752.

Both sides' experts also agree that offense seriousness doesn't predict recidivism, and that actuarial risk assessments are far more accurate than convictions in gauging recidivism risk. *Id.*, PageID #3770. Such tools are widely used by correctional authorities, including the MDOC, to inform programming, release, and parole/probation decisions. As MDOC's sexual abuse prevention manager testified, "We want to go with what the science says works." *Id.*, PageID #3772.

Because SORA is solely conviction-based, it "fail[s] to distinguish between

18

the large percentage of people who present a lower risk of re-offending (especially over time) and the much smaller percentage of people who present a higher risk of re-offending (although that risk also decreases over time)." Letourneau Rept., R. 123-9, PageID #4219.

### 3. SORA's Tiers Are Inversely Correlated with Risk.

Analysis of Michigan's registry data established that **SORA's conviction-based tiers are actually *backward***: people in Tier I (15 years) have the highest risk (based on empirically-validated risk instruments) and Tier III (life) have the lowest. SOMF, R. 123-1, PageID #3768-3769.

### 4. Registrants' Average Recidivism Rates Are Low.

The average recidivism rate for sex crimes is far lower than for almost all other crimes.[5] *Id.*, PageID #3761-3762. Indeed, **93% of registrants in the community have never been convicted of a subsequent registrable offense** (90% if one includes incarcerated registrants). Data Rept., R. 123-6, PageID #3952-3953.

That recidivism rate is cumulative for *all* registrants and overstates the rate for specific registrant groups. For example, of Michigan's 2,000-plus children

---

[5] SOMF, R. 123-1, PageID #3761-3762 &n.11 (Department of Justice study found that nine years post-release, 7.7% of people with sex-offense convictions were rearrested for a subsequent sex offense. Rearrest rates for committing the same type of crime as the original offense were far higher for robbery (16.8%); non-sexual assault (44.2%); drug offenses (60.4%); property offenses (63.5%); and public order offenses (70.1%)).

registered for juvenile adjudications, **99%** have never been convicted of another registrable offense. *Id.*, PageID #3979. Similarly, more than a quarter of in-community registrants are over 60; that age group has a 3-4% recidivism risk, which is comparable to *non-registrants*. *Id.*, PageID #3952-3954. Finally, because the cumulative rate includes both people recently released and those who have long lived in the community, it overstates risk for people with older convictions, as discussed below.

### 5.  Recidivism Rates Decrease Dramatically Over Time.

Consistent with well-established criminological research, both sides' experts agree that the longer people live in the community without recidivating, the lower their risk. SOMF, R. 123-1, PageID #3749. **Michigan data shows that registrants' recidivism rates were between 3-5% during the first five years in the community and dropped to 1.4% after 20 years.** Data Rept., R. 123-6, PageID #3967.

<u>**Rates of New Recidivism of People by 5-year Cohorts**</u>
<u>**Based on Release Date**</u>

| Cohort | Pop. | 5-year | 10-year | 15-year | 20-year |
|--------|------|--------|---------|---------|---------|
| **1995–1999** | 8,210 | 4.9% | 2.2% | 1.8% | 1.4% |
| **2000–2004** | 7,681 | 4.5% | 2.1% | 1.9% | N/A |
| **2005–2009** | 6,458 | 3.7% | 2.0% | N/A | N/A |
| **2010–2014** | 5,227 | 2.9% | N/A | N/A | N/A |

Data Rept., R. 123-6, PageID #3967.[6]

### 6. Many Registrants Are Just as Safe as Anyone Else.

Because the justification for SORA is that people convicted of sex offenses are more dangerous than other people, it is important to compare registrants' recidivism rates with the rate at which *non-registrants* are convicted of sexual crimes. Indeed, **90-95% of sex crimes are committed by people with no record of sexual offending—not by registrants**.[7] SOMF, R. 123-1, PageID #3741. Non-registrants have a statistically measurable sex-offense conviction rate.[8] The point at which registrants are no more likely to be convicted of a new sex offense than non-registrants is called "desistance." Most registrants in the community reach desistance after 10 years. Even those who are initially highest risk do so after 20 years. *Id.*, PageID #3752-3756.

Experts determined that **17,000-19,000 Michigan registrants—about half**

---

[6] The table shows recidivism rates for registrants released in 5-year cohorts (e.g., 1995-1999). Rates describe the percentage in each cohort convicted of a subsequent registrable offense for the first time at each follow-up interval. For example, the 20-year rate captures the proportion of cohort members who recidivated for the first time between the 15- and 20-year follow-up intervals.

[7] Research shows that registry laws are not responsible for registrants' low recidivism rates or the fact that only a small percentage of sex crimes are committed by registrants. Socia Rept., R. 123-11, PageID #4330-4334; Socia Supp. Rept., R. 123-12, PageID #4417-4418.

[8] Non-registrant males' rate for first-time sex-offense convictions is 1% - 3.8%. SOMF, R. 123-1, PageID #3753.

21

**of those in the community—are just as safe as non-registrants** (i.e., have reached desistance), and thousands more present only a slightly higher risk. Data Rept., R. 123-6, PageID #3952, 3967-3973. **Yet 70% of registrants living in the community are subject to SORA for life (Tier III), and 92% for 25 years or life (Tier II/III).** *Id.*, PageID #3961.

The district court focused on the fact that because sexual offenses are under-reported, research based on arrests/convictions doesn't capture "undetected" offending. Op., R. 158, PageID #8722. **But the accuracy of recidivism and desistance research depends not on whether there is undetected crime, but on whether people *with* sex-offense convictions commit more undetected sexual offenses than people *without* such convictions.** SOMF, R. 123-1, PageID #3888-3897. There are undetected offenses *in both groups*, and—as Defendants' experts admit—the detection rate is the same for both groups. Therefore, undetected offending doesn't affect the comparison between registrants and non-registrants. *Id.*, PageID #3892-3895; Prescott Rept., R. 123-10, PageID #4279.

Dr. Karl Hanson's graph below shows that over time, all registrants reach desistance. The baseline risk for non-registrants is shown by the straight black "desistance" line. How quickly people reach desistance depends on their risk level, shown by the colored lines. SOMF, R. 123-1, PageID #3753-3755.

**Desistance Over Time:**
**Comparison of Registrants and Non-Registrants**
**Based on Detected Offenses**



Dr. Hanson's second graph accounts for undetected offending, showing what happens if one arbitrarily assumes that for every detected offense, there are three undetected offenses.

**Desistance Over Time:**
**Comparison of Registrants and Non-Registrants**
**Accounting for Undetected Offenses**



The flat black line shows higher baseline sex-offense rates (reflecting that non-registrants, too, commit undetected offenses). But including undetected offenses in the analysis has no effect on how long it takes for registrants to become just as safe as non-registrants, as Defendants' experts concede. *Id.*, PageID #3752-3755, 3888-3895; Hanson Rebuttal Report, R. 123-8, PageID #4190-4192.

### E. SORA Undermines Public Safety.

The record establishes that conviction-based online registries at best make no difference in recidivism rates and may actually *increase* reoffending. SOMF,

R. 123-1, PageID #3739-3741. Dr. Elizabeth Letourneau explains that **registration laws "simply do not reduce sexual (or nonsexual) recidivism."** Letourneau Rept., R. 123-9, PageID #4228. **Defendants' own expert concedes that "the research has been pretty consistent that [registries are] not effective."** SOMF, R. 123-1, PageID #3741. Rather, research suggests that Michigan's registry contributes to sex-offense rates that are up to 5% *higher* than they would be without SORA. Prescott Rept., R. 123-10, PageID #4282.

SORA fails to reduce recidivism because of "[t]he many burdens registrants experience" from online stigmatization. *Id.*, PageID #4285. Registries "increase the likelihood of … joblessness, homelessness, and disconnection from prosocial friends and family, which in turn *increase* sexual and non-sexual recidivism." Letourneau Rept, R. 123-9, PageID #4240. SORA has other "unintended effects that may imperil community safety[,]" *id.*, including discouraging victims from reporting abuse and making it harder to obtain convictions. SOMF, R. 123-1, PageID #3743-3745.

Finally, law enforcement *doesn't use the registry to investigate crimes*. *Id.*, PageID #3746-3748. As MSP's legal advisor testified: "the legislature tagged us with maintaining a registry that we don't even need … because all this information is already available to us." *Id.*, PageID #3746-3747. Indeed, some information that registrants must report—under threat of criminal sanctions—is never even entered

into the MSP database. *Id.*, PageID #3791.

## ARGUMENT SUMMARY

This Court must decide whether Michigan can permanently stigmatize people as sub-human, subject them to draconian restrictions, and put them at perpetual risk of incarceration—with no individual assessment of dangerousness or opportunity for removal—solely because of a past sex-offense conviction. It cannot.

**Count III.** Plaintiffs don't challenge SORA in its entirety. Rather, Plaintiffs narrowly focus on what is *most* irrational: (a) using the conviction alone to automatically subject people—thousands of whom are just as safe as non-registrants—to the severe harms of registration *for decades or life with no possibility of removal*, and (b) extensive yet pointless reporting requirements under the ever-present threat of imprisonment for record-keeping failures.

The district court's decision rests on multiple errors. First, the court failed to subject SORA's extreme features to exacting scrutiny despite clear evidence that they reflect animus. Instead, it effectively held that because legislative perfection is unattainable, the legislature can do whatever it wants. Second, the court used Defendants' inadmissible non-record evidence to grant them summary judgment, despite Plaintiffs' expert evidence that (1) risk declines dramatically over time, making convictions an increasingly irrational—and eventually wholly irra-

26

tional—proxy for dangerousness, and (2) SORA *undermines* public safety.

Third, the grounds the district court advanced for upholding SORA—namely, reducing recidivism, general deterrence, and warning the public—cannot withstand scrutiny. Even assuming those rationales could justify *a* registry, they cannot justify unreviewable registration *for decades or life with no possibility of removal ever*. Nor can they justify endless requirements, under ever-present threat of imprisonment, to report information that law enforcement doesn't even use.

Finally, the district court erred in assuming that a risk-based registry is both the only remedy and infeasible, when in fact there are many ways to cure SORA's constitutional defects.

**Count IV.** The district court erred in rejecting Plaintiffs' equal protection challenge to SORA's petitioning procedures. SORA allows Tier I registrants who meet strict eligibility criteria to ask a court for removal from the registry, but not Tier II/III registrants who meet the same criteria. The court held that the latter are not "similarly situated" due to their tier. But the Equal Protection Clause prohibits disparate treatment of similarly-situated people who are dissimilar only in *immaterial* respects. People in any tier can be rehabilitated. Thus, tier differences are not *material* to the purpose of the petitioning process: allowing removal of rehabilitated people. The statute is even more irrational because SORA's tiers are *inversely* correlated to risk.

**Count VIII.** The district court erred in finding that three SORA require-ments (regarding education, employment, and vehicles) are not vague, even though the record shows that neither law enforcement nor registrants understand them.

## STANDARD OF REVIEW

A summary judgment motion is reviewed *de novo. Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). The court must view all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## ARGUMENT

I. **AUTOMATIC PERPETUAL REGISTRATION AND POINTLESS REPORTING—WITH NO INDIVIDUAL ASSESSMENT OR CHANCE FOR REMOVAL—VIOLATES DUE PROCESS AND EQUAL PROTECTION.**

Preventing sex crimes is an important goal. But SORA *undermines* it by failing to decrease, and—if anything—increasing, sexual recidivism. SORA sabo-tages registrants' efforts to find housing, employment, and prosocial relationships that are key to reentry; discourages survivors from reporting abuse; and forces law enforcement to expend limited resources monitoring thousands of people who present no more risk than non-registrants. SOMF, R. 123-1, PageID #3739-3748. This is irrational and the very kind of governmental arbitrariness the Constitution forbids.

### A. The District Court Erred in Treating Any Legislative Choice as Acceptable.

#### 1. SORA's Extreme Features Are Subject to Exacting Scrutiny.

At a minimum, "[a]ll laws, whether the challenge arises under the Due Process or Equal Protection Clause, must satisfy rational-basis review."[9] *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022). Here, the state's justifications for unreviewable prolonged registration must satisfy more exacting rational basis review for two reasons.

First, standard rational basis review presumes that "flawed laws will 'eventually be rectified by the democratic process'"—but that process only works "absent some reason to infer antipathy." *Tiwari*, 26 F. 4th at 365 (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979)). Where "prejudice" "tends seriously to curtail the operation of those political processes ordinarily relied upon," a "more searching judicial inquiry" is needed. *United States v. Carolene Prods.*, 304 U.S. 144,

---

[9] Plaintiffs' challenge sounds in both due process and equal protection. "Due process emphasizes fairness between the State and the individual," whereas equal protection "emphasizes disparity in treatment" between different groups. *Ross v. Moffitt*, 417 U.S. 600, 609 (1974). Prolonged registration without review is "arbitrary governmental action." *Kansas v. Hendricks*, 521 U.S. 346, 356-57 (1997) (upholding sex-offender civil commitment statute against due process challenge because it "unambiguously requires a finding of dangerousness"). Prolonged registration also reflects an unreasoned distinction between (a) non-registrants, and (b) people who present the same (or less) risk as non-registrants but are subject to SORA for years/life with no opportunity for review.

152 n.4 (1938). Laws grounded in "fear or negative attitudes" that are unfounded require "exacting" scrutiny because "the desire to impede a politically unpopular group is not a legitimate state interest." *Bannum v. City of Louisville*, 958 F.2d 1354, 1360, 1363 (6th Cir. 1992).

*Bannum* reviewed an ordinance limiting reentry housing under "the exacting rational relationship standard" given the risk that the law "was based on [nothing] more than fear." 958 F.2d at 1361. Here, the district court incorrectly rejected *Bannum*'s exacting-review requirement because dicta in *Bannum* suggests that—on the *merits*—a similar law affecting people with sex offenses might be constitutional. Op., R. 158, PageID #8716-8717. The district court should have applied exacting review to *this* record to *make its merits assessment*, given the signs that SORA's extreme features were "founded upon fear or negative attitudes." *Bannum*, 958 F.2d at 1363. Moreover, *Bannum*—which struck a law targeting people with criminal records as animus-based—disposes of the district court's erroneous determination that animus-based laws are permissible so long as they target people who previously did something wrong. Op., R. 158, PageID #8715.

SORA is the relatively rare instance where, due to ingrained prejudice, courts cannot "assume that democracy eventually will fix the problem." *Tiwari*, 26 F. 4th at 365. As a Michigan legislator testified, "It is impossible, or next to

impossible, to address the problems with the … registry through the legislative process [because] [t]he issue is just so toxic and so misunderstood." SOMF, R. 123-1, PageID #3833. Likewise, a state judge testified that any legislation seen as "lessening the restrictions [on registrants], or reducing their punishment, is considered by most legislators to be political suicide." *Id.*, PageID #3834. This accords with research showing that science-based facts don't change the false assumption that registrants are forever dangerous. Socia Rept., R. 123-11, PageID #4341-4345.

Two decades of failed SORA reform prove this point. SOMF, R. 123-1, PageID #3833-3837. After *Does I*, Michigan didn't amend SORA. Rather, in defiance of this Court, Michigan kept enforcing SORA in its entirety—including provisions this Court unambiguously invalidated—against every Michigan registrant except the individual plaintiffs who sued. *Id.*, PageID #3835. In *Does II*, the parties paused litigation to pursue legislative reform. A stakeholder group—including MSP, MDOC, prosecutors, and victim advocates—made progress toward a constitutional, evidence-based law. But with the 2020 election approaching, the executive branch withdrew. *Id.*, PageID #3729-3730. Only when faced with a class-wide injunction did the legislature pass SORA 2021—but *even then*, it ignored prior judicial rulings, science, and stakeholder consensus on common-sense reforms like shortening registration terms and creating paths for removal.

*Id.*, PageID #3728-3732.

Here in *Does III*, the district court deferred entry of its judgment invalidating parts of SORA so the legislature could revise the law. Am. Judgment, R. 177, PageID #9391. The legislature did nothing. After the district court denied a stay, Op., R. 192, the legislature suddenly bypassed its normal procedures and tried to pass legislation within days, without any hearings.[10] Like prior versions of SORA, that bill was completely untethered from both the science and over a decade of court rulings. Once this Court granted a stay, ECF 28-1, legislative activity ceased.

In short, while legislation need not accord perfectly with science, **with SORA the facts simply do not matter to legislators** *at all*. *Id.*, PageID #3833-3837. SORA is divorced from reality, and "the democratic process" cannot "rectif[y]" the problem. *Vance*, 440 U.S. at 97.

The district court erred by ignoring this legislative history and evidence of animus, opining instead that expressions of loathing towards registrants are free speech. Op., R. 158, PageID #8719 (citing *Snyder v. Phelps*, 562 U.S. 443 (2011)). But the public's right to voice hatred towards unpopular groups—whether gays,

_____

[10] S. Journal, 103rd Leg., 721-23 (Mich. 2025) (discharging bill from committee without hearing and suspending rules for S.B. 424): www.legislature.mi.gov/documents/2025-2026/Journal/Senate/pdf/2025-SJ-06-17-056.pdf.

the disabled, or people with convictions—doesn't mean that legislation can be based on animus.

Second, more exacting review is necessary where the government imposes unusually severe burdens on a targeted group. *See Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring) (applying heightened review given the severe consequences of sodomy conviction, including possible sex-offense registration); *United States v. Windsor*, 570 U.S. 744, 772-74 (2013) (applying heightened scrutiny where law causes "visible and public [burdens]"); *Bishop v. Smith*, 760 F.3d 1070, 1104 (10th Cir. 2014) (Holmes, J., concurring) (searching review where law targets despised group in "expansive and novel fashion"). This is especially so where restrictions are imposed without "a procedure which the ordinary dictates of prudence would seem to demand for the protection of the individual from arbitrary action." *Skinner v. State of Okl. ex rel. Williamson*, 316 U.S. 535, 544 (1942) (Stone, J. concurring).

SORA burdens almost every facet of life, criminalizing ordinary conduct, like driving a car, going on vacation, taking a class, etc., unless reported to the police. Unlike other severe restrictions on the ability to live life freely (e.g. guardianships, M.C.L. §700.5303(3)), there is no individual review. SORA's reporting requirements are criminally enforced; there are no exceptions, even for the homebound. SOMF, R. 123-1, PageID #3785-3831. The law's "sheer breadth

is so discontinuous with the reasons offered for it that [it] seems inexplicable by anything but animus." *Romer v. Evans*, 517 U.S. 620, 632 (1996).

Thus, exacting review is necessary.

### 2. Conventional Rational Basis Review Is Meaningful.

Even ordinary rational basis review is not "toothless," *Mathews v. Lucas*, 427 U.S. 495, 510 (1976), nor "a rubber stamp of all legislative action." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). *See Tiwari*, 26 F.4th at 362 (collecting cases striking irrational laws). Deference to legislative decisions does not permit courts to "rationalize away [the state's] irrational decisions." *Seal v. Morgan*, 229 F.3d 567, 579 (6th Cir. 2000). Rather, courts must "ensure that the government has employed rational means to further its legitimate interest." *Peoples Rts. Org. v. City of Columbus*, 152 F.3d 522, 532 (6th Cir. 1998). Thus, plaintiffs can establish irrationality by proving facts that negate the law's purported justifications. *Berger v. City of Mayfield Heights*, 154 F.3d 621, 625 (6th Cir. 1998).

### B. Registration Is Increasingly Irrational Over Time.

Automatic, unreviewable, perpetual registration based solely on conviction cannot survive conventional rational basis review, much less exacting scrutiny. SORA uses convictions as an unchallengeable proxy for dangerousness. That proxy is deeply flawed: convictions don't predict recidivism risk; risk varies widely among registrants; and even the average recidivism rate is far lower than

commonly believed. Facts D.2-4; SOMF, R. 123-1, PageID #3750-3753.

Assuming, however, that a conviction could be a rational—if flawed—proxy for risk at the *outset*, equating conviction with dangerousness becomes less rational, and eventually rationally indefensible, *over time*. Both sides' experts agree that recidivism risk decreases with time and age. Facts D.5-6. As the district court found, "for most registrants, the risk of being convicted of a new sex offense is no higher than the risk for non-registrants after a registrant has lived in the community without a conviction for 10 years," and "even for the highest risk" registrants, "the recidivism risk matches that of non-registrants after 20 years." Stay Op., R. 192, PageID #9502. In short, as time passes, a sex-offense conviction is an increasingly false indicator of *current* risk. For that reason, "lengthy and lifetime registration terms serve no public protection function." Hanson Rept., R. 123-7, PageID #4007. Where people have lived successfully in the community for years, there is no reason for continued registration. At a minimum, they should be able to seek removal.

While legislation needn't be perfectly tailored, it must be grounded in reason. For instance, the state has a significant interest in preventing harm caused by bad drivers and may validly impose reasonable restrictions on potentially risky ones. Thus, restricting driver's licenses to people over 16 is permissible, as is testing eyesight. But barring everyone under 35 or over 50 from driving would be

irrational. As would requiring anyone who ever caused a car accident to display a "dangerous driver" bumper sticker forever, even if they've had a clean driving record for decades. Such laws are untethered from any reasonable legislative line-drawing. So too here.

Where a law "condemn[s], without hearing, all the individuals of a class" to severe restrictions "because some or even many merit condemnation, it is lacking in the first principles of due process." *Skinner*, 316 U.S. at 545 (Stone, J. concurring) (invalidating mandatory vasectomies for "habitual criminals"). The government must "take appropriate steps to safeguard the liberty of the individual" by giving people a chance to show that theirs "is not the type of case which would justify" such harsh treatment. *Id.*, at 544-545.

Courts have thus invalidated lifetime registration absent individual review or an opportunity for removal. The South Carolina Supreme Court held that "lifetime registration without … judicial review to assess the risk of re-offending" violates due process. *Powell v. Keel*, 860 S.E.2d 344, 348 (S.C. 2021). South Carolina now allows registrants to petition for removal. S.C. Code Ann. §23-3-462(A). Similarly, the New Jersey Supreme Court held that lifetime juvenile registration "bears no rational relationship to a legitimate governmental objective" where a registrant "cannot seek relief <u>ever</u> from those requirements—however successful his rehabilitation, however many his achievements, and however

remote the possibility that he will reoffend." *State in Int. of C.K.*, 182 A.3d 917, 919, 926 (N.J. 2018). *See In re C.P.*, 967 N.E.2d 729, 750 (Ohio 2012) (similar).

The district court distinguished *Powell* because Michigan's tier system provides "a degree of tailoring." Op., R. 158, PageID #8724. But courts in other jurisdictions that—like Michigan—have tiers, have invalidated lifelong registration absent an opportunity for removal, albeit as ex post facto violations.[11] Moreover, the record refutes the district court's reasoning: 92% of Michigan registrants are classified as Tier II/III, often for offenses like sexual contact with an underage partner. Data Rept., R. 123-6, PageID #3961. And SORA's tiers aren't tailored to risk; rather they are *inversely correlated*, with those in the highest tier *least likely* to reoffend. SOMF, R. 123-1, PageID #3768-3770.

This Court has invalidated laws that, as here, are disconnected from their public safety justifications. As discussed, *Bannum* held that stricter zoning regulations on reentry centers were irrational because the legislature's justifications boiled down to "unsubstantiated" "fear or negative attitudes." 958 F.2d at 1363-1364. "If the city's goal was to protect its residents from recidivists, then some data reflecting the extent of the danger must exist." *Id.* at 1360-1361. Similarly,

---

[11] *Doe v. State*, 111 A.3d 1077, 1100 (N.H. 2015); *State v. Letalien*, 985 A.2d 4, 26 (Me. 2009); *Doe v. Dep't of Public Safety & Corr. Servs.*, 62 A.3d 123, 140 (Md. 2013).

this Court invalidated a licensing requirement on funeral directors because "[e]ven if casket selection has an effect on public health and safety," licensing "bears no rational relationship to managing that effect." *Craigmiles v. Giles*, 312 F.3d 220, 226 (6th Cir. 2002).

Defendants may cite cases that upheld registries based on the now-disproven assumption that people convicted of sex offenses are forever dangerous. For example, *Smith v. Doe* held—in the ex post facto context—that states may make "*reasonable* categorical judgments" based on past convictions, and upheld Alaska's registry because of the "high rate of recidivism among convicted sex offenders and their dangerousness as a class." 538 U.S. 84, 103 (2003) (emphasis added). As scholars have demonstrated, the evidence before the Court there was junk science; the cited Department of Justice manual had relied on a pop psychology article, which in turn misreported a single, non-representative study. Socia Rept., R. 123-11, PageID #4335-4338 (citing Ellman, *Frightening and High: The Supreme Court's Crucial Mistake About Sex Crime Statistics*, 30 Const. Comment. 495, 497-499 (2015)). By contrast, the evidence here—from the world's leading experts on sexual recidivism—conclusively refutes the reasonableness of SORA's categorical judgment that people convicted of sex offenses are forever dangerous.

"[T]he constitutionality of a statute predicated upon the existence of a

particular state of facts may be challenged by showing … that those facts have ceased to exist." *Carolene Prods. Co.*, 304 U.S. at 153. Thus, the Supreme Court has revised prior doctrines where new developments undermined the assumptions underpinning them. *See Carpenter v. United States*, 585 U.S. 296, 300-313 (2018); *South Dakota v. Wayfair, Inc.*, 585 U.S. 162, 184 (2018); *cf. Kimbrough v. United States*, 552 U.S. 85, 97, 111 (2007) (citation modified) (sentencing disparity for crack versus powder cocaine "rested on assumptions about the[ir] relative harmfulness … that more recent … data no longer support"). Similarly, the Tenth Circuit held that while bans on owning pit bulls may have been justified 20 years earlier, plaintiffs stated plausible claims that "the state of science [now] is such that bans are no longer rational." *Dias v. City and County of Denver*, 567 F.3d 1169, 1183 (10th Cir. 2009). *See also Detroit Free Press v. U.S. Dep't of Justice*, 829 F.3d 478, 485 (6th Cir. 2016) (en banc) (overturning precedent because "[i]n 1996, this court could not have known or expected that [an online] booking photo could haunt the depicted individual for decades."); *In re Hill*, 2025 WL 903150 (6th Cir. Mar. 25, 2025) (unpublished) (allowing habeas petition because conviction was based on bitemark evidence discredited under "new scientific standards"); *Henderson v. Thomas*, 891 F. Supp. 2d 1296, 1305 (M.D. Ala. 2012) (prior precedent is no bar where its "central factual premise … is no longer true"); *Nat'l Fed'n of the Blind v. Scribd Inc.,* 97 F. Supp. 3d 565, 575-576 (D.

Vt. 2015) (considering evolution of internet in interpreting statute); *State v. Henderson*, 27 A.3d 872 (N.J. 2011) (adopting new framework for eyewitness identification based on updated science); *State v. Lawson*, 291 P.3d 673 (Or. 2012) (same).

Courts, including this one, have increasingly evaluated registry challenges in light of modern science. *See Does I*, 834 F.3d at 704-705 ("recent empirical studies" cast "significant doubt" on notion that registries reduce recidivism); *Ortiz v. Breslin*, 142 S. Ct. 914, 916 (2022) (Sotomayor, J., re. denial of certiorari); *Cornelio v. Connecticut*, 32 F.4th 160, 173 & n.7 (2d Cir. 2022); *Betts*, 968 N.W.2d at 514; *C.K.*, 182 A.3d at 934; *State v. Hinman*, 530 P.3d 1271, 1278 & n.13 (Mont. 2023); *In re T.B.*, 489 P.3d 752, 768 (Colo. 2021); *Hoffman v. Vill. of Pleasant Prairie*, 249 F. Supp. 3d 951, 962 (E.D. Wis. 2017).

This Court must, as it did in *Does I*, evaluate SORA in light of the record before it. That record shows that prolonged registration without individual review or chance for removal is irrational. SOMF, R. 123-1, PageID #3739-3774.

## C. SORA Inflicts Massive Harm for No Benefit.

When evaluating rationality, courts consider the law's "countervailing costs" to those affected, including whether a law causes "life-time hardship" and imposes stigma "mark[ing people] for the rest of their lives." *Plyler v. Doe*, 457 U.S. 202, 223-24 (1982).

Here, for decades or until death, registrants are branded as social pariahs and must report a dizzying array of information, often in person and within three days, with no exceptions. Minor reporting errors can trigger imprisonment. Yet "[t]he requirement that registrants have frequent, in-person appearances before law enforcement [] appears to have no relationship to public safety at all." *Does*, 834 F.3d at 705; *see* SOMF, R. 123-1, PageID #3743. Moreover, MSP doesn't even *enter* all of the information reported into its database—let alone *use* it. *Id.*, PageID #3791. Demanding strict adherence to burdensome but needless requirements is irrational.

### D. The District Court Relied on Irrelevant Evidence that Was Also Inadmissible and Outside the Record.

There is no genuine dispute that (a) registrants' recidivism rates are low and drop to baseline rates over time, and (b) registries don't reduce recidivism. In ignoring those facts to grant Defendants' summary judgment (on both Counts III and IV), the district court got distracted by non-material facts (*see* Argument I.E), and compounded that error by relying on Defendants' inadmissible, non-record evidence. That was an improper basis to deny summary judgment to Plaintiffs, let alone grant it to Defendants.

First, Defendants attempted to rebut the hard facts of the Data Report (describing Michigan's registrants) with reports speculating about recidivism in entirely different populations. Since a basic research principle is that the sample

set matters, Defendants' reports cannot create a genuine factual dispute. Those reports are also inadmissible because Defendants' experts do not "'fit' the facts of the case." *Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000). They aren't experts on sex offender registration and admit that their research "isn't about people on registries." Lovell Dep., R. 125-16, PageID #5407. Nevertheless, the district court erroneously relied on Defendants' expert reports without even ruling on Plaintiffs' challenge[12] to their admissibility,[13] much less ensuring Defendants' evidence met the standards of Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Op., R. 158, PageID #8702, 8722-8723; Pls' Brf, R. 131, PageID #7967-7974; Pls' Resp. to Defs' Facts, R. 131-1, PageID #7977-7983.

Second, Defendants introduced *zero* record evidence to counter Plaintiffs' expert evidence that registries don't reduce recidivism. Instead, for the first time on reply, Defendants cited non-record, non-expert publications that were both substantively flawed and inadmissible. Defs' Reply, R. 132, PageID #8356-8358. As a threshold matter, courts cannot consider new evidence offered in reply

_____

[12] Plaintiffs also challenged Defendants' data (prepared by an MSP employee with no training in data analysis and no personal knowledge of her statements), and their lay witnesses (for offering improper opinion testimony).

[13] The court ordered evidentiary challenges to be included in summary judgment briefing. Order, R. 121, PageID #3600.

without providing an opportunity to respond. *Black v. TIC Investment Corp.*, 900 F.2d 112, 116 (7th Cir. 1990). More importantly, because Fed. R. Civ. P. 56(c)(1) requires parties to cite to the record to establish a genuine dispute of fact, the court erred in relying on Defendants' non-record sources. Op., R. 158, PageID #8694-8695. Further, the publications cited cannot withstand scrutiny under Rule 702. *See* Scholars' Amicus Brief (forthcoming) (explaining publications' deficiencies). Nor are they admissible under Fed. R. Evid. 803(18). "Mere publication cannot make [articles] automatically reliable authority." *Meschino v. North American Drager, Inc.*, 841 F.2d 429, 434 (1st Cir. 1988); *Wilson v. Upjohn Corp.*, 968 F.2d 1217, 1992 WL 158121, at *4-5 (6th Cir. 1992) (unpublished).

The court's grant of summary judgment based on irrelevant, inadmissible evidence is grounds for reversal.

**E.     The District Court Erred by Conflating the Arguable Rationality of *Any* Registry with the Rationality of *This Registry's* Automatic Perpetual Registration and Pointless Restrictions.**

The district court focused on whether having a registry is rational. But the proffered justifications for having *a* registry cannot support the draconian features challenged in *this* registry.

### 1.  Recidivism

There is "scant support for the proposition that SORA in fact accomplishes its professed goals." *Does I*, 834 F.3d at 704. "[O]ffense-based public registration

has, at best, no impact on recidivism" and "may actually *increase* the risk of recidivism" because it "exacerbate[s] risk factors for recidivism by making it hard for registrants to get and keep a job, find housing, and reintegrate into their communities." *Id.* at 704-05; *see* SOMF, R. 123-1, PageID #3739-3743. Nevertheless, the district court—while acknowledging the "strong science-based opinions" that registries don't reduce recidivism[14]—held that automatic, unreviewable prolonged or lifetime registration and onerous reporting requirements are rationally related to reducing recidivism. Op., R. 158, PageID #8692-8698, 8720-8723. This was error.

First, as noted, the court relied on inadmissible non-record evidence. Second, the court ignored or misread the expert reports that *were* in the record. *Id.*, PageID #8693. In discussing Dr. Letourneau's report—which surveys 21 studies and concludes that registry laws "fail to improve community safety in any way," Letourneau Rept., R. 123-9, PageID #4218—the court misconstrued the expert's analysis after misreading a few divergent studies. Op., R. 158, PageID #8695-8696. As Dr. Letourneau explains, those studies not only suffered from methodological flaws, but *were conducted in states that have risk-based rather*

---

[14] The court cited *Lymon*, __ N.W.3d __, for the proposition that the ineffectiveness of registries is disputed, but—unlike here—*Lymon* had no record on that question.

*than conviction-based registries:*

> If registration and notification laws have any beneficial impact in reducing recidivism (and I believe this to be exceedingly unlikely based on the evidence), that impact is limited to states where registration laws are based on empirically validated risk assessment instruments, and not to states like Michigan, where registration is assigned based on the offense of conviction, *which does not correlate with risk.*

Letourneau Rept., R. 123-9, PageID #4220, 4226, 4228. *See* Prescott Rept., R. 123-10, PageID #4278 (describing the "scholarly consensus" from dozens of studies that public registration doesn't reduce recidivism, with some evidence that it increases recidivism).

Likewise, the court acknowledged, yet still disregarded, the fact that over time—after 10 years in the community for most registrants, and 20 years for those initially highest-risk—recidivism drops to non-registrants' rates. Instead, the court focused on underreporting of sexual crime. Op., R. 158, PageID #8722-8723. But as Dr. Hanson explains, underreporting means that offense rates are higher than conviction rates for *both* registrants and non-registrants. It doesn't change the reality that registrants over time become just as safe as non-registrants. Nor does it change the fact that SORA subjects people to registration for decades after they have reached desistance. Facts, D.5-6.

Finally, the district court opined that registration is rational for people with a low risk of reoffending. Op., R. 158, PageID #8723. Even assuming that *initial*

registration were rational, SORA's lengthy/lifetime terms and pointless reporting requirements, absent *any* individual review or opportunity for removal—even where people **pose no more risk than non-registrants**—are not.

## 2. Deterrence

Since the evidence demolishes the argument that SORA serves its purported purpose—reducing recidivism, M.C.L. §28.721a—the district court pointed to general deterrence (an idea Defendants hadn't even floated). The court cited research by Dr. Prescott suggesting that online registration—because it is so harsh—could deter *non-registrants*. Op., R. 158, PageID #8696. But as Dr. Prescott explains, because SORA *increases* recidivism by *registrants* (even if it deters non-registrants), the net effect is more sex offenses. Prescott Rept., R. 123-10, PageID #4281-4283.[15] Moreover, the court's reasoning is internally inconsistent: if the prospect of registration is so ruinous that it deters non-registrants, that undercuts the court's acceptance of Defendants' argument that registration causes no harm separate from the conviction itself. Op., R. 158, PageID #8708-8709.

---

[15] Nothing in the record remotely suggests that opportunities for removal or shorter registration terms would alter any deterrent effect on non-registrants that SORA might have. Scholarship indicates the opposite. *See* Mirko Bagaric & Peter Isham, *A Rational Approach to the Role of Publicity and Condemnation in the Sentencing of Offenders*, 46 Fla. St. U. L. Rev. 239, 275 (2019) (explaining that "there is no correlation between harsh penalties and lower crimes;" while the *prospect* of punishment deters people, the *severity* of punishment has minimal impact on decision-making).

Regardless, penalties "cannot rest on a questionable theory of general deterrence to the exclusion of all else." *United States v. Flores-González,* 86 F.4th 399, 427 (1st Cir. 2023) (Thompson, C.J., for an equally divided en banc court). Indeed, "no person may be used merely as an instrument of social policy[;]" rather "human beings are to be treated not simply as means to a social end like deterrence, but also—and always—as ends in themselves." *United States v. Barker*, 771 F.2d 1362, 1368-69 (9th Cir. 1985); *id.* at 1368 ("General deterrence ... has never been the *sole* aim in imposing sentence.").

### 3. Warning the Public

The district court reasoned that even if SORA doesn't reduce recidivism, it provides information that the public can use to protect itself. Op., R. 158, PageID #8697. This is essentially a restatement of the recidivism rationale: if SORA enabled people to protect themselves from potential crimes, it would reduce recidivism. But it does not.

Moreover, the court's reasoning rests on false assumptions. First, it assumes the public needs SORA to learn about a person's criminal history. As Defendants themselves argued before the Michigan Supreme Court, "[a] Michigan resident does not need the registry to know that [a person] is a 'sex offender.' A simple Google search will suffice." MSP Brf, R. 189-3, PageID #9461. Indeed, "criminal-history information is available through numerous online sources" including no-

or-low-cost platforms like Michigan's Offender Tracking and Information System, Michigan's Internet Criminal History Access Tool, and private vendors. Stay Op., R. 192, PageID #9503; Guzman Decl., R. 190, PageID #9464-9469. People who want information about a babysitter or dating partner can use tools other than the registry. Indeed, they *must* use other tools to uncover non-sexual convictions, such as child abuse and murder.

Second, the district court assumed that warning the public about *all* registrants improves public safety. But many registrants from the outset, and certainly over time, are just as safe as non-registrants. Facts D.2-6. Permanently registering "individuals who have a low risk of re-offending renders the registry over-inclusive and dilutes its utility by creating an ever-growing list of registrants that is less effective at protecting the public." *Keel*, 860 S.E.2d at 349.

Finally, a public-warning rationale cannot justify SORA's requirements for extensive supervision and information reporting—much of which is *not* included on the online registry—subject to severe criminal penalties. Facts, C.2; M.C.L. §28.728(1)-(3).

### F. Contrary to the District Court's Assumptions, There Are Many Potential Remedies.

The district court assumed—without the benefit of briefing[16]—that the only remedy is "individualized risk assessment for all current SORA registrants." Op., R. 158, PageID #8702. It further assumed—based on inadmissible evidence (Argument I.D)—that assessments would be cost-prohibitive. *Id.*, PageID #8702-8703. Both assumptions are incorrect.

First, the court "[need not] do more than lay down [the constitutional] requirement[;]" the state's "methods of compliance [with due process] are several." *Bell v. Burson*, 402 U.S. 535, 542-43 (1971). Here, adopting a risk-based registry is one approach. Alternatively, Michigan could shorten registration terms to lengths that are rationally related to recidivism risk. Or make the registry non-public with minimal reporting. Or allow people to petition for removal, as most states do. *See Doe v. Dep't of Pub. Safety*, 444 P.3d 116, 135-36 (Alaska 2019). What Michigan *cannot* do—as this Court should make clear—is automatically impose a draconian regime of stigmatization and monitoring for decades/life with no individual review and no opportunity for removal.

---

[16] Because of the case's complexity and potentially intersecting relief across different claims, Plaintiffs requested separate remedy briefing. Pls' Mot. for Sum. Judg., R. 123, PageID #3605.

Second, the district court erred in assuming individual assessment is infeasible. Many states consider risk in determining registration requirements.[17] Here, MDOC's budget already includes funding for risk assessments, which MDOC has been conducting since around 2009. Conducting assessments is manageable; tests typically take 15-60 minutes to complete. SOMF, R. 123-1, PageID #3770-3777; Pls' Resp. to Defs' SOMF, R. 131-1, PageID #8014-8015. The district court also failed to consider the cost of maintaining a registry that includes thousands of people who are just as safe as non-registrants—an estimated $10 to $17 million annually. SOMF, R. 123-1, PageID #3839-3841. Finally, the court's concern that individual review could result in "poor predictions," Op. R. 158, PageID #8703, contradicts the consensus of both sides' experts that actuarial risk tools are far more accurate than convictions. SOMF, R. 123-1, PageID 3770.

In sum, the district court erred both in prejudging what the remedy should be, and in finding that remedy infeasible.

---

[17] To Plaintiffs' knowledge, only 14 other states mandate lifetime registration based solely on conviction, absent individualized assessment or opportunity for removal. Even among those states, some have individualized review of aspects of registration. *See* Restoration of Rts. Project, *50-State Comparison: Relief from Sex Offense Registration Obligations* (October 2022), <https://ccresourcecenter.org/state-restoration-profiles/50-state-comparison-relief-from-sex-offender-registration-obligations/>.

## II.   DENYING SIMILARLY SITUATED REGISTRANTS THE OPPORTUNITY TO PETITION FOR REMOVAL VIOLATES EQUAL PROTECTION.

"The line drawn by the legislature between offenders who are sensibly considered eligible to seek discretionary relief from the courts and those who are not is, like all legislative choices affecting individual rights, open to challenge under the Equal Protection Clause." *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 10 (2003) (Souter, J., concurring). SORA's distinction between registrants who (a) can petition for removal, and (b) meet the same eligibility criteria but are not allowed to petition, violates equal protection. Having made discretionary relief available to some registrants, Michigan cannot arbitrarily withhold it from others similarly situated.

The district court failed to follow a basic equal protection principle: differential treatment must be based on *material* differences. The purpose of the petitioning statute is to allow removal of rehabilitated people. The difference between eligible and non-eligible registrants—their tier level—is not material to that purpose because tiers don't correlate to rehabilitation. Thus, tier differences cannot justify denying petitioning to Tier II/III registrants who meet the same eligibility criteria as petition-eligible registrants.

### A.   The Barred-From-Petitioning Subclass Is Similarly Situated to Petition-Eligible Registrants.

The Equal Protection Clause "is essentially a direction that all persons simi-

larly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The state may not treat people differently "on the basis of **criteria wholly unrelated to the objective of the statute.** A classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972) (emphasis added) (citation modified). Courts "should not demand exact correlation [between differently treated parties], but should instead seek relevant similarity." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012).

The *materiality* of differences to the provision's purpose "is an integral element of the rational basis inquiry" because **"[d]isparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational."** *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 790 (6th Cir. 2005) (emphasis added). *See Doe v. Austin*, 848 F.2d 1386, 1394 (6th Cir. 1988) (differences between mentally ill and developmentally disabled people aren't material to availability of judicial determinations regarding civil commitment).

SORA allows some registrants to petition for removal. M.C.L. §28.728c(1); SOMF, R. 123-1, PageID #3841-3844; 3842, n.22 (explaining petitioning eligibility). The petitioning provision's objective is to allow people to prove that

registration is unwarranted because they are not "a continuing threat to the public." M.C.L. §28.728c(11). By providing this escape valve, SORA "recognizes that some offenders within the sweep of the [registry] are not dangerous to others in any way justifying [registration]." *Connecticut Dep't of Pub. Safety*, 538 U.S. at 8 (Souter, J., concurring).

To petition, registrants must meet strict eligibility criteria. They must have lived successfully in the community for at least ten years without being convicted of a registrable offense (or felony) and must have successfully completed supervised release/probation/parole and any mandated treatment. M.C.L. §28.728c(12). The petitioning procedure is likewise demanding. After notice to the prosecutor and victim, the court conducts a hearing. M.C.L. §28.728c(7)-(10). The court must consider the nature/severity of the offense, the person's criminal/juvenile history, their likelihood to commit further offenses, and any victim impact statement. M.C.L. §28.728c(11). Petitions can be granted only if the court finds that the person is not a continuing threat to the public. *Id.*

M.C.L. §28.728c(1)'s petitioning process is available to only the 7% of registrants in Tier I. Data Report, R. 123-6, PageID #3952. Other registrants who meet the same eligibility criteria cannot seek removal, regardless of the circumstances of their offense, infirmity/incapacitation, or demonstrated rehabilitation.

The barred-from-petitioning subclass—defined as registrants who meet the

eligibility criteria but cannot petition after ten years[18]—is similarly situated to petition-eligible registrants in all respects *material* to petitioning's purpose. The only difference is that petition-eligible registrants were assigned (based solely on their conviction) to Tier I and non-eligible registrants to Tiers II/III. M.C.L. §28.722(q)-(v). Both groups have lived successfully in the community for at least ten years and have successfully completed supervised release/probation/parole and any required treatment. For both groups, if Michigan's own courts determine the person poses no ongoing threat, the state has no legitimate interest in continued registration.

The district court erred in concluding that barred-from-petitioning registrants are not similarly situated to petition-eligible registrants. First, offense seriousness is not material to the purpose of the petitioning provision—allowing people to prove they are not "a continuing threat." M.C.L. §28.728c(11). People in both Tier I *and* Tiers II/III can be rehabilitated and can, if given the opportunity, show they pose no current danger. Thus, people in Tiers II/III are similarly

---

[18] Juveniles (who must register if adjudicated for a Tier III offense, M.C.L. §28.722(a)(iii)-(iv)) are part of this subclass because, while they can petition, they must wait 25 years, rather than ten. M.C.L. §28.728c(2), (13); Class Certification Order, R. 35, PageID #1117-1118. They are thus treated worse than petition-eligible adults. *See People in Int. of Z.B.*, 757 N.W.2d 595, 598–600 (S.D. 2008) (no rational basis for harsher treatment of juvenile registrants); *State v. C.M.*, 746 So. 2d 410, 415 (Ala. Crim. App. 1999) (same).

situated to Tier I people with respect to the material purpose of SORA's petitioning provision.

Second, SORA's tiers are backwards: people in Tier II/III pose a *lower risk* of recidivating than those in Tier I. SOMF, R. 123-1, PageID #3768-3769. The subclass representatives cannot petition solely because they are Tier II/III, despite proven rehabilitation and clinical assessments that they are low risk. *Id.*, PageID #3767-3769. Doe C can never seek removal from lifetime registration even though his offense was sleeping with an underage girl who is now his wife and mother of his children. Mary Roe can never seek removal even though in the two decades since she had sex with an underage boy, she earned a master's in counseling and became a trauma therapist. Nor can Doe E, a man with the developmental age of nine or ten, who has been conviction-free in the community for 30 years. Facts, B.

Finally, the court's assumption that Tier II/III offenses are more serious than Tier I offenses is not necessarily true.[19] Op., R. 158, PageID #8729. For example, second-degree assault with intent to commit criminal sexual conduct (M.C.L. §750.520g(2)) is Tier I, whereas third-degree criminal sexual conduct—which includes sex with a willing underage partner (M.C.L. §750.520d(1)(a))—is

_____

[19] The offenses within each tier vary hugely in severity: Tier III includes both forcible and statutory rape. M.C.L. §28.722(v).

Tier III. M.C.L. §28.722(r)(v), (v)(iv). Moreover, while judges can tailor sentences to offense seriousness, they cannot adjust registrants' SORA tier on that basis. Accordingly, a higher tier classification doesn't necessarily mean a more serious offense. For example, Doe C (Tier III) was sentenced to probation; Doe F (Tier II) to 10 days and probation; and Doe E (Tier III) to 90 days and probation. SOMF, R. 123-1, PageID # 3703, 3710, 3712. By comparison, a Tier I offense could lead to a ten-year sentence. *See*, *e.g.*, M.C.L. §28.722(r)(i); 750.145c(4)(b).

## B. The Tier-Based Distinction Is Irrational.

Denying similarly-situated registrants the chance to petition solely based on their tier is irrational. *TriHealth*, 430 F.3d at 790-91. *Baxstrom v. Herold*, 383 U.S. 107 (1966), is instructive. There, the Court found an equal protection violation where community-based people facing civil commitment were entitled to a jury trial, but those facing commitment following a criminal sentence were not. The district court rejected *Baxstrom*, misreading it as making a distinction based on custodial status.[20] Op. 158, PageID #8729-8730. But the court missed the key holding: having made a review process available to some, the state could not,

---

[20] As other circuits have clarified, *Baxstrom* holds that differences *in criminal history* "cannot justify denial of procedural safeguards" to people who are otherwise similarly situated. *Cameron v. Mullen*, 387 F.2d 193, 201 (D.C. Cir. 1967). *See also United States ex rel. Schuster v. Herold*, 410 F.2d 1071, 1081 (2d Cir. 1969) (similar).

"consistent with the Equal Protection Clause … arbitrarily withhold it" from others based on *immaterial* distinctions. 388 U.S. at 111. The Supreme Court rejected the state's argument that it had "created a reasonable classification differentiating the civilly insane from the 'criminally insane[.]'" *Id.* Instead, the Court confirmed that "a distinction made [must] have some relevance to the purpose for which the classification is made." *Id.* While the distinction between mentally ill people with and without convictions might be relevant in some situations, it "has no relevance whatever" to what *procedures* should be used to determine their mental status in the first place. *Id.* Likewise, here, while SORA's tiers can be used for some purposes, they cannot be used to deny access to a petitioning process granted to others similarly situated *in all material respects*.

In other cases, too, the Supreme Court has invalidated disparate treatment based on criminal history where it was not material to the statutory purpose. *See*, *e.g.*, *Rinaldi v. Yeager*, 384 U.S. 305, 309-310 (1966) (defendant's criminal record is "unrelated to the fiscal objective" of transcript reimbursement; access to appellate review must be "free of unreasoned distinctions"); *James v. Strange*, 407 U.S. 128 (1972) (denying exemptions where debt arose out of criminal prosecutions rather than civil matters violates equal protection). Lower courts have found similar violations. *See*, *e.g.*, *Miller v. Carter*, 547 F.2d 1314, 1316 (7th Cir. 1977) (providing discretionary review to people whose offense was recent, while

denying review to those with older offenses, is irrational), *aff'd by an equally divided court*, 434 U.S. 356 (1978).

The district court, while recognizing that tier classifications are inversely correlated to risk, upheld SORA's petitioning procedures, reasoning that a "mistaken judgment about who is not dangerous carries potentially more severe consequences when made about a more serious offender." Op., R. 158, PageID #8730. But SORA's mistaken—and automatic—judgment that every registrant is dangerous also carries severe consequences, albeit for a detested population.

Moreover, the district court assumed that removing a person from the registry would lead to crime that wouldn't occur but for a judge's "mistaken judgment." *Id.* This reasoning posits a highly attenuated chain of causation. First, Tier II/III registrants must meet strict eligibility criteria and prevail in the arduous petitioning process. Second, an elected state court judge—who is required to consider the seriousness of the offense and likely will err towards continued registration—must make a "mistake." Third, the registrant must commit a new offense comparable to the initial offense. And—critically—fourth, we must know that the person would *not* have committed the crime if still on the registry.

Further, "the legislative decision to make courts responsible for granting exemptions belies the State's argument that courts are unequipped to separate offenders who warrant [registration] from those who do not." *Connecticut Dep't*

*of Pub. Safety*, 538 U.S. at 10 (Souter, J., concurring). SORA already charges judges with deciding petitions from Tier III registrants with juvenile adjudications, undercutting any argument that judges are incapable of doing so for adults. M.C.L. §28.728c(2), (13). SORA also specifically requires judges to consider the nature/severity of the offense, as well as any victim impact statement, when deciding whether to grant a petition. M.C.L. §28.728c(11)(c)-(d), (g). Moreover, judges assess risk every day when deciding on pretrial release or custodial versus noncustodial sentences; indeed, the stakes are higher for "mistaken judgments" about whether a person should be incarcerated than whether they should be removed from a registry that cannot (custodially) prevent reoffending. Thus, there is no reason to think judges are equipped to evaluate whether Tier I petitioners are rehabilitated, but not Tier II/III petitioners. Nor is there is reason to think judges will ignore offense seriousness when considering petitions.

In sum, to satisfy equal protection, all registrants, regardless of *tier*, should be eligible to petition for removal on equal terms under M.C.L. §28.728c(1), (12).

## III.    THE DISTRICT COURT ERRED IN THREE OF ITS VAGUENESS RULINGS

Because SORA's requirements aren't just extensive but also unclear, both registrants and law enforcement are confused about what is required. SOMF, R. 123-1, PageID #3851-3864; MSP Chart, R. 123-5 (MSP officials disagree on what SORA means); Law Enforcement Survey, R. 123-23 (showing widely divergent

law enforcement interpretations of SORA). The district court erred in holding that three reporting provisions—regarding education, employment, and vehicles—aren't vague. Op., R. 171, PageID #9172-9181.

A statute is unconstitutionally vague when it doesn't provide both notice of what conduct is prohibited and clear guidance to those who enforce its prohibitions. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A law "imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct" must incorporate "a high level of definiteness." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999). Vague criminal laws are facially invalid—even "if there is some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602-03 (2015).

**Education:** Registrants must report in person within three days if "[a]s part of [their] course of studies at an institution of higher education in this state, the individual is present at any other location in this state, another state, a territory or possession of the United States...." M.C.L. §28.724a(1)(b). It is unclear what "part of [one's] course of studies" means. Must one report research at another university's library, but not attending a lecture there if unrelated to one's major? What about an off-campus lunch with a professor to discuss job prospects, or travel with a university sports team? It's also unclear what "present at any location" means. If a student registered in Detroit drives to a conference in Cleveland, must they

report each pit-stop?

**Work for De Minimis Compensation:** SORA requires reporting of employment. M.C.L. §§28.725(1)(b), 28.727(1)(f). While a 40-hour-per-week job is clearly reportable, both registrants and law enforcement are unsure about de minimis paid labor. SOMF, R. 123-1, PageID #3854; Law Enforcement Survey, R. 123-23, PageID #4753. Nevertheless, the district court found that SORA is clear and requires reporting of all compensated work, no matter how trivial. Op., R. 171, PageID #9177. But the statute is vague on this point.[21]

At their regular verification dates, registrants must report their "employer," defined to include "a contractor and any individual who has agreed to hire or contract with the individual for his or her services." M.C.L. §28.727(1)(f). As the district court acknowledged, "[t]he term employer carries some degree of formalism because there must be some agreement 'to hire' or 'to contract' for services." Op., R. 171, PageID #9177. But absent a contract, when is a person an employer? If a registrant accepts $20 in gas money for driving a friend to the airport, is the friend an "employer"? If a registrant sometimes shovels neighbors' sidewalks for pay, must all their addresses be published on the online registry? M.C.L. §28.728(2)(d).

_____

[21] Michigan could solve vagueness by requiring registrants to report employment once it reaches a certain threshold. *See, e.g.*, Mass. Gen. Laws ch. 6, §178C.

SORA also requires in-person three-day reporting if someone "changes [their] place of employment, or employment is discontinued." M.C.L. §28.725(1)(b). It is unclear how this applies to de minimis work because neither "place of employment" nor "changes" is defined. If one neighbor no longer wants his sidewalk shoveled, is that a "change" in employment that must be reported within three days?

**Vehicles.** Registrants must report vehicles "operated by the individual." M.C.L. §28.727(j). Neither registrants nor law enforcement know whether they must report every car a registrant drives even once. SOMF, R. 123-1, PageID #3855-3858; MSP Chart, R.123-5, PageID #3947; Law Enforcement Survey, R. 123-23, PageID #4751-4752. Nevertheless, the district court found that the term "operated" is clear: backing a roommate's car out the driveway to let a blocked car out is reportable. Op., R. 171, PageID #9175.

These readings are inconsistent with the doctrine that statutory interpretation requires "application of common sense … in order to avoid an absurdity." *Calderon v. Atlas S.S. Co.*, 170 U.S. 272, 281 (1898). Requiring tens of thousands of people to forever report every vehicle they drive even for a minute is ridiculous. Indeed, the above interpretations make SORA even more irrational and punitive.

## CONCLUSION

This Court should reverse on Counts III and IV, and remand with instructions to grant summary judgment to Plaintiffs. On Count III, the Court should hold that imposing perpetual registration without individual review or opportunity for removal violates due process and equal protection, and instruct the district court to hold further proceedings on remedy. On Count IV, the Court should instruct the district court to enjoin Defendants from denying the barred-from-petitioning subclass the opportunity to petition for removal on the same terms as petition-eligible registrants under M.C.L. §28.728c(1), (12).

Alternatively, if the Court believes there are factual disputes precluding summary judgment for Plaintiffs, it should remand for trial.

On Count VIII, the Court should reverse and remand with instructions to enjoin or adopt a limiting construction of the three challenged provisions.

Respectfully submitted,

s/ Miriam Aukerman (P63165)
s/ Ewurama Appiagyei-Dankah
   (P88212)
American Civil Liberties Union
   Fund of Michigan
1514 Wealthy SE, Suite 260
Grand Rapids, MI 49506
(616) 301-0930
maukerman@aclumich.org
eadankah@aclumich.org

s/ Bonsitu Kitaba-Gaviglio
(P78822)
American Civil Liberties Union
   Fund of Michigan
2966 Woodward Avenue
Detroit, MI 48201
(313) 578-6824
bkitaba@aclumich.org

s/ Allison Frankel (NY 5621834)
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
afrankel@aclu.org

s/ Paul D. Reingold (P27594)
Cooperating Counsel,
American Civil Liberties Union
  Fund of Michigan
Univ. of Michigan Law School
802 Legal Research Building
801 Monroe Street
Ann Arbor, MI 48109-1215
(734) 355-0319
pdr@umich.edu

*Attorneys for Plaintiffs-Appellants/Cross-Appellees*

Dated: October 3, 2025

**Certificate of Compliance**

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the word counting feature of counsel's word processing programs shows that this brief contains 12,991 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Sixth Circuit Rule 32(b)(1).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

_s/ Miriam J. Aukerman_
Miriam J. Aukerman (P63165)
Attorney for Plaintiffs-
Appellants/Cross-Appellees

**Certificate of Service**

This brief will be served on October 3, 2025, on all counsel of record via the

Court's ECF system.

<div style="margin-left:40%">

 *s/ Miriam J. Aukerman*
Miriam J. Aukerman (P63165)
Attorney for Plaintiffs-
Appellants/Cross-Appellees

</div>

# Designation of Relevant District Court Documents

## E.D. Mich. Case. No. 22-cv-10209

| Description of the Document | Date | District Court Record Entry Number | Page ID Numbers |
|---|---|---|---|
| Complaint | 02/02/2022 | 1 | 1-198 |
| Index of Exhibits | 02/02/2022 | 1-1 | 199 |
| Ex. 1 - Named Plaintiffs' Declarations | 02/02/2022 | 1-2 | 200-210 |
| Ex. 2 - Summary of SORA 2021's Obligations, Disabilities, and Restraints | 02/02/2022 | 1-3 | 211-227 |
| Ex. 3 - Dr. Karl Hanson Expert Report | 02/02/2022 | 1-4 | 228-397 |
| Ex. 4 - Dr. Elizabeth Letourneau Expert Report | 02/02/2022 | 1-5 | 398-452 |
| Ex. 5 - Dr. James J. Prescott Expert Report | 02/02/2022 | 1-6 | 453-502 |
| Ex. 6 - Dr. Kelly Socia Expert Report | 02/02/2022 | 1-7 | 503-553 |
| Ex. 7 - Dr. Kristen Zgoba Expert Report | 02/02/2022 | 1-8 | 554-598 |
| Ex. 8 - Dr. John Ulrich Expert Report | 02/02/2022 | 1-9 | 599-623 |
| Ex. 9 - Dr. Sarah Lageson Expert Report | 02/02/2022 | 1-10 | 624-671 |
| Ex. 10 - Barbara Levine Expert Report | 02/02/2022 | 1-11 | 672-698 |
| Ex. 11 - Anne Yantus Expert Report | 02/02/2022 | 1-12 | 699-707 |
| Ex. 12 - Richard Stapleton Expert Report | 02/02/2022 | 1-13 | 708-726 |
| Ex. 13 - *Does I* Stipulated Final Judgment | 02/02/2022 | 1-14 | 727-732 |
| Ex. 14 - SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments | 02/02/2022 | 1-15 | 733-752 |
| Ex. 15 - Michigan State Police Letter to Registrants re SORA 2021 | 02/02/2022 | 1-16 | 753-758 |
| Ex. 16 - Explanation of Duties | 02/02/2022 | 1-17 | 759-764 |
| Ex. 17 - Michigan Sex Offender Registry Mail-In Update Form | 02/02/2022 | 1-18 | 765-768 |

| | | | |
|---|---|---|---|
| Ex. 18 - Judgment of Sentence Form CC219b | 02/02/2022 | 1-19 | 769-770 |
| Ex. 19 - Pre-2021 Explanation of Duties (Redacted) | 02/02/2022 | 1-20 | 771-773 |
| Ex. 20 - Petition to Discontinue Sex Offender Registration, Form MC 406a | 02/02/2022 | 1-21 | 774-776 |
| Ex. 21 - Order on Petition to Discontinue Sex Offender Registration, Form MC 406b | 02/02/2022 | 1-22 | 777-778 |
| Plaintiffs' Motion for Class Certification | 02/02/2022 | 5 | 800-831 |
| Index of Exhibits | 02/02/2022 | 5-1 | 832 |
| Ex. 1 - Miriam Aukerman Resume | 02/02/2022 | 5-2 | 833-837 |
| Ex. 2 - Paul Reingold Resume | 02/02/2022 | 5-3 | 838-846 |
| Ex. 3 - Roshna Bala Keen Resume | 02/02/2022 | 5-4 | 847-850 |
| Plaintiffs' Motion for Preliminary Injunction | 02/02/2022 | 7 | 857-946 |
| Order Appointing Class Counsel | 05/17/2022 | 34 | 1109-1115 |
| Order Granting Class Certification | 05/18/2022 | 35 | 1116-1121 |
| Defendants' Response to Preliminary Injunction Motion | 05/26/2022 | 39 | 1141-1222 |
| Ex. A - *Does II* Opinion | 05/26/2022 | 39-1 | 1223-1232 |
| Ex. B - Michigan State Police Notice to Register | 05/26/2022 | 39-2 | 1233-1238 |
| Ex. C - Comparative Chart (Amended SORA and SORNA) | 05/26/2022 | 39-3 | 1239-1299 |
| Defendants' Motion to Dismiss | 05/31/2022 | 41 | 1308-1383 |
| Index of Exhibits | 05/31/2022 | 41-1 | 1384 |
| Ex. A - Comparison Chart | 05/31/2022 | 41-2 | 1385-1389 |
| Plaintiffs' Reply Brief in Support of Motion for Preliminary Injunction | 07/18/2022 | 43 | 1444-1465 |
| Ex. 1 - Dr. Kelly M. Socia Supplemental Report | 07/18/2022 | 43-1 | 1466-1509 |
| Plaintiffs' Response to Defendants' Motion to Dismiss | 07/18/2022 | 44 | 1510-1597 |
| Ex. 1 - Timothy Poxson Declaration | 07/18/2022 | 44-1 | 1598-1608 |
| Defendants' Reply to Plaintiffs' Response to Motion to Dismiss | 07/29/2022 | 47 | 1615-1638 |

| | | | |
|---|---|---|---|
| Ex. A - Amicus Curiae Brief of the ACLU of Michigan in *Willman v. US Attorney General* | 07/29/2022 | 47-1 | 1639-1757 |
| Plaintiffs' Notice of Supplemental Authority | 08/12/2022 | 48 | 1758-1763 |
| Ex. 1 - *Koch v. Village of Heartland* | 08/12/2022 | 48-1 | 1764-1788 |
| Ex. 2 - *People v. Nunez* | 08/12/2022 | 48-2 | 1789-1801 |
| Order (1) Denying Without Prejudice Plaintiffs' Motion for Preliminary Injunction (Dkt. 7), and (2) Denying Without Prejudice Defendants' Motion to Dismiss (Dkt. 41) | 09/15/2022 | 54 | 1847-1852 |
| Defendants' Answer to Complaint | 09/28/2022 | 58 | 1858-2011 |
| Opinion Regarding Disclosure of Non-Public Data | 01/26/2023 | 83 | 2364-2366 |
| Second Amended Stipulated Protective Order | 03/01/2023 | 88 | 2389-2397 |
| Plaintiffs' Motion for Leave to Supplement Complaint | 03/29/2023 | 100 | 2542-2559 |
| Plaintiffs' Motion for Certification of "Non-Michigan Offense" Subclass | 03/29/2023 | 101 | 2721-2738 |
| Defendants' Response to Motion to Amend Complaint | 04/05/2023 | 103 | 2741-2749 |
| Plaintiffs' Reply Brief in Support of Their Motion for Leave to Supplement the Complaint | 04/07/2023 | 104 | 2750-2756 |
| Opinion & Order Granting Plaintiffs' Motion for Leave to Supplement Complaint (Dkt. 100) | 04/19/2023 | 107 | 2765-2768 |
| First Amended Verified Class Action Complaint | 04/21/2023 | 108 | 2769-2985 |
| Index of Exhibits | 04/21/2023 | 108-1 | 2986-2987 |
| Ex. 22 - Declarations of Mary Doe and John Doe G Verifying Complaint | 04/21/2023 | 108-2 | 2988-2990 |
| Ex. 23 – Michigan State Police Flowcharts for Registration of Non-Michigan Offenses | 04/21/2023 | 108-3 | 2991-2993 |

| | | | |
|---|---|---|---|
| Ex. 24 – Michigan State Police Emails Discussing Registration for Non-Michigan Convictions | 04/21/2023 | 108-4 | 2994-3032 |
| Ex. 25 – Narcisa Morris Deposition Transcript Excerpts | 04/21/2023 | 108-5 | 3033-3040 |
| Ex. 26 - PACC Code Table | 04/21/2023 | 108-6 | 3041-3072 |
| Ex. 27 - Mary Chartier Declaration | 04/21/2023 | 108-7 | 3073-3102 |
| Ex. 28 - SOR Operating Procedure 315 | 04/21/2023 | 108-8 | 3103-3118 |
| Ex. 29 - Tier Notification Letters | 04/21/2023 | 108-9 | 3119-3123 |
| Ex. 30 - Additional Excerpts from Narcisa Morris Deposition Transcript | 04/21/2023 | 108-10 | 3124-3126 |
| Stipulated Order to Certify Non-Michigan Offense Subclass | 05/09/2023 | 109 | 3127-3129 |
| Defendants' Answer to First Amended Verified Class Action Complaint and Affirmative Defenses | 05/19/2023 | 111 | 3132-3543 |
| Order Setting Schedule for Summary Judgment Motions | 09/01/2023 | 121 | 3598-3601 |
| Plaintiffs' Motion for Summary Judgment | 10/02/2023 | 123 | 3603-3693 |
| Plaintiffs' Statement of Material Facts | 10/02/2023 | 123-1 | 3694-3899 |
| Index of Exhibits | 10/02/2023 | 123-2 | 3900-3908 |
| Ex. 1 - Summary of SORA 2021's Obligations, Disabilities, and Restraints | 10/02/2023 | 123-3 | 3909-3925 |
| Ex. 2 - SORA 2021 with Highlighted Changes Showing 2011 and 2021 Amendments | 10/02/2023 | 123-4 | 3926-3945 |
| Ex. 3 - Chart of Michigan State Police Deposition Responses from Steve Beatty, Narcisa Morris, and Brenda Hoffman Showing SORA's Vagueness | 10/02/2023 | 123-5 | 3946-3949 |
| Ex. 4 - Expert Report on Class Data (German Alcala, James J. Prescott, & Karl Hanson) | 10/02/2023 | 123-6 | 3950-4003 |
| Ex. 5 - Dr. Karl Hanson Expert Report | 10/02/2023 | 123-7 | 4004-4174 |
| Ex. 6 - Dr. Karl Hanson Rebuttal Report | 10/02/2023 | 123-8 | 4175-4214 |

| | | | |
|---|---|---|---|
| Ex. 7 - Dr. Elizabeth Letourneau Expert Report | 10/02/2023 | 123-9 | 4215-4272 |
| Ex. 8 - Dr. James J. Prescott Expert Report | 10/02/2023 | 123-10 | 4273-4323 |
| Ex. 9A - Dr. Kelly Socia Expert Report | 10/02/2023 | 123-11 | 4324-4378 |
| Ex. 9B - Dr. Kelly Socia Supplemental Declaration Rebutting Research Cited by Defendants | 10/02/2023 | 123-12 | 4379-4421 |
| Ex. 10 - Dr. Kelly Socia Rebuttal Report | 10/02/2023 | 123-13 | 4422-4481 |
| Ex. 11 - Dr. Sarah Lageson Expert Report | 10/02/2023 | 123-14 | 4482-4558 |
| Ex. 12 - Dr. Kristen Zgoba Expert Report | 10/02/2023 | 123-15 | 4559-4573 |
| Ex. 13 - Dr. John Ulrich Expert Report | 10/02/2023 | 123-16 | 4574-4598 |
| Ex. 14 - Sujatha Baliga Expert Report | 10/02/2023 | 123-17 | 4599-4625 |
| Ex. 15 - Amended Expert Report of Barbara R. Levine | 10/02/2023 | 123-18 | 4626-4675 |
| Ex. 16 - Anne Yantus Expert Report | 10/02/2023 | 123-19 | 4676-4684 |
| Ex. 17 - Richard Stapleton Expert Report | 10/02/2023 | 123-20 | 4685-4703 |
| Ex. 18 - Mary Chartier Expert Report | 10/02/2023 | 123-21 | 4704-4732 |
| Ex. 19 - James Schaafsma Expert Report | 10/02/2023 | 123-22 | 4733-4737 |
| Ex. 20 - Giancarlo Guzman Declaration/Law Enforcement Survey | 10/02/2023 | 123-23 | 4738-4759 |
| Ex. 21 - Shelli Weisberg Declaration | 10/02/2023 | 123-24 | 4760-4787 |
| Ex. 22 - Hon. William C. Buhl Declaration | 10/02/2023 | 123-25 | 4788-4796 |
| Ex. 23 - Senator Jeffrey Irwin Declaration | 10/02/2023 | 123-26 | 4797-4801 |
| Ex. 24 - Mariam Elbakr Declaration | 10/02/2023 | 123-27 | 4802-4809 |
| Ex. 25 - I.G. Declaration | 10/02/2023 | 123-28 | 4810-4812 |
| Ex. 26 - B.W. Declaration | 10/02/2023 | 124 | 4813-4818 |
| Ex. 27 - A.C. Declaration | 10/02/2023 | 124-1 | 4819-4825 |
| Ex. 28 - W.C. Declaration | 10/02/2023 | 124-2 | 4826-4831 |
| Ex. 29 - P.F. Declaration | 10/02/2023 | 124-3 | 4832-4835 |
| Ex. 30 - R.H. Declaration | 10/02/2023 | 124-4 | 4836-4841 |
| Ex. 31 - R.H.2 Declaration | 10/02/2023 | 124-5 | 4842-4849 |
| Ex. 32 - A.J. Declaration | 10/02/2023 | 124-6 | 4850-4854 |
| Ex. 33 - D.K. Declaration | 10/02/2023 | 124-7 | 4855-4859 |

| | | | |
|---|---|---|---|
| Ex. 34 - R.L. Declaration | 10/02/2023 | 124-8 | 4860-4863 |
| Ex. 35 - H.M. Declaration | 10/02/2023 | 124-9 | 4864-4873 |
| Ex. 36 - D.M. Declaration | 10/02/2023 | 124-10 | 4874-4878 |
| Ex. 37 - J.M. Declaration | 10/02/2023 | 124-11 | 4879-4882 |
| Ex. 38 - K.M. Declaration | 10/02/2023 | 124-12 | 4883-4888 |
| Ex. 39 - K.N. Declaration | 10/02/2023 | 124-13 | 4889-4893 |
| Ex. 40 - G.O. Declaration | 10/02/2023 | 124-14 | 4894-4897 |
| Ex. 41 - T.P. Declaration | 10/02/2023 | 124-15 | 4898-4901 |
| Ex. 42 - B.P. Declaration | 10/02/2023 | 124-16 | 4902-4906 |
| Ex. 43 - M.R. Declaration | 10/02/2023 | 124-17 | 4907-4915 |
| Ex. 44 - T.R. Declaration | 10/02/2023 | 124-18 | 4916-4923 |
| Ex. 45 - J.S. Declaration | 10/02/2023 | 124-19 | 4924-4928 |
| Ex. 46 - A.S. Declaration | 10/02/2023 | 124-20 | 4929-4932 |
| Ex. 47 - K.S. Declaration | 10/02/2023 | 124-21 | 4933-4936 |
| Ex. 48 - E.S. Declaration | 10/02/2023 | 124-22 | 4937-4944 |
| Ex. 49 - G.W. Declaration | 10/02/2023 | 124-23 | 4945-4949 |
| Ex. 50 - K.W. Declaration | 10/02/2023 | 124-24 | 4950-4955 |
| Ex. 51 – Declaration of John Doe E's Nephew | 10/02/2023 | 125 | 4956-4958 |
| Ex. 52 - Transcript of MSOR Training with Hernandez Declaration | 10/02/2023 | 125-1 | 4959-5003 |
| Ex. 53 - Named Plaintiffs' Declarations Verifying Complaint | 10/02/2023 | 125-2 | 5004-5016 |
| Ex. 54 - Dr. Karl Hanson Deposition Transcript | 10/02/2023 | 125-3 | 5017-5078 |
| Ex. 55 – Dr. Elizabeth Letourneau Deposition Transcript | 10/02/2023 | 125-4 | 5079-5102 |
| Ex. 56 - John Doe B Deposition Transcript | 10/02/2023 | 125-5 | 5103-5122 |
| Ex. 57 – John Doe C Deposition Transcript | 10/02/2023 | 125-6 | 5123-5139 |
| Ex. 58 - John Doe D Deposition Transcript | 10/02/2023 | 125-7 | 5140-5157 |
| Ex. 59 - John Doe F Deposition Transcript | 10/02/2023 | 125-8 | 5158-5181 |
| Ex. 60 - John Doe G Deposition Transcript | 10/02/2023 | 125-9 | 5182-5203 |

| | | | |
|---|---|---|---|
| Ex. 61 - Mary Doe Deposition Transcript | 10/02/2023 | 125-10 | 5204-5227 |
| Ex. 62 - Mary Roe Deposition Transcript | 10/02/2023 | 125-11 | 5228-5249 |
| Ex. 63 - A.C.  Deposition Transcript | 10/02/2023 | 125-12 | 5250-5273 |
| Ex. 64 - A.J. Deposition Transcript | 10/02/2023 | 125-13 | 5274-5297 |
| Ex. 65 - K.S. Deposition Transcript | 10/02/2023 | 125-14 | 5298-5335 |
| Ex. 66 - M.R. Deposition Transcript | 10/02/2023 | 125-15 | 5336-5356 |
| Ex. 67 - Dr. Rachel Lovell Deposition Transcript | 10/02/2023 | 125-16 | 5357-5419 |
| Ex. 68 - Dr. Rachael Goodman-Williams Deposition Transcript | 10/02/2023 | 125-17 | 5420-5461 |
| Ex. 69 - Dr. Anna Salter Deposition Transcript | 10/02/2023 | 125-18 | 5462-5541 |
| Ex. 69A- 69H - Salter Deposition Exhibits | 10/02/2023 | 125-19 to 125-26 | 5542-5660 |
| Ex. 70 - Dr. Darrel Turner Deposition Transcript | 10/02/2023 | 126 | 5661-5706 |
| Ex. 71 - Steven Beatty Deposition Transcript and Deposition Exs. 30-32 | 10/02/2023 | 126-1 | 5707-5794 |
| Ex. 72 - Timothy Fitzgerald Deposition Transcript | 10/02/2023 | 126-2 | 5795-5814 |
| Ex. 73 - Brenda Hoffman Deposition Transcript and Deposition Exs. F and G | 10/02/2023 | 126-3 | 5815-5858 |
| Ex. 74 - Sharon Jegla Deposition Transcript and Deposition Exs. S and T | 10/02/2023 | 126-4 | 5859-5912 |
| Ex. 75 - James Kissinger Deposition Transcript | 10/02/2023 | 126-5 | 5913-5936 |
| Ex. 76 - Jami Selden-Manor Deposition Transcript | 10/02/2023 | 126-6 | 5937-5983 |
| Ex. 77 - Nicole McGhee Deposition Transcript | 10/02/2023 | 126-7 | 5984-5999 |
| Ex. 78 - Narcisa Morris Deposition Transcript and Ex. 7 | 10/02/2023 | 126-8 | 6000-6066 |
| Ex. 79 - Corey Spickler Deposition Transcript | 10/02/2023 | 126-9 | 6067-6080 |
| Ex. 80 - Defendants' Amended Responses to Plaintiffs' 1st Interrogatories | 10/02/2023 | 126-10 | 6081-6094 |

| | | | |
|---|---|---|---|
| Ex. 81 - Defendants' Amended Response to Plaintiffs' 1st Request for Production | 10/02/2023 | 126-11 | 6095-6122 |
| Ex. 82 - Plaintiffs' 1st Request to Admit and Defendants' Responses | 10/02/2023 | 126-12 | 6123-6157 |
| Ex. 83 - Defendants' Response to Plaintiffs' 2nd Request to Admit | 10/02/2023 | 126-13 | 6158-6161 |
| Ex. 84 - Plaintiffs' Response to Defendants' 2nd Interrogatories | 10/02/2023 | 126-14 | 6162-6175 |
| Ex. 85 - Plaintiffs' Response to Defendants' 3rd Interrogatories | 10/02/2023 | 126-15 | 6176-6193 |
| Ex. 86 – Michigan State Police Letter to Registrants re SORA | 10/02/2023 | 126-16 | 6194-6202 |
| Ex. 87 – Michigan SOR Verification Update Form | 10/02/2023 | 126-17 | 6203-6208 |
| Ex. 88 - Michigan SOR Mail-In Update Form | 10/02/2023 | 126-18 | 6209-6212 |
| Ex. 89 – Pre 2021 Explanation of Duties | 10/02/2023 | 126-19 | 6213-6215 |
| Ex. 90 – Michigan State Police SOR Registration Enforcement Manual | 10/02/2023 | 126-20 | 6216-6223 |
| Ex. 91 - Contract for MSOR Database | 10/02/2023 | 126-21 | 6224-6325 |
| Ex. 92 - MSOR System Interfaces | 10/02/2023 | 126-22 | 6326-6328 |
| Ex. 93 – Michigan State Police Organizational Charts | 10/02/2023 | 126-23 | 6329-6332 |
| Ex. 94 – Michigan State Police Emails Discussing Registration for Non-Michigan Convictions | 10/02/2023 | 126-24 | 6333-6375 |
| Ex. 95 - MSOR User Guide | 10/02/2023 | 126-25 | 6376-6455 |
| Ex. 96 - MSOR Field Charts | 10/02/2023 | 127 | 6456-6469 |
| Ex. 97 – Prosecuting Attorneys Coordinating Council Code Chart | 10/02/2023 | 127-1 | 6470-6502 |
| Ex. 98 - SOR Operational Procedure 302 Public SOR Website | 10/02/2023 | 127-2 | 6503-6504 |
| Ex. 99 - SOR Operational Procedure 303 Certified SOR Records | 10/02/2023 | 127-3 | 6505-6508 |
| Ex. 100 - SOR Operational Procedure 304 Tracking Absconders | 10/02/2023 | 127-4 | 6509-6512 |

| | | | |
|---|---|---|---|
| Ex. 101 - SOR Operational Procedure 307 Registration | 10/02/2023 | 127-5 | 6513-6516 |
| Ex. 102 - SOR Operational Procedure 308, Offender Duration Has Ended | 10/02/2023 | 127-6 | 6517-6520 |
| Ex. 103 - SOR Operational Procedure 310, Sweep Packets, and Sex Offender Sweep Findings Form | 10/02/2023 | 127-7 | 6521-6524 |
| Ex. 104 - SOR Operational Procedure 313, Court Orders | 10/02/2023 | 127-8 | 6525-6528 |
| Ex. 105 - SOR Operational Procedure 315: Pending Review | 10/02/2023 | 127-9 | 6529-6544 |
| Ex. 106 - MSP Flowcharts for Registration of Non-Michigan Offenses | 10/02/2023 | 127-10 | 6545-6547 |
| Ex. 107 - SOR Operational Procedure 319, LEIN Inquiries | 10/02/2023 | 127-11 | 6548-6551 |
| Ex. 108 - SOR Operational Procedure 322, Pending Arrival | 10/02/2023 | 127-12 | 6552-6555 |
| Ex. 109 - SOR Operational Procedure 328, International Travel | 10/02/2023 | 127-13 | 6556-6558 |
| Ex. 110 - SOR Policy 304, National Sex Offender Registry Participation | 10/02/2023 | 127-14 | 6559-6560 |
| Ex. 111 - SORNA Implementation Letter | 10/02/2023 | 127-15 | 6561-6563 |
| Ex. 112 - SOR Backgrounder | 10/02/2023 | 127-16 | 6564-6569 |
| Ex. 113 - Tier Audit Letters | 10/02/2023 | 127-17 | 6570-6574 |
| Ex. 114 - Morris Grant Email and Grant Applications (selected pages) | 10/02/2023 | 127-18 | 6575-6580 |
| Ex. 115 - Chart of Registration Offenses, Violations and Penalties | 10/02/2023 | 127-19 | 6581-6583 |
| Ex. 116 - Grant Report | 10/02/2023 | 127-20 | 6584-6590 |
| Ex. 117 - Notification of International Travel of Sex Offender Form | 10/02/2023 | 127-21 | 6591-6593 |
| Ex. 118 – Michigan State Police Offense Cheat Sheet | 10/02/2023 | 127-22 | 6594-6596 |
| Ex. 119 - Michigan Crime Codes for Registration | 10/02/2023 | 127-23 | 6597-6601 |
| Ex. 120 - Screenshots of Online Registry | 10/02/2023 | 127-24 | 6602-6612 |

| | | | |
|---|---|---|---|
| Ex. 121 - SORA FAQ from Online Website | 10/02/2023 | 128 | 6613-6628 |
| Ex. 122 - Michigan Attorney General Comments on H.B.5679 | 10/02/2023 | 128-1 | 6629-6633 |
| Ex. 123 – Michigan State Police Comments on H.B. 5679 | 10/02/2023 | 128-2 | 6634-6636 |
| Ex. 124 - House Judiciary Committee Summary of H.B. 5679 as Passed by House, 100th Leg., Reg. Sess. (Mich. 2020) | 10/02/2023 | 128-3 | 6637-6646 |
| Ex. 125 - Judgment of Sentence Form CC 219b | 10/02/2023 | 128-4 | 6647-6649 |
| Ex. 126 - Petition to Discontinue Sex Offender Registration, Form MC 406a | 10/02/2023 | 128-5 | 6650-6652 |
| Ex. 127 - Order on Petition to Discontinue Sex Offender Registration, Form MC 406b | 10/02/2023 | 128-6 | 6653-6654 |
| Ex. 128 - *Lymon* Prosecutor Letter | 10/02/2023 | 128-7 | 6655-6656 |
| Ex. 129 - *Lymon* Law Enforcement Letter | 10/02/2023 | 128-8 | 6657-6658 |
| Ex. 130 - *Lymon* Court Letter | 10/02/2023 | 128-9 | 6659-6660 |
| Ex. 131 - *Lymon* Registrant Letter | 10/02/2023 | 128-10 | 6661-6662 |
| Ex. 132 - Procedure for *Lymon* Removals | 10/02/2023 | 128-11 | 6663-6667 |
| Ex. 133 - *Lymon* Calls Cheat Sheet | 10/02/2023 | 128-12 | 6668-6669 |
| Ex. 134 – Michigan Department of Corrections Operating Procedure 05.01.100 | 10/02/2023 | 128-13 | 6670-6689 |
| Ex. 135 - Static-99R Coding Sheet | 10/02/2023 | 128-14 | 6690-6692 |
| Ex. 136 - *Does I* Joint Statement of Facts, No. 2:12-cv-11194, R. 90 | 10/02/2023 | 128-15 | 6693-6962 |
| Ex. 137 - *Does I* Stipulated Final Judgment, No. 2:12-cv-11194, R. 153 | 10/02/2023 | 128-16 | 6963-6968 |
| Ex. 138 – Timothy Poxson Declaration, *Does II*, No. 16-cv-13137, R. 115-1 | 10/02/2023 | 128-17 | 6969-6977 |
| Ex. 139 - Sample Probation Order | 10/02/2023 | 128-18 | 6978-6981 |
| Ex. 140 - Dr. Rachel Lovell Declaration | 10/02/2023 | 128-19 | 6982-7011 |

| | | | |
|---|---|---|---|
| Ex. 141 - Dr. Rachael Goodman-Williams Declaration | 10/02/2023 | 128-20 | 7012-7050 |
| Ex. 142 - Dr. Anna Salter Declaration | 10/02/2023 | 128-21 | 7051-7078 |
| Ex. 143 - Dr. Darryl Turner Declaration | 10/02/2023 | 128-22 | 7079-7103 |
| Ex. 144 - Shawn Starkey Declaration | 10/02/2023 | 128-23 | 7104-7105 |
| Ex. 145 - Jami Selden-Manor Declaration | 10/02/2023 | 128-24 | 7106-7111 |
| Defendants' Motion for Summary Judgment | 11/21/2023 | 129 | 7112-7204 |
| Defendants' Statement of Facts | 11/21/2023 | 129-1 | 7205-7229 |
| Defendants' Response to Plaintiffs' Statement of Material Facts | 11/21/2023 | 129-2 | 7230-7568 |
| Index of Exhibits | 11/21/2023 | 129-3 | 7569 |
| Ex. A - Tricia Dare Affidavit | 11/21/2023 | 129-4 | 7570-7574 |
| Ex. B – Danielle Bennetts Declaration | 11/21/2023 | 129-5 | 7575-7582 |
| Ex. C – Sharon Jegla Second Affidavit | 11/21/2023 | 129-6 | 7583-7586 |
| Ex. D - MSP Notice to Law Enforcement re *Does I* | 11/21/2023 | 129-7 | 7587-7589 |
| Ex. E - SORA Sweeps | 11/21/2023 | 129-8 | 7590-7594 |
| Ex. F – Kyle Kaminski Affidavit | 11/21/2023 | 129-9 | 7595-7600 |
| Ex. G - Summary of Various Offenses | 11/21/2023 | 129-10 | 7601-7648 |
| Ex. H - M.R. Affidavit and Plea | 11/21/2023 | 129-11 | 7649-7672 |
| Ex. I - NWD Complaint and Affidavit | 11/21/2023 | 129-12 | 7673-7680 |
| Ex. J - NED Sentencing Memo | 11/21/2023 | 129-13 | 7681-7690 |
| Ex. K - Sharon Jegla Affidavit | 11/21/2023 | 129-14 | 7691-7693 |
| Ex. L – Sarah Prout Declaration | 11/21/2023 | 129-15 | 7694-7711 |
| Ex. M - NWD Probation Conditions | 11/21/2023 | 129-16 | 7712-7718 |
| Ex. N - Probation and Parole Conditions | 11/21/2023 | 129-17 | 7719-7751 |
| Ex. O - Jami Selden-Manor Declaration | 11/21/2023 | 129-18 | 7752-7755 |
| Ex. P - Correspondence from Prosecutors | 11/21/2023 | 130 | 7756-7916 |
| Ex. Q - Prosecuting Attorneys Coordinating Council Warrant Manual Changes | 11/21/2023 | 130-1 | 7917-7922 |
| Ex. R - Legislative Analysis of HB 5679 | 11/21/2023 | 130-2 | 7923-7932 |
| Plaintiffs' Reply Brief in Support of Their Motion for Summary Judgment and Response Brief in Opposition to | 12/28/2023 | 131 | 7933-7976 |

| | | | |
|---|---|---|---|
| Defendants' Motion for Summary Judgment | | | |
| Plaintiffs' Response to Defendants' Statement of Facts | 12/28/2023 | 131-1 | 7977-8036 |
| Updated Index of Exhibits | 12/28/2023 | 131-2 | 8037-8045 |
| Ex. 14 - Sujatha Baliga Expert Report (corrected) | 12/28/2023 | 131-3 | 8046-8072 |
| Ex. 146 - American Law Institute, Model Penal Code, Sexual Assault and Related Offenses, Section 213.11 | 12/28/2023 | 131-4 | 8073-8243 |
| Ex. 147 - Dylan Scott, *States Find SORNA Non-Compliance Cheaper* | 12/28/2023 | 131-5 | 8244-8247 |
| Ex. 148 - The National Conference of State Legislatures, *Cost-Benefit Analysis of SORNA Implementation* | 12/28/2023 | 131-6 | 8248-8250 |
| Ex. 149 - Harris et al., *Widening the Net: The Effects of Transitioning to Adam Walsh Act's Federally Mandated Sex Offender Classification Scheme* | 12/28/2023 | 131-7 | 8251-8269 |
| Ex. 150 - SORNA Substantial Implementation Review State of Michigan | 12/28/2023 | 131-8 | 8270-8276 |
| Ex. 151 - Letters from SMART Office re Substantial Implementation of SORNA | 12/28/2023 | 131-9 | 8277-8281 |
| Ex. 152 - Comparison Chart of SORA, Probation, and Parole | 12/28/2023 | 131-10 | 8282-8287 |
| Ex. 153 - Michigan State Police Enforcement Memo | 12/28/2023 | 131-11 | 8288-8289 |
| Ex. 154 - Defendants' Lay Witness Declarations with Inadmissible Statements Highlighted | 12/28/2023 | 131-12 | 8290-8319 |
| Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment | 01/16/2024 | 132 | 8350-8371 |
| Parties' Joint Summary of Arguments from Cross-Motions for Summary Judgment | 01/23/2024 | 133 | 8372-8394 |

| | | | |
|---|---|---|---|
| Motion For Leave to File Amicus Curiae Brief by Law Professors William Araiza, Eric Janus, and Sandra Mayson in Support of Plaintiffs' Equal Protection and Substantive Due Process Claims, and Amicus Curiae Brief | 02/01/2024 | 136, 136-1 | 8401-8437 |
| Motion For Leave to File Brief of Law Professors as Amici Curiae in Support of Plaintiffs' Ex Post Facto Claim, and Amicus Curiae Brief | 02/02/2024 | 138, 138-1 | 8440-8473 |
| Motion for Leave to File Brief of Amici Curiae by 12 Scholars, and Amicus Curiae Brief | 02/06/2024 | 139, 139-1 | 8474-8525 |
| Plaintiffs' Notice of Supplemental Authority | 03/24/2024 | 144 | 8563-8566 |
| Ex. A - Supreme Court opinion in *FBI v. Fikre*, 601 U.S. ___ (2024). | 03/24/2024 | 144-1 | 8567-8580 |
| Defendants' Supplemental Brief re *Doe v. Lee* | 05/24/2024 | 145 | 8581-8591 |
| Plaintiffs' Supplemental Brief re *Doe v. Lee* | 05/28/2024 | 146 | 8592-8601 |
| Index of Exhibits | 05/28/2024 | 146-1 | 8602 |
| Ex. A - *Does I* Stipulated Final Judgment on Remand | 05/28/2024 | 146-2 | 8603-8608 |
| Ex. B - *Does II* Amended Final Judgment | 05/28/2024 | 146-3 | 8609-8619 |
| Ex. C - Email from Defense Counsel to Michigan Prosecuting Attorneys Coordinating Council in *Does II* Recognizing that Prosecutors are Bound by an Injunction Against the Governor | 05/28/2024 | 146-4 | 8620-8623 |
| Defendants' Brief in Response to the Amicus Briefs Filed by the Scholars of Criminal Justice, Professors Araiza, Janus, And Mayson, And Professors Berman, Edmonds, Simon, Starr, Yung, And Logan | 07/25/2024 | 152 | 8632-8636 |

| | | | |
|---|---|---|---|
| Defendants' Supplemental Brief re: *People v. Lymon* | 08/06/2024 | 154 | 8638-8644 |
| Plaintiffs' Supplemental Brief re: *People v. Lymon* | 08/06/2024 | 155 | 8645-8652 |
| Ex. A - Email Correspondence between Miriam Aukerman and Scott Damich | 08/06/2024 | 155-1 | 8653-8656 |
| Opinion And Order (1) Granting in Part Plaintiffs' Motion for Summary Judgment (Dkt. 123) And (2) Granting in Part Defendants' Motion For Summary Judgment (Dkt. 129) | 09/27/2024 | 158 | 8662-8776 |
| Joint Statement | 11/01/2024 | 159 | 8777-8792 |
| Ex. A - Draft Proposed Judgment | 11/01/2024 | 159-1 | 8793-8817 |
| Defendants' Supplemental Briefing Related to Vagueness Challenges | 11/27/2024 | 162 | 8820-8844 |
| Ex. A - Defendants' Proposed Judgment on Count VIII (Vagueness) | 11/27/2024 | 162-1 | 8845-8858 |
| Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Summary Judgment on Count VIII (Vagueness) | 11/27/2024 | 163 | 8859-8889 |
| Ex. A - Plaintiffs' Proposed Judgment | 11/27/2024 | 163-1 | 8890-8903 |
| Supplemental Joint Statement on Remedy | 12/11/2024 | 164 | 8904-8936 |
| Ex. A - Plaintiffs' Draft Proposed Judgment | 12/11/2024 | 164-1 | 8937-8983 |
| Plaintiffs' Motion for Entry of Judgment | 01/10/2025 | 167 | 8986-9029 |
| Ex. A - Plaintiffs' Draft Proposed Judgment | 01/20/2025 | 167-1 | 9030-9086 |
| Defendant's Response to Motion for Entry of Judgment | 01/23/2025 | 168 | 9087-9127 |
| Ex. A - Defendants' Draft Proposed Judgment | 01/23/2025 | 168-1 | 9128-9155 |
| Opinion & Order Granting in Part and Denying in Part Plaintiffs' Motion for Judgment (Dkt. 167) | 03/26/2025 | 171 | 9159-9182 |
| Judgment | 03/26/2025 | 172 | 9183-9197 |

| | | | |
|---|---|---|---|
| Defendants' Motion to Stay Judgment on Counts I, II, and XI Pending Appeal – Expedited Consideration Requested | 04/11/2025 | 173 | 9198-9228 |
| Index of Exhibits | 04/11/2025 | 173-1 | 9229 |
| Ex. A - Comparative Chart Michigan 2021 SORA and Federal SORNA | 04/11/2025 | 173-2 | 9230-9291 |
| Ex. B - Amicus Curiae Brief of the ACLU of Michigan in *Willman v. Attorney General of United States*. | 04/11/2025 | 173-3 | 9292-9328 |
| Joint Motion to Correct Technical Errors in Final Judgment [ECF 172] and Enter Amended Final Judgment | 04/16/2025 | 174 | 9329-9338 |
| Plaintiffs' Response in Opposition To Defendants' Motion for Stay | 04/21/2025 | 175 | 9339-9368 |
| Ex. A - Declaration of German Marquez Alcala | 04/21/2025 | 175-1 | 9369-9375 |
| Order Granting Joint Motion to Correct Technical Errors in Final Judgment (Dkt. 174) | 04/22/2025 | 176 | 9376 |
| Amended Final Judgment | 04/22/2025 | 177 | 9377-9392 |
| Defendants' Reply Brief to Plaintiffs' Response to Motion to Stay Judgment on Counts I, II, and XI Pending Appeal | 04/23/2025 | 179 | 9394-9403 |
| Defendants' Notice of Appeal | 04/23/2025 | 180 | 9404 |
| Plaintiffs' Notice of Appeal | 04/23/2025 | 181 | 9405-9406 |
| Defendants' Amended Notice of Appeal | 04/24/2025 | 184 | 9409 |
| Defendants' Supplemental Brief in Support of Its Motion to Stay Judgment on Counts I, II, and XI Pending Appeal | 05/05/2025 | 188 | 9414-9423 |
| Plaintiffs' Supplemental Brief in Opposition to Defendants' Motion for Stay | 05/05/2025 | 189 | 9424-9446 |
| Index of Exhibits | 05/05/2025 | 189-1 | 9447 |
| Ex. 2 - Brief of Amicus Curiae Michigan State Police in *People v. Kardasz* | 05/05/2025 | 189-3 | 9456-9461 |

| | | | |
|---|---|---|---|
| Ex. 1 - Second Declaration of Giancarlo Guzman (corrected) | 05/06/2025 | 190 | 9462-9489 |
| Opinion & Order Denying Defendants' Motion to Stay Judgment (Dkt. 173) | 05/19/2025 | 192 | 9491-9504 |
| Parties' Joint and Separate Statements Regarding Notice Process and Notices to Registrants, Law Enforcement, and Prosecutors | 05/20/2025 | 193 | 9505-9517 |
| Index of Exhibits | 05/20/2025 | 193-1 | 9518 |
| Ex. A - Proposed Notice Process Order | 05/20/2025 | 193-2 | 9519-9528 |
| Ex. A1 - Proposed Registrant Notice | 05/20/2025 | 193-3 | 9529-9544 |
| Ex. A2 - Proposed Prosecutor Explanation | 05/20/2025 | 193-4 | 9545-9547 |
| Ex. A3 - Proposed Law Enforcement Explanation | 05/20/2025 | 193-5 | 9548-9550 |
| Sixth Circuit Order Staying Judgment | 06/24/2025 | 197 | 9554-9560 |

# Addendum:

Michigan Sex Offenders Registration Act, M.C.L. § 28.721 et seq.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.721 Short title.**

Sec. 1. This act shall be known and may be cited as the "sex offenders registration act".

**History:** 1994, Act 295, Eff. Oct. 1, 1995.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.721a Legislative declarations; determination; intent.**

Sec. 1a. The legislature declares that the sex offenders registration act was enacted pursuant to the legislature's exercise of the police power of the state with the intent to better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders. The legislature has determined that a person who has been convicted of committing an offense covered by this act poses a potential serious menace and danger to the health, safety, morals, and welfare of the people, and particularly the children, of this state. The registration requirements of this act are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.

**History:** Add. 2002, Act 542, Eff. Oct. 1, 2002.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.722 Definitions.**

Sec. 2. As used in this act:

(a) "Convicted" means 1 of the following:

(*i*) Having a judgment of conviction or a probation order entered in any court having jurisdiction over criminal offenses, including, but not limited to, a tribal court or a military court. Convicted does not include a conviction that was subsequently set aside under 1965 PA 213, MCL 780.621 to 780.624, or otherwise expunged.

(*ii*) Except as otherwise provided in this subparagraph, being assigned to youthful trainee status under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, before October 1, 2004. An individual who is assigned to and successfully completes a term of supervision under sections 11 to 15 of chapter II of the code of criminal procedure, 1927 PA 175, MCL 762.11 to 762.15, is not convicted for purposes of this act. This subparagraph does not apply if a petition was granted under section 8c at any time allowing the individual to discontinue registration under this act, including a reduced registration period that extends to or past July 1, 2011, regardless of the tier designation that would apply on and after that date.

(*iii*) Having an order of disposition entered under section 18 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.18, that is open to the general public under section 28 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.28, if both of the following apply:

(A) The individual was 14 years of age or older at the time of the offense.

(B) The order of disposition is for the commission of an offense that would classify the individual as a tier III offender.

(*iv*) Having an order of disposition or other adjudication in a juvenile matter in another state or country if both of the following apply:

(A) The individual is 14 years of age or older at the time of the offense.

(B) The order of disposition or other adjudication is for the commission of an offense that would classify the individual as a tier III offender.

(b) "Custodial authority" means 1 or more of the following apply:

(*i*) The actor was a member of the same household as the victim.

(*ii*) The actor was related to the victim by blood or affinity to the fourth degree.

(*iii*) The actor was in a position of authority over the victim and used this authority to coerce the victim to submit.

(*iv*) The actor was a teacher, substitute teacher, or administrator of the public school, nonpublic school, school district, or intermediate school district in which that other person was enrolled.

(*v*) The actor was an employee or a contractual service provider of the public school, nonpublic school, school district, or intermediate school district in which that other person was enrolled, or was a volunteer who was not a student in any public school or nonpublic school, or was an employee of this state or of a local unit of government of this state or of the United States assigned to provide any service to that public school, nonpublic school, school district, or intermediate school district, and the actor used the actor's employee, contractual, or volunteer status to gain access to, or to establish a relationship with, that other person.

(*vi*) That other person was under the jurisdiction of the department of corrections and the actor was an employee or a contractual employee of, or a volunteer with, the department of corrections who knew that the other person was under the jurisdiction of the department of corrections and used the actor's position of authority over the victim to gain access to or to coerce or otherwise encourage the victim to engage in sexual contact.

(*vii*) That other person was under the jurisdiction of the department of corrections and the actor was an employee or a contractual employee of, or a volunteer with, a private vendor that operated a youth correctional facility under section 20g of the corrections code of 1953, 1953 PA 232, MCL 791.220g, who knew that the other person was under the jurisdiction of the department of corrections.

(*viii*) That other person was a prisoner or probationer under the jurisdiction of a county for purposes of imprisonment or a work program or other probationary program and the actor was an employee or a contractual employee of, or a volunteer with, the county or the department of corrections who knew that the other person was under the county's jurisdiction and used the actor's position of authority over the victim to gain access to or to coerce or otherwise encourage the victim to engage in sexual contact.

(*ix*) The actor knew or had reason to know that a court had detained the victim in a facility while the victim was awaiting a trial or hearing, or committed the victim to a facility as a result of the victim having been

©

*Courtesy of www.legislature.mi.gov*

found responsible for committing an act that would be a crime if committed by an adult, and the actor was an employee or contractual employee of, or a volunteer with, the facility in which the victim was detained or to which the victim was committed.

(c) "Department" means the department of state police.

(d) "Employee" means an individual who is self-employed or works for any other entity as a full-time or part-time employee, contractual provider, or volunteer, regardless of whether the individual is financially compensated.

(e) "Felony" means that term as defined in section 1 of chapter I of the code of criminal procedure, 1927 PA 174, MCL 761.1.

(f) "Indigent" means an individual to whom 1 or more of the following apply:

(i) The individual has been found by a court to be indigent within the last 6 months.

(ii) The individual qualifies for and receives assistance from the department of health and human services food assistance program.

(iii) The individual demonstrates an annual income below the current federal poverty guidelines.

(g) "Internet identifier" means all designations used for self-identification or routing in internet communications or posting.

(h) "Institution of higher education" means 1 or more of the following:

(i) A public or private community college, college, or university.

(ii) A public or private trade, vocational, or occupational school.

(i) "Listed offense" means a tier I, tier II, or tier III offense.

(j) "Local law enforcement agency" means the police department of a municipality.

(k) "Minor" means a victim of a listed offense who was less than 18 years of age at the time the offense was committed.

(l) "Municipality" means a city, village, or township of this state.

(m) "Registering authority" means the local law enforcement agency or sheriff's office having jurisdiction over the individual's residence, place of employment, or institution of higher learning, or the nearest department post designated to receive or enter sex offender registration information within a registration jurisdiction.

(n) "Registration jurisdiction" means each of the 50 states, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Northern Mariana Islands, the United States Virgin Islands, American Samoa, and the Indian tribes within the United States that elect to function as a registration jurisdiction.

(o) "Residence", as used in this act, for registration and voting purposes means that place at which a person habitually sleeps, keeps the person's personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a person has a residence separate from that of the person's spouse, that place at which the person resides the greater part of the time must be the person's official residence for the purposes of this act. If a person is homeless or otherwise lacks a fixed or temporary residence, residence means the village, city, or township where the person spends a majority of his or her time. This section does not affect existing judicial interpretation of the term residence for purposes other than the purposes of this act.

(p) "Student" means an individual enrolled on a full- or part-time basis in a public or private educational institution, including, but not limited to, a secondary school, trade school, professional institution, or institution of higher education.

(q) "Tier I offender" means an individual convicted of a tier I offense who is not a tier II or tier III offender.

(r) "Tier I offense" means 1 or more of the following:

(i) A violation of section 145c(4) of the Michigan penal code, 1931 PA 328, MCL 750.145c.

(ii) A violation of section 335a(2)(b) of the Michigan penal code, 1931 PA 328, MCL 750.335a, if a victim is a minor.

(iii) A violation of section 349b of the Michigan penal code, 1931 PA 328, MCL 750.349b, if the victim is a minor.

(iv) A violation of section 449a(2) of the Michigan penal code, 1931 PA 328, MCL 750.449a.

(v) A violation of section 520e or 520g(2) of the Michigan penal code, 1931 PA 328, MCL 750.520e and 750.520g, if the victim is 18 years or older.

(vi) A violation of section 539j of the Michigan penal code, 1931 PA 328, MCL 750.539j, if a victim is a minor.

(vii) A violation of section 160d(1) of the Michigan penal code, 1931 PA 328, MCL 750.160d.

(viii) Any other violation of a law of this state or a local ordinance of a municipality, other than a tier II or tier III offense, that by its nature constitutes a sexual offense against an individual who is a minor.

(ix) An offense committed by a person who was, at the time of the offense, a sexually delinquent person as

©

defined in section 10a of the Michigan penal code, 1931 PA 328, MCL 750.10a.

(*x*) An attempt or conspiracy to commit an offense described in subparagraphs (*i*) to (*ix*).

(*xi*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*x*) under a law of the United States that is specifically enumerated in 34 USC 20911, under a law of any state or any country, or under tribal or military law.

(s) "Tier II offender" means either of the following:

(*i*) A tier I offender who is subsequently convicted of another offense that is a tier I offense.

(*ii*) An individual convicted of a tier II offense who is not a tier III offender.

(t) "Tier II offense" means 1 or more of the following:

(*i*) A violation of section 145a of the Michigan penal code, 1931 PA 328, MCL 750.145a.

(*ii*) A violation of section 145b of the Michigan penal code, 1931 PA 328, MCL 750.145b.

(*iii*) A violation of section 145c(2) or (3) of the Michigan penal code, 1931 PA 328, MCL 750.145c.

(*iv*) A violation of section 145d(1)(a) of the Michigan penal code, 1931 PA 328, MCL 750.145d, except for a violation arising out of a violation of section 157c of the Michigan penal code, 1931 PA 328, MCL 750.157c.

(*v*) A violation of section 158 of the Michigan penal code, 1931 PA 328, MCL 750.158, committed against a minor unless either of the following applies:

(A) All of the following:

(I) The victim consented to the conduct constituting the violation.

(II) The victim was at least 13 years of age but less than 16 years of age at the time of the violation.

(III) The individual is not more than 4 years older than the victim.

(B) All of the following:

(I) The victim consented to the conduct constituting the violation.

(II) The victim was 16 or 17 years of age at the time of the violation.

(III) The victim was not under the custodial authority of the individual at the time of the violation.

(*vi*) A violation of section 338, 338a, or 338b of the Michigan penal code, 1931 PA 328, MCL 750.338, 750.338a, and 750.338b, committed against an individual 13 years of age or older but less than 18 years of age. This subparagraph does not apply if the court determines that either of the following applies:

(A) All of the following:

(I) The victim consented to the conduct constituting the violation.

(II) The victim was at least 13 years of age but less than 16 years of age at the time of the violation.

(III) The individual is not more than 4 years older than the victim.

(B) All of the following:

(I) The victim consented to the conduct constituting the violation.

(II) The victim was 16 or 17 years of age at the time of the violation.

(III) The victim was not under the custodial authority of the individual at the time of the violation.

(*vii*) A violation of section 462e(a) of the Michigan penal code, 1931 PA 328, MCL 750.462e.

(*viii*) A violation of section 448 of the Michigan penal code, 1931 PA 328, MCL 750.448, if the victim is a minor.

(*ix*) A violation of section 455 of the Michigan penal code, 1931 PA 328, MCL 750.455.

(*x*) A violation of section 520c, 520e, or 520g(2) of the Michigan penal code, 1931 PA 328, MCL 750.520c, 750.520e, and 750.520g, committed against an individual 13 years of age or older but less than 18 years of age.

(*xi*) A violation of section 520c of the Michigan penal code, 1931 PA 328, MCL 750.520c, committed against an individual 18 years of age or older.

(*xii*) An attempt or conspiracy to commit an offense described in subparagraphs (*i*) to (*xi*).

(*xiii*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*xii*) under a law of the United States that is specifically enumerated in 34 USC 20911, under a law of any state or any country, or under tribal or military law.

(u) "Tier III offender" means either of the following:

(*i*) A tier II offender subsequently convicted of a tier I or II offense.

(*ii*) An individual convicted of a tier III offense.

(v) "Tier III offense" means 1 or more of the following:

(*i*) A violation of section 338, 338a, or 338b of the Michigan penal code, 1931 PA 328, MCL 750.338, 750.338a, and 750.338b, committed against an individual less than 13 years of age.

(*ii*) A violation of section 349 of the Michigan penal code, 1931 PA 328, MCL 750.349, committed against a minor.

(*iii*) A violation of section 350 of the Michigan penal code, 1931 PA 328, MCL 750.350.

(*iv*) A violation of section 520b, 520d, or 520g(1) of the Michigan penal code, 1931 PA 328, MCL 750.520b, 750.520d, and 750.520g. This subparagraph does not apply if the court determines that the victim consented to the conduct constituting the violation, that the victim was at least 13 years of age but less than 16 years of age at the time of the offense, and that the individual is not more than 4 years older than the victim.

(*v*) A violation of section 520c or 520g(2) of the Michigan penal code, 1931 PA 328, MCL 750.520c and 750.520g, committed against an individual less than 13 years of age.

(*vi*) A violation of section 520e of the Michigan penal code, 1931 PA 328, MCL 750.520e, committed by an individual 17 years of age or older against an individual less than 13 years of age.

(*vii*) A violation of section 160d(2) of the Michigan penal code, 1931 PA 328, MCL 750.160d.

(*viii*) An attempt or conspiracy to commit an offense described in subparagraphs (*i*) to (*vii*).

(*ix*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*viii*) under a law of the United States that is specifically enumerated in 34 USC 20911, under a law of any state or any country, or under tribal or military law.

(w) "Vehicle" means that term as defined in section 79 of the Michigan vehicle code, 1949 PA 300, MCL 257.79.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2005, Act 301, Eff. Feb. 1, 2006;—Am. 2011, Act 17, Eff. July 1, 2011;—Am. 2014, Act 328, Eff. Jan. 14, 2015;—Am. 2020, Act 295, Eff. Mar. 24, 2021;—Am. 2024, Act 66, Eff. Oct. 6, 2024.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.723 Individuals required to be registered.**

Sec. 3. (1) Subject to subsection (2), the following individuals who are domiciled or temporarily reside in this state or who work with or without compensation or are students in this state are required to be registered under this act:

(a) An individual who is convicted of a listed offense after October 1, 1995.

(b) An individual convicted of a listed offense on or before October 1, 1995 if on October 1, 1995 he or she is on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, or under the jurisdiction of the juvenile division of the probate court or the department of human services for that offense or is placed on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, placed under the jurisdiction of the juvenile division of the probate court or family division of circuit court, or committed to the department of human services after October 1, 1995 for that offense.

(c) An individual convicted on or before October 1, 1995 of an offense described in section 2(d)(*vi*) as added by 1994 PA 295 if on October 1, 1995 he or she is on probation or parole that has been transferred to this state for that offense or his or her probation or parole is transferred to this state after October 1, 1995 for that offense.

(d) An individual from another state who is required to register or otherwise be identified as a sex or child offender or predator under a comparable statute of that state.

(e) An individual who was previously convicted of a listed offense for which he or she was not required to register under this act, but who is convicted of any other felony on or after July 1, 2011.

(2) An individual convicted of an offense added on September 1, 1999 to the definition of listed offense is not required to be registered solely because of that listed offense unless 1 of the following applies:

(a) The individual is convicted of that listed offense on or after September 1, 1999.

(b) On September 1, 1999, the individual is on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, under the jurisdiction of the family division of circuit court, or committed to the department of human services for that offense or the individual is placed on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections, placed under the jurisdiction of the family division of circuit court, or committed to the department of human services on or after September 1, 1999 for that offense.

(c) On September 1, 1999, the individual is on probation or parole for that offense which has been transferred to this state or the individual's probation or parole for that offense is transferred to this state after September 1, 1999.

(d) On September 1, 1999, in another state or country the individual is on probation or parole, committed to jail, committed to the jurisdiction of the department of corrections or a similar type of state agency, under the jurisdiction of a court that handles matters similar to those handled by the family division of circuit court in this state, or committed to an agency with the same authority as the department of human services for that offense.

(3) A nonresident who is convicted in this state on or after July 1, 2011 of committing a listed offense who is not otherwise described in subsection (1) shall nevertheless register under this act. However, the continued reporting requirements of this act do not apply to the individual while he or she remains a nonresident and is not otherwise required to report under this act. The individual shall have his or her photograph taken under section 5a.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1995, Act 10, Eff. Oct. 1, 1995;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2011, Act 17, Eff. July 1, 2011.

**SEX OFFENDERS REGISTRATION ACT (EXCERPT)**
**Act 295 of 1994**

**28.723a Hearing to determine if individual exempt from registration.**

Sec. 3a. (1) If an individual pleads guilty to or is found guilty of a listed offense or is adjudicated as a juvenile as being responsible for a listed offense but alleges that he or she is not required to register under this act because section 2(t)(*v*) or (*vi*) applies or section 2(v)(*iv*) applies, and the prosecuting attorney disputes that allegation, the court shall conduct a hearing on the matter before sentencing or disposition to determine whether the individual is required to register under this act.

(2) The individual has the burden of proving by a preponderance of the evidence in a hearing under this section that his or her conduct falls within the exceptions described in subsection (1) and that he or she is therefore not required to register under this act.

(3) The rules of evidence, except for those pertaining to privileges and protections set forth in section 520j of the Michigan penal code, 1931 PA 328, MCL 750.520j, do not apply to a hearing under this section.

(4) The prosecuting attorney shall give the victim notice of the date, time, and place of the hearing.

(5) The victim of the offense has the following rights in a hearing under this section:

(a) To submit a written statement to the court.

(b) To attend the hearing and to make a written or oral statement to the court.

(c) To refuse to attend the hearing.

(d) To attend the hearing but refuse to testify or make a statement at the hearing.

(6) The court's decision excusing or requiring the individual to register is a final order of the court and may be appealed by the prosecuting attorney or the individual as a matter of right.

(7) This section applies to criminal and juvenile cases pending on July 1, 2011 and to criminal and juvenile cases brought on and after that date.

**History:** Add. 2011, Act 17, Imd. Eff. Apr. 12, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.724 Registration; procedures.**

Sec. 4. (1) Registration of an individual under this act must proceed as provided in this section.

(2) For an individual convicted of a listed offense on or before October 1, 1995 who on or before October 1, 1995 is sentenced for that offense, has a disposition entered for that offense, or is assigned to youthful trainee status for that offense, the following shall register the individual by December 31, 1995:

(a) If the individual is on probation for the listed offense, the individual's probation agent.

(b) If the individual is committed to jail for the listed offense, the sheriff or his or her designee.

(c) If the individual is under the jurisdiction of the department of corrections for the listed offense, the department of corrections.

(d) If the individual is on parole for the listed offense, the individual's parole agent.

(e) If the individual is within the jurisdiction of the juvenile division of the probate court or the department of social services under an order of disposition for the listed offense, the juvenile division of the probate court or the department of social services.

(3) Except as provided in subsection (4), for an individual convicted of a listed offense on or before October 1, 1995:

(a) If the individual is sentenced for that offense after October 1, 1995 or assigned to youthful trainee status after October 1, 1995, the probation agent shall register the individual before sentencing or assignment.

(b) If the individual's probation or parole is transferred to this state after October 1, 1995, the probation or parole agent shall register the individual not more than 7 days after the transfer.

(c) If the individual is placed within the jurisdiction of the juvenile division of the probate court or family division of circuit court or committed to the department of health and human services under an order of disposition entered after October 1, 1995, the juvenile division of the probate court or family division of circuit court shall register the individual before the order of disposition is entered.

(4) For an individual convicted on or before September 1, 1999 of an offense that was added on September 1, 1999 to the definition of listed offense, the following shall register the individual:

(a) If the individual is on probation or parole on September 1, 1999 for the listed offense, the individual's probation or parole agent not later than September 12, 1999.

(b) If the individual is committed to jail on September 1, 1999 for the listed offense, the sheriff or his or her designee not later than September 12, 1999.

(c) If the individual is under the jurisdiction of the department of corrections on September 1, 1999 for the listed offense, the department of corrections not later than November 30, 1999.

(d) If the individual is within the jurisdiction of the family division of circuit court or committed to the department of health and human services or county juvenile agency on September 1, 1999 under an order of disposition for the listed offense, the family division of circuit court, the department of health and human services, or the county juvenile agency not later than November 30, 1999.

(e) If the individual is sentenced or assigned to youthful trainee status for that offense after September 1, 1999, the probation agent shall register the individual before sentencing or assignment.

(f) If the individual's probation or parole for the listed offense is transferred to this state after September 1, 1999, the probation or parole agent shall register the individual within 14 days after the transfer.

(g) If the individual is placed within the jurisdiction of the family division of circuit court or committed to the department of health and human services for the listed offense after September 1, 1999, the family division of circuit court shall register the individual before the order of disposition is entered.

(5) Subject to section 3, an individual convicted of a listed offense in this state after October 1, 1995 and an individual who was previously convicted of a listed offense for which he or she was not required to register under this act, but who is convicted of any other felony on or after July 1, 2011, shall register before sentencing, entry of the order of disposition, or assignment to youthful trainee status for that listed offense or that other felony. The probation agent or the family division of circuit court shall give the individual the registration form after the individual is convicted, explain the duty to register and accept the completed registration for processing under section 6. The court shall not impose sentence, enter the order of disposition, or assign the individual to youthful trainee status, until it determines that the individual's registration was forwarded to the department as required under section 6.

(6) All of the following shall register with the local law enforcement agency, sheriff's department, or the department not more than 3 business days after becoming domiciled or temporarily residing, working, or being a student in this state:

(a) Subject to section 3(1), an individual convicted in another state or country on or after October 1, 1995

of a listed offense as defined before September 1, 1999.

(b) Subject to section 3(2), an individual convicted in another state or country of an offense added on September 1, 1999 to the definition of listed offenses.

(c) Subject to section 3(1), an individual convicted in another state or country of a listed offense before October 1, 1995 and, subject to section 3(2), an individual convicted in another state or country of an offense added on September 1, 1999 to the definition of listed offenses, who is convicted of any other felony on or after July 1, 2011.

(d) An individual required to be registered as a sex offender in another state or country regardless of when the conviction was entered.

(7) If a prosecution or juvenile proceeding is pending on July 1, 2011, whether the defendant in a criminal case or the minor in a juvenile proceeding is required to register under this act must be determined on the basis of the law in effect on July 1, 2011.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2011, Act 17, Eff. July 1, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

**28.724a Status report to registering authority; requirements; reports; written documentation; exception.**

Sec. 4a. (1) An individual required to be registered under this act who is not a resident of this state shall report his or her status in person to the registering authority having jurisdiction over a campus of an institution of higher education if either of the following occurs:

(a) The individual is or enrolls as a student with that institution of higher education or the individual discontinues that enrollment.

(b) As part of his or her course of studies at an institution of higher education in this state, the individual is present at any other location in this state, another state, a territory or possession of the United States, or the individual discontinues his or her studies at that location.

(2) An individual required to be registered under this act who is a resident of this state shall report his or her status in person to the registering authority having jurisdiction where his or her new residence or domicile is located if any of the events described under subsection (1) occur.

(3) The report required under subsections (1) and (2) must be made as follows:

(a) For an individual registered under this act before October 1, 2002 who is required to make his or her first report under subsections (1) and (2), not later than January 15, 2003.

(b) Not more than 3 business days after he or she enrolls or discontinues his or her enrollment as a student on that campus including study in this state or another state, a territory or possession of the United States, or another country.

(4) The additional registration reports required under this section must be made in the time periods described in section 5a(2)(a) to (c) for reports under that section.

(5) The local law enforcement agency, sheriff's department, or department post to which an individual reports under this section shall require the individual to pay the registration fee required under section 5a or 7(1) and to present written documentation of employment status, contractual relationship, volunteer status, or student status. Written documentation under this subsection may include, but need not be limited to, any of the following:

(a) A W-2 form, pay stub, or written statement by an employer.

(b) A contract.

(c) A student identification card or student transcript.

(6) This section does not apply to an individual whose enrollment and participation at an institution of higher education is solely through the mail or the internet from a remote location.

**History:** Add. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2011, Act 17, Eff. July 1, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.725 Conditions requiring individual to report in person and provide notice to registering authority; release of incarcerated individual; notice; compliance; removal upon expungement.**

Sec. 5. (1) An individual required to be registered under this act who is a resident of this state shall report in person, or in another manner as prescribed by the department, and notify the registering authority having jurisdiction where his or her residence or domicile is located not more than 3 business days after any of the following occur:

(a) The individual changes or vacates his or her residence or domicile.

(b) The individual changes his or her place of employment, or employment is discontinued.

(c) The individual enrolls as a student with an institution of higher education, or enrollment is discontinued.

(d) The individual changes his or her name.

(e) Any change required to be reported under section 4a.

(2) An individual required to be registered under this act who is a resident of this state shall report in the manner prescribed by the department to the registering authority having jurisdiction where his or her residence or domicile is located not more than 3 business days after any of the following occur:

(a) Except as otherwise provided in this subdivision, any change in vehicle information, electronic mail addresses, internet identifiers, or telephone numbers registered to or used by the individual. The requirement to report any change in electronic mail addresses and internet identifiers applies only to an individual required to be registered under this act after July 1, 2011.

(b) The individual intends to temporarily reside at any place other than his or her residence for more than 7 days.

(3) An individual required to be registered under this act, who is not a resident of this state but has his or her place of employment in this state shall report in person and notify the registering authority having jurisdiction where his or her place of employment is located or the department post of the individual's place of employment not more than 3 business days after the individual changes his or her place of employment or employment is discontinued.

(4) If an individual who is incarcerated in a state correctional facility and is required to be registered under this act is granted parole or is due to be released upon completion of his or her maximum sentence, the department of corrections, before releasing the individual, shall provide notice of the location of the individual's proposed place of residence or domicile to the department of state police.

(5) If an individual who is incarcerated in a county jail and is required to be registered under this act is due to be released from custody, the sheriff's department, before releasing the individual, shall provide notice of the location of the individual's proposed place of residence or domicile to the department of state police.

(6) Not more than 7 days after either of the following occurs, the department of corrections shall notify the local law enforcement agency or sheriff's department having jurisdiction over the area to which the individual is transferred or the department post of the transferred residence or domicile of an individual required to be registered under this act:

(a) The individual is transferred to a community residential program.

(b) The individual is transferred into a level 1 correctional facility of any kind, including a correctional camp or work camp.

(7) An individual required to be registered under this act who is a resident of this state shall report in person and notify the registering authority having jurisdiction where his or her residence or domicile is located not more than 3 business days before he or she changes his or her domicile or residence to another state. The individual shall indicate the new state and, if known, the new address. The department shall update the registration and compilation databases and promptly notify the appropriate law enforcement agency and any applicable sex or child offender registration authority in the new state.

(8) An individual required to be registered under this act, who is a resident of this state, shall report in person and notify the registering authority having jurisdiction where his or her residence or domicile is located not later than 21 days before he or she changes his or her domicile or residence to another country or travels to another country for more than 7 days. The individual shall state the new country of residence or country of travel and the address of his or her new domicile or residence or place of stay, if known. The department shall update the registration and compilation databases and promptly notify the appropriate law enforcement agency and any applicable sex or child offender registration authority.

(9) If the probation or parole of an individual required to be registered under this act is transferred to

another state or an individual required to be registered under this act is transferred from a state correctional facility to any correctional facility or probation or parole in another state, the department of corrections shall promptly notify the department and the appropriate law enforcement agency and any applicable sex or child offender registration authority in the new state. The department shall update the registration and compilation databases.

(10) An individual registered under this act shall comply with the verification procedures and proof of residence procedures prescribed in sections 4a and 5a.

(11) Except as otherwise provided in this section and section 8c, a tier I offender shall comply with this section for 15 years.

(12) Except as otherwise provided in this section and section 8c, a tier II offender shall comply with this section for 25 years.

(13) Except as otherwise provided in this section and section 8c, a tier III offender shall comply with this section for life.

(14) The registration periods under this section exclude any period of incarceration for committing a crime and any period of civil commitment.

(15) For an individual who was previously convicted of a listed offense for which he or she was not required to register under this act but who is convicted of any felony on or after July 1, 2011, any period of time that he or she was not incarcerated for that listed offense or that other felony and was not civilly committed counts toward satisfying the registration period for that listed offense as described in this section. If those periods equal or exceed the registration period described in this section, the individual has satisfied his or her registration period for the listed offense and is not required to register under this act. If those periods are less than the registration period described in this section for that listed offense, the individual shall comply with this section for the period of time remaining.

(16) If an individual required to be registered under this act presents an order to the department or the appropriate registering authority that the conviction or adjudication for which the individual is required to be registered under this act has been set aside under 1965 PA 213, MCL 780.621 to 780.624, or has been otherwise expunged, his or her registration under this act must be discontinued. If this subsection applies, the department shall remove the individual from both the law enforcement database and the public internet website maintained under section 8.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2005, Act 123, Eff. Jan. 1, 2006;—Am. 2005, Act 132, Eff. Jan. 1, 2006;—Am. 2006, Act 402, Eff. Dec. 1, 2006;—Am. 2011, Act 17, Eff. July 1, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.725a Notice to registered individual; explanation of duties; reporting requirements; homeless exception.**

Sec. 5a. (1) The department shall mail a notice to each individual registered under this act who is not in a state correctional facility explaining the individual's duties under this act as amended.

(2) Upon the release of an individual registered under this act who is in a state correctional facility, the department of corrections shall provide written notice to that individual explaining his or her duties under this section and this act and the procedure for registration, notification, and verification and payment of the registration fee prescribed under subsection (6) or section 7(1). The individual shall sign and date the notice. The department of corrections shall maintain a copy of the signed and dated notice in the individual's file. The department of corrections shall forward the original notice to the department within 7 days, regardless of whether the individual signs it.

(3) Subject to subsection (4), an individual required to be registered under this act who is not incarcerated shall report in person to the registering authority where he or she is domiciled or resides for verification of domicile or residence as follows:

(a) If the individual is a tier I offender, the individual shall report once each year during the individual's month of birth.

(b) If the individual is a tier II offender, the individual shall report twice each year according to the following schedule:

| **Birth Month** | **Reporting Months** |
| --- | --- |
| January | January and July |
| February | February and August |
| March | March and September |
| April | April and October |
| May | May and November |
| June | June and December |
| July | January and July |
| August | February and August |
| September | March and September |
| October | April and October |
| November | May and November |
| December | June and December |

(c) If the individual is a tier III offender, the individual shall report 4 times each year according to the following schedule:

| **Birth Month** | **Reporting Months** |
| --- | --- |
| January | January, April, July, and October |
| February | February, May, August, and November |
| March | March, June, September, and December |
| April | April, July, October, and January |
| May | May, August, November, and February |
| June | June, September, December, and March |
| July | July, October, January, and April |
| August | August, November, February, and May |
| September | September, December, March, and June |
| October | October, January, April, and July |
| November | November, February, May, and August |
| December | December, March, June, and September |

(4) A report under subsection (3) must be made no earlier than the first day or later than the last day of the month in which the individual is required to report. However, if the registration period for that individual expires during the month in which he or she is required to report under this section, the individual shall report during that month on or before the date his or her registration period expires. When an individual reports under subsection (3), the individual shall review all registration information for accuracy.

(5) When an individual reports under subsection (3) an officer or authorized employee of the registering authority shall verify the individual's residence or domicile and any information required to be reported under section 4a. The officer or authorized employee shall also determine whether the individual's photograph required under this act matches the appearance of the individual sufficiently to properly identify him or her

©

from that photograph. If not, the officer or authorized employee shall require the individual to obtain a current photograph within 7 days under this section. When all of the verification information has been provided, the officer or authorized employee shall review that information with the individual and make any corrections, additions, or deletions the officer or authorized employee determines are necessary based on the review. The officer or authorized employee shall sign and date a verification receipt. The officer or authorized employee shall give a copy of the signed receipt showing the date of verification to the individual. The officer or authorized employee shall forward verification information to the department in the manner the department prescribes. The department shall revise the law enforcement database and public internet website maintained under section 8 as necessary and shall indicate verification in the public internet website maintained under section 8(2).

(6) Except as otherwise provided in section 5b, an individual who reports as prescribed under subsection (3) shall pay a $50.00 registration fee as follows:

(a) Upon initial registration.

(b) Annually following the year of initial registration. The payment of the registration fee under this subdivision must be made at the time the individual reports in the first reporting month for that individual as set forth in subsection (3) of each year in which the fee applies, unless an individual elects to prepay an annual registration fee for any future year for which an annual registration fee is required. Prepaying any annual registration fee must not change or alter the requirement of an individual to report as set forth in subsection (3). The payment of the registration fee under this subdivision is not required to be made for any registration year that has expired before January 1, 2014 or to be made by any individual initially required to register under this act after January 1, 2027. The registration fee required to be paid under this subdivision must not be prorated on grounds that the individual will complete his or her registration period after the month in which the fee is due.

(c) The sum of the amounts required to be paid under subdivisions (a) and (b) must not exceed $550.00.

(7) Except as otherwise provided in this subsection, an individual required to be registered under this act shall maintain either a valid operator's or chauffeur's license issued under the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, or an official state personal identification card issued under 1972 PA 222, MCL 28.291 to 28.300, with the individual's current address. The license or card may be used as proof of domicile or residence under this section. In addition, the officer or authorized employee may require the individual to produce another document bearing his or her name and address, including, but not limited to, voter registration or a utility or other bill. The department may specify other satisfactory proof of domicile or residence. The requirement to maintain a valid operator's or chauffeur's license issued under the Michigan vehicle code, 1949 PA 300, MCL 257.1 to 257.923, or an official state personal identification card issued under 1972 PA 222, MCL 28.291 to 28.300, does not apply to an individual required to be registered under this act who is homeless. As used in this subsection, "homeless" means someone who lacks a fixed or temporary residence.

(8) An individual registered under this act who is incarcerated shall report to the secretary of state under this subsection not more than 7 days after he or she is released to have his or her digitized photograph taken. The individual is not required to report under this subsection if he or she had a digitized photograph taken for an operator's or chauffeur's license or official state personal identification card before January 1, 2000, or within 2 years before he or she is released unless his or her appearance has changed from the date of that photograph. Unless the person is a nonresident, the photograph must be used on the individual's operator's or chauffeur's license or official state personal identification card. The individual shall have a new photograph taken when he or she renews the license or identification card as provided by law, or as otherwise provided in this act. The secretary of state shall make the digitized photograph available to the department for a registration under this act.

(9) If an individual does not report under this section or under section 4a, the department shall notify all registering authorities as provided in section 8a and initiate enforcement action as set forth in that section.

(10) The department shall prescribe the form for the notices and verification procedures required under this section.

**History:** Add. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2005, Act 322, Eff. Jan. 1, 2006;—Am. 2011, Act 17, Imd. Eff. Apr. 12, 2011;—Am. 2013, Act 149, Eff. Apr. 1, 2014;—Am. 2019, Act 82, Imd. Eff. Sept. 30, 2019;—Am. 2020, Act 295, Eff. Mar. 24, 2021;—Am. 2022, Act 272, Imd. Eff. Dec. 22, 2022.

**28.725b Sex offenders registration fund; creation; disposition of money; use; lapse; claim of indigence; waiver of fee; payments.**

Sec. 5b. (1) Of the money collected by a court, local law enforcement agency, sheriff's department, or department post from each registration fee prescribed under this act, $30.00 must be forwarded to the department, which shall deposit the money in the sex offenders registration fund created under subsection (2), and $20.00 must be retained by the court, local law enforcement agency, sheriff's department, or department post.

(2) The sex offenders registration fund is created as a separate fund in the department of treasury. The state treasurer shall credit the money received from the payment of the registration fee prescribed under this act to the sex offenders registration fund. Money credited to the fund must only be used by the department for training concerning, and the maintenance and automation of, the law enforcement database, public internet website, information required under section 8, or notification and offender registration duties under section 4a. Except as otherwise provided in this section, money in the sex offenders registration fund at the close of the fiscal year must remain in the fund and must not lapse to the general fund.

(3) If an individual required to pay a registration fee under this act is indigent, the registration fee is waived for a period of 90 days. The burden is on the individual claiming indigence to prove the fact of indigence to the satisfaction of the local law enforcement agency, sheriff's department, or department post where the individual is reporting.

(4) Payment of the registration fee prescribed under this act must be made in the form and by means prescribed by the department. Upon payment of the registration fee prescribed under this act, the officer or employee shall forward verification of the payment to the department in the manner the department prescribes. The department shall revise the law enforcement database and public internet website maintained under section 8 as necessary and indicate verification of payment in the law enforcement database under section 8(1).

(5) For the fiscal year ending September 30, 2020 only, $3,400,000.00 of the money in the sex offenders registration fund is transferred to and must be deposited into the general fund.

**History:** Add. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2011, Act 17, Eff. July 1, 2011;—Am. 2020, Act 202, Imd. Eff. Oct. 15, 2020.

**28.725c Fee collected by department of corrections; prohibition.**

Sec. 5c. The department of corrections shall not collect any fee prescribed under this act.

**History:** Add. 2004, Act 237, Eff. Oct. 16, 2004.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.726 Providing or forwarding copy of registration or notification.**

Sec. 6. (1) The officer, court, or agency registering an individual or receiving or accepting a registration under section 4 or receiving notice under section 5(1) shall provide the individual with a copy of the registration or notification at the time of registration or notice.

(2) The officer, court, or agency registering an individual or receiving or accepting a registration under section 4 or notified of an address change under section 5(1) shall forward the registration or notification to the department in a manner prescribed by the department immediately after registration or notification.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1996, Act 494, Eff. Apr. 1, 1997;—Am. 2011, Act 18, Eff. July 1, 2011.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.727 Registration information; format; fee; requirements; forwarding registration, notice, and verification information to Federal Bureau of Investigation, local agencies, and other registering jurisdictions.**

Sec. 7. (1) Registration information obtained under this act must be forwarded to the department in the format the department prescribes. Except as provided in section 5b(3), a $50.00 registration fee must accompany each original registration. All of the following information must be obtained or otherwise provided for registration purposes:

(a) The individual's legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known. An individual who is in a witness protection and relocation program is only required to use the name and identifying information reflecting his or her new identity in a registration under this act. The registration and compilation databases must not contain any information identifying the individual's prior identity or locale.

(b) The individual's Social Security number and any Social Security numbers or alleged Social Security numbers previously used by the individual.

(c) The individual's date of birth and any alleged dates of birth previously used by the individual.

(d) The address where the individual resides or will reside. If the individual does not have a residential address, information under this subsection must identify the location or area used or to be used by the individual in lieu of a residence or, if the individual is homeless, the village, city, or township where the person spends or will spend the majority of his or her time.

(e) The name and address of any place of temporary lodging used or to be used by the individual during any period in which the individual is away, or is expected to be away, from his or her residence for more than 7 days. Information under this subdivision must include the dates the lodging is used or to be used.

(f) The name and address of each of the individual's employers. For purposes of this subdivision, "employer" includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services. Information under this subsection must include the address or location of employment if different from the address of the employer. If the individual lacks a fixed employment location, the information obtained under this subdivision must include the general areas where the individual works and the normal travel routes taken by the individual in the course of his or her employment.

(g) The name and address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend. For purposes of this subdivision, "school" means a public or private postsecondary school or school of higher education, including a trade school.

(h) All telephone numbers registered to the individual or used by the individual, including, but not limited to, residential, work, and mobile telephone numbers.

(i) Except as otherwise provided in this subdivision, all electronic mail addresses and internet identifiers registered to or used by the individual. This subdivision applies only to an individual required to be registered under this act after July 1, 2011.

(j) The license plate number and description of any vehicle owned or operated by the individual.

(k) The individual's driver license number or state personal identification card number.

(l) A digital copy of the individual's passport and other immigration documents.

(m) The individual's occupational and professional licensing information, including any license that authorizes the individual to engage in any occupation, profession, trade, or business.

(n) A brief summary of the individual's convictions for listed offenses regardless of when the conviction occurred, including where the offense occurred and the original charge if the conviction was for a lesser offense.

(o) A complete physical description of the individual.

(p) The photograph required under section 5a.

(q) The individual's fingerprints if not already on file with the department and the individual's palm prints. An individual required to be registered under this act shall have his or her fingerprints or palm prints or both taken not later than September 12, 2011 if his or her fingerprints or palm prints are not already on file with the department. The department shall forward a copy of the individual's fingerprints and palm prints to the Federal Bureau of Investigation if not already on file with that bureau.

(r) Information that is required to be reported under section 4a.

(2) A registration must contain all of the following:

(a) An electronic copy of the offender's Michigan driver license or Michigan personal identification card, including the photograph required under this act.

©                                                                                    *Courtesy of www.legislature.mi.gov*

(b) The text of the provision of law that defines the criminal offense for which the sex offender is registered.

(c) Any outstanding arrest warrant information.

(d) The individual's tier classification.

(e) An identifier that indicates whether a DNA sample has been collected and any resulting DNA profile has been entered into the federal combined DNA index system (CODIS).

(f) The individual's complete criminal history record, including the dates of all arrests and convictions.

(g) The individual's Michigan department of corrections number and status of parole, probation, or supervised release.

(h) The individual's Federal Bureau of Investigation number.

(3) The form used for notification of duties under this act must contain a written statement that explains the duty of the individual being registered to provide notice of changes in his or her registration information, the procedures for providing that notice, and the verification procedures under section 5a.

(4) The individual shall sign a registration and notice. However, the registration and notice must be forwarded to the department regardless of whether the individual signs it or pays the registration fee required under subsection (1).

(5) The officer, court, or an employee of the agency registering the individual or receiving or accepting a registration under section 4 shall sign the registration form.

(6) An individual shall not knowingly provide false or misleading information concerning a registration, notice, or verification.

(7) The department shall prescribe the form for a notification required under section 5 and the format for forwarding the notification to the department.

(8) The department shall promptly provide registration, notice, and verification information to the Federal Bureau of Investigation and to local law enforcement agencies, sheriff's departments, department posts, and other registering jurisdictions, as provided by law.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1996, Act 494, Eff. Apr. 1, 1997;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2011, Act 18, Eff. July 1, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.728 Law enforcement database; information to be contained for each registered individual; public internet website; compilation; availability; removal.**

Sec. 8. (1) The department shall maintain a computerized law enforcement database of registrations and notices required under this act. The law enforcement database must contain all of the following information for each individual registered under this act:

(a) The individual's legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known.

(b) The individual's Social Security number and any Social Security numbers or alleged Social Security numbers previously used by the individual.

(c) The individual's date of birth and any alleged dates of birth previously used by the individual.

(d) The address where the individual resides or will reside. If the individual does not have a residential address, information under this subsection must identify the location or area used or to be used by the individual in lieu of a residence or, if the individual is homeless, the village, city, or township where the individual spends or will spend the majority of his or her time.

(e) The name and address of any place of temporary lodging used or to be used by the individual during any period in which the individual is away, or is expected to be away, from his or her residence for more than 7 days. Information under this subdivision must include the dates the lodging is used or to be used.

(f) The name and address of each of the individual's employers. For purposes of this subdivision, "employer" includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services. Information under this subsection must include the address or location of employment if different from the address of the employer.

(g) The name and address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend. For purposes of this subdivision, "school" means a public or private postsecondary school or school of higher education, including a trade school.

(h) All telephone numbers registered to the individual or used by the individual, including, but not limited to, residential, work, and mobile telephone numbers.

(i) Except as otherwise provided in this subdivision, all electronic mail addresses and internet identifiers registered to or used by the individual. This subdivision applies only to an individual required to be registered under this act after July 1, 2011.

(j) The license plate number and description of any vehicle owned or operated by the individual.

(k) The individual's driver license number or state personal identification card number.

(l) A digital copy of the individual's passport and other immigration documents.

(m) The individual's occupational and professional licensing information, including any license that authorizes the individual to engage in any occupation, profession, trade, or business.

(n) A brief summary of the individual's convictions for listed offenses regardless of when the conviction occurred, including where the offense occurred and the original charge if the conviction was for a lesser offense.

(o) A complete physical description of the individual.

(p) The photograph required under section 5a.

(q) The individual's fingerprints and palm prints.

(r) An electronic copy of the offender's Michigan driver license or Michigan personal identification card, including the photograph required under this act.

(s) The text of the provision of law that defines the criminal offense for which the sex offender is registered.

(t) Any outstanding arrest warrant information.

(u) The individual's tier classification and registration status.

(v) An identifier that indicates whether a DNA sample has been collected and any resulting DNA profile has been entered into the federal combined DNA index system (CODIS).

(w) The individual's complete criminal history record, including the dates of all arrests and convictions.

(x) The individual's Michigan department of corrections number and the status of his or her parole, probation, or release.

(y) The individual's Federal Bureau of Investigation number.

(2) The department shall maintain a public internet website separate from the law enforcement database described in subsection (1) to implement section 10(2) and (3). Except as provided in subsection (4), the public internet website must contain all of the following information for each individual registered under this

act:

(a) The individual's legal name and any aliases, nicknames, ethnic or tribal names, or other names by which the individual is or has been known.

(b) The individual's date of birth.

(c) The address where the individual resides. If the individual does not have a residential address, information under this subsection must identify the village, city, or township used by the individual in lieu of a residence.

(d) The address of each of the individual's employers. For purposes of this subdivision, "employer" includes a contractor and any individual who has agreed to hire or contract with the individual for his or her services. Information under this subsection must include the address or location of employment if different from the address of the employer.

(e) The address of any school being attended by the individual and any school that has accepted the individual as a student that he or she plans to attend. For purposes of this subdivision, "school" means a public or private postsecondary school or school of higher education, including a trade school.

(f) The license plate number and description of any vehicle owned or operated by the individual.

(g) A brief summary of the individual's convictions for listed offenses regardless of when the conviction occurred.

(h) A complete physical description of the individual.

(i) The photograph required under this act. If no photograph is available, the department shall use an arrest photograph or Michigan department of corrections photograph until a photograph as prescribed in section 5a becomes available.

(j) The text of the provision of law that defines the criminal offense for which the sex offender is registered.

(k) The individual's registration status.

(3) The following information must not be made available on the public internet website described in subsection (2):

(a) The identity of any victim of the offense.

(b) The individual's Social Security number.

(c) Any arrests not resulting in a conviction.

(d) Any travel or immigration document numbers.

(e) The individual's tier classification.

(f) The individual's driver license number or state personal identification card number.

(4) The public internet website described in subsection (2) must not include the following individuals:

(a) An individual registered solely because he or she had 1 or more dispositions for a listed offense entered under section 18 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.18, in a case that was not designated as a case in which the individual was to be tried in the same manner as an adult under section 2d of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.2d.

(b) An individual registered solely because he or she was the subject of an order of disposition or other adjudication in a juvenile matter in another state or country.

(c) An individual registered solely because he or she was convicted of a single tier I offense, other than an individual who was convicted of a violation of any of the following:

(*i*) Section 145c(4) of the Michigan penal code, 1931 PA 328, MCL 750.145c.

(*ii*) A violation of section 335a(2)(b) of the Michigan penal code, 1931 PA 328, MCL 750.335a, if a victim is a minor.

(*iii*) Section 349b of the Michigan penal code, 1931 PA 328, MCL 750.349b, if the victim is a minor.

(*iv*) Section 539j of the Michigan penal code, 1931 PA 328, MCL 750.539j, if a victim is a minor.

(*v*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*iv*) under a law of the United States that is specifically enumerated in 42 USC 16911, under a law of any state or any country, or under tribal or military law.

(5) The compilation of individuals must be indexed alphabetically by village, city, township, and county, numerically by zip code area, and geographically as determined appropriate by the department.

(6) The department shall update the public internet website with new registrations, deletions from registrations, and address changes at the same time those changes are made to the law enforcement database described in subsection (1). The department shall make the law enforcement database available to each department post, local law enforcement agency, and sheriff's department by the law enforcement information network. Upon request by a department post, local law enforcement agency, or sheriff's department, the department shall provide to that post, agency, or sheriff's department the information from the law enforcement database in printed form for the designated areas located in whole or in part within the post's,

©                                                    *Courtesy of www.legislature.mi.gov*

agency's, or sheriff's department's jurisdiction. The department shall provide the ability to conduct a computerized search of the law enforcement database and the public internet website based upon the name and campus location of an institution of higher education.

(7) The department shall make the law enforcement database available to a department post, local law enforcement agency, or sheriff's department by electronic, computerized, or other similar means accessible to the post, agency, or sheriff's department. The department shall make the public internet website available to the public by electronic, computerized, or other similar means accessible to the public. The electronic, computerized, or other similar means shall provide for a search by name, village, city, township, and county designation, zip code, and geographical area.

(8) If a court determines that the public availability under section 10 of any information concerning individuals registered under this act violates the constitution of the United States or this state, the department shall revise the public internet website described in subsection (2) so that it does not contain that information.

(9) If the department determines that an individual has completed his or her registration period, including a registration period reduced by law under 2011 PA 18, or that he or she otherwise is no longer required to register under this act, the department shall remove the individual's registration information from both the law enforcement database and the public internet website within 7 days after making that determination.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1996, Act 494, Eff. Apr. 1, 1997;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 238, Eff. May 1, 2005;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2011, Act 18, Eff. July 1, 2011;—Am. 2013, Act 2, Eff. June 1, 2013;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.728a Failure to register or update registration information; duties registering authority; duties of department.**

Sec. 8a. (1) If an individual fails to register or to update his or her registration information as required under this act, the local law enforcement agency, sheriff's office, or department post responsible for registering the individual or for verifying and updating his or her registration information shall do all of the following immediately after the date the individual was required to register or to update his or her registration information:

(a) Determine whether the individual has absconded or is otherwise unlocatable.

(b) If the registering authority was notified by a registration jurisdiction that the individual was to appear in order to register or update his or her registration information in the jurisdiction of the registering authority, notify the department in a manner prescribed by the department that the individual failed to appear as required.

(c) Revise the information in the registry to reflect that the individual has absconded or is otherwise unlocatable.

(d) Seek a warrant for the individual's arrest if the legal requirements for obtaining a warrant are satisfied.

(e) Enter the individual into the national crime information center wanted person file if the requirements for entering information into that file are met.

(2) If an individual fails to register or to update his or her registration information as required under this act, the department shall do all of the following immediately after being notified by the registering authority that the individual failed to appear as required:

(a) Notify that other registration jurisdiction that the individual failed to appear as required.

(b) Notify the United States marshal's service in the manner required by the United States marshal's service of the individual's failure to appear as required.

(c) Update the national sex offender registry to reflect the individual's status as an absconder or as unlocatable.

**History:** Add. 2011, Act 18, Eff. July 1, 2011.

**Compiler's note:** Former MCL 28.728a, which pertained to feasibility studies for providing search by alias and mapping to show address was repealed by Act 240 of 2004, Eff. Oct. 1, 2004.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.728b Repealed. 2004, Act 240, Eff. Oct. 1, 2004.**

    **Compiler's note:** The repealed section pertained to compilation of individuals not requiring registration.

©      *Courtesy of www.legislature.mi.gov*

# SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.728c Petition to discontinue registration; jurisdiction; limitations; oath; contents; false statement; filing copy with office of prosecuting attorney; notice; hearing; rights of victim; factors in court determination; granting of petition.**

Sec. 8c. (1) An individual classified as a tier I offender who meets the requirements of subsection (12) may petition the court under that subsection for an order allowing him or her to discontinue registration under this act.

(2) An individual classified as a tier III offender who meets the requirements of subsection (13) may petition the court under that subsection for an order allowing him or her to discontinue registration under this act.

(3) An individual classified as a tier I, tier II, or tier III offender who meets the requirements of subsection (14) or (15) may petition the court under that subsection for an order allowing him or her to discontinue registration under this act.

(4) This section is the sole means by which an individual may obtain judicial review of his or her registration requirements under this act. This subsection does not prohibit an appeal of the conviction or sentence as otherwise provided by law or court rule. A petition filed under this section shall be filed in the court in which the individual was convicted of committing the listed offense. However, if the conviction occurred in another state or country and the individual is a resident of this state, the individual may file a petition in the circuit court in the county of his or her residence for an order allowing him or her to discontinue registration under this act only. A petition shall not be filed under this section if a previous petition was filed under this section and was denied by the court after a hearing.

(5) A petition filed under this section shall be made under oath and shall contain all of the following:

(a) The name and address of the petitioner.

(b) A statement identifying the offense for which discontinuation from registration is being requested.

(c) A statement of whether the individual was previously convicted of a listed offense for which registration is required under this act.

(6) An individual who knowingly makes a false statement in a petition filed under this section is guilty of perjury as proscribed under section 423 of the Michigan penal code, 1931 PA 328, MCL 750.423.

(7) A copy of the petition shall be filed with the office of the prosecuting attorney that prosecuted the case against the individual or, for a conviction that occurred in another state or country, the prosecuting attorney for the county of his or her residence, at least 30 days before a hearing is held on the petition. The prosecuting attorney may appear and participate in all proceedings regarding the petition and may seek appellate review of any decision on the petition.

(8) If the name of the victim of the offense is known by the prosecuting attorney, the prosecuting attorney shall provide the victim with written notice that a petition has been filed and shall provide the victim with a copy of the petition. The notice shall be sent by first-class mail to the victim's last known address. The petition shall include a statement of the victim's rights under subsection (10).

(9) If an individual properly files a petition with the court under this section, the court shall conduct a hearing on the petition as provided in this section.

(10) The victim has the right to attend all proceedings under this section and to make a written or oral statement to the court before any decision regarding the petition is made. A victim shall not be required to appear at any proceeding under this section against his or her will.

(11) The court shall consider all of the following in determining whether to allow the individual to discontinue registration under subsection (12) or (13) but shall not grant the petition if the court determines that the individual is a continuing threat to the public:

(a) The individual's age and level of maturity at the time of the offense.

(b) The victim's age and level of maturity at the time of the offense.

(c) The nature of the offense.

(d) The severity of the offense.

(e) The individual's prior juvenile or criminal history.

(f) The individual's likelihood to commit further listed offenses.

(g) Any impact statement submitted by the victim under the William Van Regenmorter crime victim's rights act, 1985 PA 87, MCL 780.751 to 780.834, or under this section.

(h) Any other information considered relevant by the court.

(12) The court may grant a petition properly filed by an individual under subsection (1) if all of the following apply:

(a) Ten or more years have elapsed since the date of his or her conviction for the listed offense or from his or her release from any period of confinement for that offense, whichever occurred last.

(b) The petitioner has not been convicted of any felony since the date described in subdivision (a).

(c) The petitioner has not been convicted of any listed offense since the date described in subdivision (a).

(d) The petitioner successfully completed his or her assigned periods of supervised release, probation, or parole without revocation at any time of that supervised release, probation, or parole.

(e) The petitioner successfully completed a sex offender treatment program certified by the United States attorney general under 42 USC 16915(b)(1), or another appropriate sex offender treatment program. The court may waive the requirements of this subdivision if successfully completing a sex offender treatment program was not a condition of the petitioner's confinement, release, probation, or parole.

(13) The court may grant a petition properly filed by an individual under subsection (2) if all of the following apply:

(a) The petitioner is required to register based on an order of disposition entered under section 18 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.18, that is open to the general public under section 28 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.28.

(b) Twenty-five or more years have elapsed since the date of his or her adjudication for the listed offense or from his or her release from any period of confinement for that offense, whichever occurred last.

(c) The petitioner has not been convicted of any felony since the date described in subdivision (b).

(d) The petitioner has not been convicted of any listed offense since the date described in subdivision (b).

(e) The petitioner successfully completed his or her assigned periods of supervised release, probation, or parole without revocation at any time of that supervised release, probation, or parole.

(f) The court determines that the petitioner successfully completed a sex offender treatment program certified by the United States attorney general under 42 USC 16915(b)(1), or another appropriate sex offender treatment program. The court may waive the requirements of this subdivision if successfully completing a sex offender treatment program was not a condition of the petitioner's confinement, release, probation, or parole.

(14) The court shall grant a petition properly filed by an individual under subsection (3) if the court determines that the conviction for the listed offense was the result of a consensual sexual act between the petitioner and the victim and any of the following apply:

(a) All of the following:

(*i*) The victim was 13 years of age or older but less than 16 years of age at the time of the offense.

(*ii*) The petitioner is not more than 4 years older than the victim.

(b) All of the following:

(*i*) The individual was convicted of a violation of section 158, 338, 338a, or 338b of the Michigan penal code, 1931 PA 328, MCL 750.158, 750.338, 750.338a, and 750.338b.

(*ii*) The victim was 13 years of age or older but less than 16 years of age at the time of the violation.

(*iii*) The individual is not more than 4 years older than the victim.

(c) All of the following:

(*i*) The individual was convicted of a violation of section 158, 338, 338a, 338b, or 520c(1)(i) of the Michigan penal code, 1931 PA 328, MCL 750.158, 750.338, 750.338a, 750.338b, and 750.520c.

(*ii*) The victim was 16 years of age or older at the time of the violation.

(*iii*) The victim was not under the custodial authority of the individual at the time of the violation.

(15) The court shall grant a petition properly filed by an individual under subsection (3) if either of the following applies:

(a) Both of the following:

(*i*) The petitioner was adjudicated as a juvenile.

(*ii*) The petitioner was less than 14 years of age at the time of the offense.

(b) The individual was registered under this act before July 1, 2011 for an offense that required registration but for which registration is not required on or after July 1, 2011.

**History:** Add. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2011, Act 18, Eff. July 1, 2011.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
## Act 295 of 1994

**28.728d Providing copy of court order granting petition to department and individual.**

Sec. 8d. If the court grants a petition filed under section 8c, the court shall promptly provide a copy of that order to the department and to the individual. The department shall promptly remove an individual's registration from the database maintained under section 8(1).

**History:** Add. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2011, Act 18, Eff. July 1, 2011.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.729 Registration required; violations; penalties.**

Sec. 9. (1) Except as provided in subsections (2), (3), and (4), an individual required to be registered under this act who willfully violates this act is guilty of a felony punishable as follows:

(a) If the individual has no prior convictions for a violation of this act, by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both.

(b) If the individual has 1 prior conviction for a violation of this act, by imprisonment for not more than 7 years or a fine of not more than $5,000.00, or both.

(c) If the individual has 2 or more prior convictions for violations of this act, by imprisonment for not more than 10 years or a fine of not more than $10,000.00, or both.

(2) An individual who willfully fails to comply with section 5a, other than payment of the fee required under section 5a(6), is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.

(3) An individual who willfully fails to sign a registration and notice as provided in section 7(4) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $1,000.00, or both.

(4) An individual who willfully refuses or fails to pay the registration fee prescribed in section 5a(6) or 7(1) within 90 days of the date the individual reports under section 4a or 5a is guilty of a misdemeanor punishable by imprisonment for not more than 90 days.

(5) The court shall revoke the probation of an individual placed on probation who willfully violates this act.

(6) The court shall revoke the youthful trainee status of an individual assigned to youthful trainee status who willfully violates this act.

(7) The parole board shall rescind the parole of an individual released on parole who willfully violates this act.

(8) An individual's failure to register as required by this act or a violation of section 5 may be prosecuted in the judicial district of any of the following:

(a) The individual's last registered address or residence.

(b) The individual's actual address or residence.

(c) Where the individual was arrested for the violation.

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 237, Eff. Oct. 16, 2004;—Am. 2005, Act 132, Eff. Jan. 1, 2006;—Am. 2011, Act 18, Eff. July 1, 2011;—Am. 2020, Act 295, Eff. Mar. 24, 2021.

**Compiler's note:** For transfer of powers and duties of Michigan parole and commutation board to Michigan parole board within department of corrections, and abolishment of Michigan parole and commutation board, see E.R.O. No. 2011-3, compiled at MCL 791.305.

**28.730 Confidentiality; exemption from disclosure; availability of information on public internet website; violation as misdemeanor; penalty; civil cause of action; applicability of subsections (4) and (5) to public internet website.**

Sec. 10. (1) Except as provided in this act, a registration or report is confidential and information from that registration or report shall not be open to inspection except for law enforcement purposes. The registration or report and all included materials and information are exempt from disclosure under section 13 of the freedom of information act, 1976 PA 442, MCL 15.243.

(2) A department post, local law enforcement agency, or sheriff's department shall make information from the public internet website described in section 8(2) for the designated areas located in whole or in part within the post's, agency's, or sheriff's department's jurisdiction available for public inspection during regular business hours. A department post, local law enforcement agency, or sheriff's department is not required to make a copy of the information for a member of the public.

(3) The department may make information from the public internet website described in section 8(2) available to the public through electronic, computerized, or other accessible means. The department shall provide for notification by electronic or computerized means to any member of the public who has subscribed in a manner required by the department when an individual who is the subject of the public internet website described in section 8(2) initially registers under this act, or changes his or her registration under this act, to a location that is in a designated area or geographic radius designated by the subscribing member of the public.

(4) Except as provided in this act, an individual other than the registrant who knows of a registration or report under this act and who divulges, uses, or publishes nonpublic information concerning the registration or report in violation of this act is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $1,000.00, or both.

(5) An individual whose registration or report is revealed in violation of this act has a civil cause of action against the responsible party for treble damages.

(6) Subsections (4) and (5) do not apply to the public internet website described in section 8(2) or information from that public internet website that is provided or made available under section 8(2) or under subsection (2) or (3).

**History:** 1994, Act 295, Eff. Oct. 1, 1995;—Am. 1996, Act 494, Eff. Apr. 1, 1997;—Am. 1999, Act 85, Eff. Sept. 1, 1999;—Am. 2002, Act 542, Eff. Oct. 1, 2002;—Am. 2004, Act 240, Eff. Oct. 1, 2004;—Am. 2006, Act 46, Eff. Jan. 1, 2007;—Am. 2011, Act 18, Eff. July 1, 2011.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.731, 28.732 Repealed. 2011, Act 18, Eff. July 1, 2011**

**Compiler's note:** The repealed sections pertained to effective date and conditional effective date of act.

## SEX OFFENDERS REGISTRATION ACT (EXCERPT)
### Act 295 of 1994

**28.733-28.736 Repealed. 2020, Act 295, Eff. Mar. 24, 2021.**

**Compiler's note:** MCL 28.733 was added by 2005 PA 121 and 2005 PA 127. 2005 PA 127, being substantively the same as the 2005 PA 121, supersedes and becomes the only version on its effective date.

The repealed sections pertained to student safety zones.